IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br>    v.<br><br>KEITH MITSUYOSHI KANESHIRO (1), DENNIS KUNIYUKI MITSUNAGA (2), TERRI ANN OTANI (3), AARON SHUNICHI FUJII (4), CHAD MICHAEL MCDONALD (5), SHERI JEAN TANAKA (6),<br><br>              Defendants. | CR. NO. 22-00048 JMS-WRP<br><br>ORDER DENYING DEFENDANT SHERI J. TANAKA'S MOTION TO DISMISS COUNT TWO OF FIRST SUPERSEDING INDICTMENT, ECF NO. 165, AND DENYING RELATED SUBSTANTIVE JOINDERS, ECF NOS. 179, 180, 181, 182, & 183 |

**ORDER DENYING DEFENDANT SHERI J. TANAKA'S MOTION TO DISMISS COUNT TWO OF FIRST SUPERSEDING INDICTMENT, ECF NO. 165, AND DENYING RELATED SUBSTANTIVE JOINDERS, ECF NOS. 179, 180, 181, 182, & 183**

## I. INTRODUCTION

The court addresses three legal issues that Defendant Sheri Jean Tanaka raises in her Motion to Dismiss Count Two of the First Superseding Indictment ("FSI"), ECF No. 165. One, does 18 U.S.C. § 241[1] encompass the right to file a lawsuit in federal court? Two, is § 241 unconstitutionally vague, as

---

[1] 18 U.S.C. § 241 makes it unlawful "[i]f two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same[.]"

applied to Defendant Tanaka? And three, does the FSI sufficiently allege a seizure under the Fourth Amendment? As set forth below, the court DENIES the Motion as to issues one and three but determines that it is premature at this time to rule on issue two.

## II. BACKGROUND

The FSI alleges two counts against Defendants Keith Mitsuyoshi Kaneshiro ("Kaneshiro"), Dennis Kuniyuki Mitsunaga ("Mitsunaga"), Terri Ann Otani ("Otani"), Aaron Shunichi Fujii ("Fujii"), Chad Michael McDonald ("McDonald"), and Sheri Jean Tanaka ("Tanaka") (collectively, "Defendants"). First, the FSI alleges that Defendants conspired to commit honest services fraud and federal program bribery under 18 U.S.C. § 371, and second, that they conspired against civil rights in violation of 18 U.S.C. § 241. ECF No. 70.

In sum, the FSI alleges as follows: from the years 2012 to 2017, Defendants Mitsunaga, Otani, Fujii, McDonald, and Tanaka, were agents of Mitsunaga and Associates, Inc. ("MAI") (collectively referred to as "MAI Defendants"), and Kaneshiro was the elected Prosecuting Attorney for the City and County of Honolulu. *Id.* at PageID.168–169. The MAI Defendants contributed, and Kaneshiro accepted, over $45,000 in campaign contributions, *id.* at PageID.171, and in return Kaneshiro agreed to use his official position to investigate and prosecute former MAI employee, LJM. *Id.*

According to the FSI, MAI hired LJM as a project architect. *Id.* at PageID.169. In November 2011, after voicing disagreements with Mitsunaga, MAI terminated LJM. *Id.* LJM filed a discrimination claim with the United States' Equal Employment and Opportunity Commission ("EEOC")—and later in federal court—alleging violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"). The FSI alleges in part that the MAI Defendants engaged in acts of bribery so that Kaneshiro would maliciously investigate and prosecute LJM as a form of retaliation against her for suing MAI in federal court, and as an effort to interfere with her rights to litigate those claims in federal court. *See* ECF No. 70.

### A.   Factual Background

Below is a brief timeline of events as alleged in the FSI:[2]

- June 14, 2012: The EEOC sent LJM a "Notice of Right to Sue" under Title VII, the ADEA, the Americans with Disabilities Act, and the Genetic Information Nondiscrimination Act. ECF No. 171-1 at PageID.872.

- July 17, 2012: Fujii, Executive Vice President and Chief Operating Officer of MAI, filed a report with the Honolulu Police

---

[2] Unless otherwise cited, these facts are taken from the FSI, ECF No. 70, and some of the dates mentioned are approximations.

Department ("HPD") alleging that LJM committed theft against MAI.

- August 20, 2012: LJM filed a lawsuit against MAI in the District of Hawaii, Civil No. 12-00468 DKW-BMK, alleging claims under Title VII and the ADEA.

- October 4, 2012: Mitsunaga and Tanaka met with Kaneshiro to persuade him to investigate and prosecute LJM, alleging she committed theft by billing time to MAI while working unauthorized "side jobs" and using MAI resources.

- October 2012–October 2016: The MAI Defendants contributed approximately $45,000 to Kaneshiro's re-election campaigns. Prior to October 2012, none of the Defendants had made known contributions to Kaneshiro.

- July 25, 2014: The jury in Civil No. 12-00468 DKW-BMK found no liability in the multiple claims and counterclaims, except for LJM's breach of loyalty to MAI, resulting in a verdict of $1 in nominal damages.

- December 1, 2014: Kaneshiro's office filed a felony information alleging four counts of second-degree theft under Hawaii law against LJM. She was arraigned on the felony information, and

4

> conditions of release included travel restrictions and a $20,000 cash bond.

- September 15, 2017:  Over Kaneshiro's objection, State of Hawaii First Circuit Court Judge Karen Nakasone dismissed the felony information against LJM, finding significant irregularities in the investigation and prosecution.

- September 25, 2017:  Kaneshiro's employee, acting on behalf of Kaneshiro, circulated an interoffice memorandum recommending that their office appeal Judge Nakasone's dismissal order.

- October 15, 2017:  The time to file an appeal of Judge Nakasone's State Court dismissal order lapsed.

### B.  Procedural Background

On September 8, 2022, the grand jury charged Defendants in the FSI in Count 1 with conspiracy, under 18 U.S.C. § 371, to commit Honest Services Wire Fraud in violation of 18 U.S.C. §1343 and 18 U.S.C. § 1346, as well as Federal Program Bribery in violation of 18 U.S.C. § 666(a)(2) and 18 U.S.C. § 666(a)(1)(B).  ECF No. 70 at PageID.173–174.  The grand jury also charged Defendants in Count Two as follows:

> Beginning in or around October 2012, and continuing through in or around October 2017, within the District of Hawaii and elsewhere, [Defendants] did knowingly and intentionally conspire and agree with each other, and

>with others known and unknown to the grand jury, to injure, oppress, threaten, and intimidate L.J.M., who was at that time present in the State of Hawaii, in the free exercise and enjoyment of rights secured to her by the Constitution and laws of the United States, and because of her having so exercised the same, namely, the right under the Fourth and Fourteenth Amendment to be free from unreasonable seizures by one acting under color of law, and the right to file a lawsuit in federal court alleging claims under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act, in violation of Title 18, United States Code, Section 241.

ECF No. 70 at PageID.186–87.

On February 24, 2023, Tanaka filed—and all other Defendants subsequently joined—the present Motion to Dismiss Count Two of First Superseding Indictment "for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)." ECF No. 165 at PageID.703. The United States filed a Response on April 3, 2023, and Tanaka filed a Reply on April 17, 2023. ECF Nos. 171 & 189. A hearing was held on April 27, 2023.

### III.  STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(b)(3) permits "defenses, objections, and requests" "raised by pretrial motion" if "the motion can be determined without a trial on the merits." A motion to dismiss is generally "'capable of determination' before trial if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

6

Rule 12(b)(3)(B)(v) provides that a party may object to the indictment due to a "failure to state an offense." "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citing *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).

Although the court accepts the allegations in the indictment as true, it is not entitled to make additional factual determinations.

> Under this standard, the district court must decide the issue raised in the pretrial motion before trial if it is entirely segregable from the evidence to be presented at trial. If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred. Finally, if an issue raised in a pretrial motion is not entirely segregable from the evidence to be presented at trial, but also does not require review of a substantial portion of that evidence, the district court has discretion to defer decision on the motion.

*Shortt Accountancy Corp.,* 785 F.2d at 1452 (internal citations and quotation marks omitted). *See also* Fed. R. Crim. P. 12(d); Notes of Advisory Committee on Fed. R. Crim. P. 12(b)(4).

## IV.  ANALYSIS

The court addresses the three issues raised by Tanaka in turn.

### A.     Issue 1 — Rights Protected Under § 241

Section 241 states that a "conspiracy against rights" occurs when "two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State . . . in the free exercise or enjoyment of any right or privilege secured to him [or her] by the Constitution or laws of the United States."  18 U.S.C. § 241.  Tanaka argues that the "right to file a lawsuit in federal court"—as alleged in the FSI—is not a "substantive right" but rather a "judicial remedy" that is not covered by § 241.  *See* ECF No. 165-1 at PageID.715–725.  The court disagrees and finds that § 241 protects against conspiracies involving the right to bring a lawsuit under both Title VII and the ADEA.

#### 1.     *Meaning of "Any Right" Under § 241*

Although the plain language of § 241 protects the free exercise or enjoyment of "any" right secured by the constitution or laws of the United States, the Supreme Court has limited the scope of what constitutes a recognized right under § 241 to rights made specific by the express terms of the constitution or laws of the United States, or by decisions interpreting them:

> Section 241 creates no substantive rights, but prohibits interference with rights established by the Federal Constitution or laws and by decisions interpreting them…. Congress intended the statute to incorporate by reference a large body of potentially evolving federal law.  This Court recognized, however, that a statute prescribing criminal punishment must be interpreted in a manner that provides a definite standard of guilt.  The Court resolved the tension

> between these two propositions by construing § 241 to prohibit only intentional interference with rights made specific either by the express terms of the Federal Constitution or laws or by decisions interpreting them.

*United States v. Kozminski*, 487 U.S. 931, 941 (1988) (internal citations omitted).

Tanaka argues that the "right to file a lawsuit in federal court" is not a "right" at all, but instead is a "judicial remedy." ECF No. 165-1 at PageID.717. And, citing *Kozminski*, Tanaka further claims that the ability to file a lawsuit is not a "specific" right protected by § 241.

### 2. *The Right to File a Lawsuit Under Title VII & ADEA Is Conferred Under § 241*

The question then is whether the "right to file a lawsuit in federal court," as stated in the FSI, is a "right[] made specific either by the express terms of the Federal Constitution or laws or by decisions interpreting them," *Kozminski*, 487 U.S. at 941. ECF No. 70 at PageID.187. Not everyone has a right to bring suit in federal court nor does the court possess the power to hear every matter that comes before it, because "[f]ederal courts are courts of limited jurisdiction," with authority derived from the "Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In this case, the court looks to the language in the statutes LJM was suing under—Title VII and the ADEA—to determine whether there is a specific right to "file a lawsuit in federal court."

9

As argued by the United States, there is indeed a specific right to "file a lawsuit in federal court" under Title VII. Title VII prohibits employment discrimination based on race, color, religion, sex, sexual orientation, gender identity, and national origin. 42 U.S.C. § 2000e. An aggrieved person normally must first file a charge of discrimination under Title VII with the EEOC. 42 U.S.C. § 2000e-5(b). If the EEOC dismisses the charge or does not pursue its own action within 180 days, "a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved" and this right to sue vests when "notice" is provided by the EEOC. 42 U.S.C. § 2000e-5(f)(1); Exh. A, ECF No. 171-1. Courts have long held that those aggrieved by discrimination under Title VII indeed have a "right to sue," within the appropriate timeframe. *See e.g., Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984).

Similarly, those aggrieved under the ADEA—which prohibits discrimination on the basis of age—also have a right to sue. *See* 29 U.S.C. § 626(c)(1). And the ADEA classifies this as a "right of any person" to "bring civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." *Id.* Like Title VII claims, those aggrieved by ADEA violations must also first file a charge with the EEOC and await a "right to sue" notice. *See* Exh. A, ECF No. 171-1. *See also Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 403–04 (2008) (finding that although the

ADEA requires the aggrieved individual to file a charge before *filing a lawsuit*; it does not condition the individual's *right to sue* upon the agency taking any action) (emphasis added); *E.E.O.C. v. W.H. Braum, Inc.*, 347 F.3d 1192, 1200–01 (10th Cir. 2003) ("The Commission's failure actually to issue the notice cannot defeat the claimant's statutory right to sue in the district court, for '[a] Title VII claimant is not charged with the commission's failure to perform its statutory duties.'") (internal quotation marks omitted) (citing *Russell v. Am. Tobacco Co.,* 528 F.2d 357, 365 (4th Cir.1975)).

Tanaka argues, however, that there is a distinction between a right to sue (which she refers to as a "judicial remedy") and the substantive rights afforded by both Title VII and the ADEA. That is, she argues that the right to file a lawsuit in federal court is a judicial remedy only, and not a right, as that term is used in § 241. This argument fails.

Title VII and the ADEA create specific rights for those aggrieved (or alleged to be aggrieved) to sue in federal court, and logically, the right to sue in federal court for violations of federal law is a right inextricably linked to the substantive rights secured by those statutes. After all, without the specific right to bring suit—which this court refers to as enforcement rights—the substantive rights these statutes provide would be illusory.

Further, § 241 protects both the "free exercise" or "enjoyment" of rights, and by exercising certain enforcement rights—such as the right to sue—one can enjoy substantive rights—such as the right to be free from discrimination. To "exercise" means to "put into action" one's rights. Black's Law Dictionary (11th ed. 2019). When a federal statute grants the right to file a lawsuit, it is providing the means to "put into action" its substantive rights. Sensibly, enforcement and substantive rights created by statute are inextricably linked, and one cannot operate without the other. It follows that § 241 was intended to protect the inextricably linked substantive and enforcement rights created by federal statutes.

### 3. *The Arbitration Cases Cited by Tanaka Are Distinguishable*

Tanaka claims that "under controlling Supreme Court and Ninth Circuit authority," the ability to file a Title VII or ADEA suit is solely a judicial remedy and not a right. ECF No. 165-1 at PageID.711–12. In fact, however, there is no such "controlling" authority.

In support of this position, Tanaka cites to various cases holding that the right to sue is a waivable right under the ADEA and Title VII, and therefore is not a protected right under § 241. ECF No. 165-1 at PageID.715–725. For example, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), upheld a collective-bargaining provision requiring the arbitration of ADEA claims. The Court found

that 29 U.S.C. § 626(f)'s anti-waiver provision[3] did not apply because an "agreement to arbitrate ADEA claims is not the waiver of a 'substantive right' as that term is employed in the ADEA." *Id*. at 259.  And in the Title VII context, *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003), held that Title VII does not preclude compulsory arbitration before suing in federal court.  But nothing in *14 Penn Plaza* or *Luce* answers the question before the court—is there a right to sue under Title VII and the ADEA, regardless of whether that right may be waived?  Many rights, including the right to a jury trial, are clear and obvious but nonetheless subject to waiver.  And, in fact, *14 Penn Plaza* states that the agreement to resolve ADEA claims by arbitration "does not waive the statutory right to be free from workplace discrimination; it waives only the *right* to seek relief from a court in the first instance." *Id.* at 265–66 (emphasis added).  The arbitration cases cited by Tanaka are therefore not controlling, let alone helpful to her position.

**B.     Issue 2 — As-Applied Vagueness of § 241**

Next, Tanaka argues that if the court determines that LJM had a right to bring a Title VII and an ADEA claim in federal court, the statute is nonetheless unconstitutionally vague as applied to her.  ECF No. 165-1 at PageID.725–730.

---

[3] 29 U.S.C. § 626(f) states that an "individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary."

"A statute is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *United States v. Singh*, 979 F.3d 697, 726 (9th Cir. 2020) (internal citation and quotation marks omitted).

In contrast to a facial attack, which claims that no application of a particular statute would be constitutional,[4] an "as-applied challenge is one that 'tests' a statute's constitutionality in one particular fact situation while refusing to adjudicate the constitutionality of the law in other fact situations." *Hoye v. City of Oakland*, 653 F.3d 835, 854 (9th Cir. 2011) (citation and internal quotation marks omitted). "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

Vagueness challenges which do not involve First Amendment freedoms "must be evaluated as the statute is applied to the facts of [the] case." *Chapman v. United States*, 500 U.S. 453, 467 (1991)*; see also United States v. Powell*, 423 U.S. 87, 92 (1975); *United States v. Mazurie*, 419 U.S. 544, 550

---

[4] The Supreme Court has rejected a facial attack on § 241 but requires "specific intent to interfere with the Federal right must be proved, and at a trial the defendants are entitled to a jury instruction phrased in those terms." *See United States v. Guest*, 383 U.S. 745, 760 (1966); *see also United States v. Reese*, 2 F.3d 870, 882 (9th Cir. 1993).

(1975). Although some courts have decided as-applied challenges pre-trial, they have usually done so only when there are no additional factual inquiries that can inform the legal outcome of the challenge. *See e.g.*, *United States v. Saathoff*, 708 F. Supp. 2d 1020 (S.D. Cal. 2010). Other courts, however, have declined to do so, finding an as-applied "challenge [] premature under *Chapman*." *United States v. Bychak*, 2021 WL 734371, at *9 (S.D. Cal. Feb. 25, 2021).

Because factual determinations made at trial may inform the court's decision on whether § 241 is unconstitutionally vague as applied to Tanaka, the court declines to decide this issue pre-trial. At the time of trial and after the prosecution rests, Tanaka (and the co-defendants)—if they so choose and if appropriate at that time—may seek a ruling from the court on the vagueness as-applied challenge pursuant to Federal Rule of Criminal Procedure 29(a). *See United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001).

### C.   Issue 3 — Fourth Amendment Seizures

Tanaka's final argument is that part of the § 241 conspiracy charged in Count Two—interference with "the right under the Fourth and Fourteenth Amendment to be free from unreasonable seizures by one acting under color of law"— must be dismissed because the FSI fails to allege a specific seizure. *See* ECF No. 165-1 at PageID.730–735. The court disagrees and determines that the FSI sufficiently pleads that the Defendants conspired to injure, oppress, threaten,

or intimidate LJM of her right to be free from unreasonable seizures by one acting under color of law.

### 1. *Conspiracy—Not a Substantive Offense—Is Charged Under § 241*

First, Tanaka's argument is based on a faulty premise. By arguing that the FSI fails to allege a specific seizure, Tanaka ignores that § 241 charges a *conspiracy*, not a substantive offense. And to be convicted under § 241, the object of the offense (a violation of LJM's Fourth Amendment rights) need not in fact ever happen. *See, e.g.*, *United States v. Parker*, 165 F. Supp. 2d 431, 456 (W.D.N.Y. 2001).

Rather, to prove a § 241 violation, the United States must show that two or more of the Defendants agreed to deprive LJM of the right to be free from an unlawful seizure and that those Defendants knowingly joined the agreement and intended to deprive LJM of her right to be free from an unlawful seizure. *See United States v. Gonzalez*, 906 F.3d 784, 792 (9th Cir. 2018) (setting forth elements of a § 241 offense). And it is reasonable to infer that the prosecution of an individual (in return for campaign contributions) could have been intended to result in an unlawful incarceration, a clear Fourth Amendment seizure. In short, under the facts alleged in the FSI, whether Defendants intended to deprive LJM of her right to be free from unlawful seizure is a question for the jury, not this court.

### 2. *Unlawful Seizures May Occur Even with Probable Cause*

Tanaka also argues that any seizure can only mean a "seizure made without probable cause (or, in limited circumstances, reasonable suspicion)." ECF No. 165-1 at PageID.734.  And she argues that because a State judge made a finding of probable cause, there could be no subsequent illegal seizure.  *Id.*  The court also rejects this argument.

In *United States v. Sease*, 659 F.3d 519 (6th Cir. 2011), a former police officer was convicted under §§ 241 and 242 based on his staging of drug buys for the purpose of seizing drugs and currency for personal gain.  After conviction, Sease argued that there was insufficient evidence to support his conviction, because "he did not violate the rights of the participants in the staged drug buys because there was probable cause to arrest the drug dealers and seize the drugs and money."  *Id*. at 520–21.  The Sixth Circuit easily rejected this argument, finding that although there was probable cause for the seizures, the defendants were not engaged in bona fide law enforcement activities.

Although subjective intent is normally irrelevant under the exclusionary rule, in a civil rights prosecution "courts may inquire whether the officer acted with a corrupt, personal, and pecuniary purpose."  *Id*. at 525.  And here, the FSI clearly alleges that the Defendants acted with a corrupt motive—the exchange of campaign contributions in return for the investigation and prosecution

of LJM.  *See also United States v. Contreras*, 134 F. Supp. 2d 820 (S.D. Tex. 2000).

## V.  CONCLUSION

Based on the foregoing, the court DENIES Defendant Tanaka's Motion to Dismiss, ECF No. 165.  The court will entertain any vagueness challenge after hearing the government's evidence.  For the same reasons, the court DENIES the substantive joinders, ECF Nos. 179, 180, 181, 182, and 183.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 2, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Kaneshiro et al.*, Cr. No. 22-00048 JMS-WRP, Order Denying Defendant Sheri J. Tanaka's Motion to Dismiss Count Two of First Superseding Indictment, ECF No. 165, and Denying Related Substantive Joinders, ECF Nos. 179, 180, 181, 182, & 183