MERRICK B. GARLAND
Attorney General
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Andrew.Chiang@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>   v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>                    Defendants. | CR No. 22-00048-JMS<br><br>UNITED STATES' NOTICE OF INTENT TO USE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B) |

In accordance with the Criminal Scheduling Order dated August 30, 2023, ECF 263, the United States hereby provides notice of its intent to use evidence pursuant to FRE 404(b).

A. <u>EVIDENCE UNDER RULE 404(b)</u>

The grand jury indicted the defendants for participating in a conspiracy to bribe the elected prosecutor of Honolulu, Keith Kaneshiro, in exchange for his prosecution of their civil litigation adversary, L.J.M., because she exercised the right to file a federal lawsuit against Mitsunaga & Associates (MAI). Besides Kaneshiro himself, the other defendants were high-level officers and agents of MAI, including Dennis Mitsunaga (CEO), Aaron Fujii (COO), Chad McDonald (SVP), Terri Ann Otani (HR Director and Dennis' cousin), and Sheri Tanaka (counsel).

The United States believes the evidence described below is direct evidence of the charged conspiracy or is inextricably intertwined with the evidence of the charged conspiracy. To the extent the evidence falls within the scope of Federal Rule of Evidence 404(b), however, the United States will be offering it not for propensity but to prove the defendants' *modus operandi*, motive, intent, preparation, plan, knowledge, absence of mistake, and lack of accident, as outlined below.

1. *MAI's Police Complaint Against Attorney Stanford Masui*

On July 17, 2012, shortly after the EEOC notified L.J.M. and MAI of her right to sue MAI for sex and age discrimination, Aaron Fujii filed a police complaint, along with a lengthy pre-prepared affidavit, against L.J.M. and Stanford Masui, a Honolulu attorney. KM-GJEX-JD-028; *see* First Superseding Indictment ("FSI") at ¶ 9. According to the police report, Fujii wanted them both prosecuted for felony theft because L.J.M. had participated in a "side job" involving Masui's property

2

while L.J.M. was on MAI time. Masui had no involvement in this purported "time theft," however. MAI's grievance against Masui was solely because he had sued MAI because of L.J.M.'s work on his property – there was no viable crime committed by Masui.

MAI's police complaint against Masui is inextricably intertwined with MAI's pursuit of criminal charges against L.J.M. because they were both named as suspects in the same police complaint.[1] To the extent the fact that MAI also named Stanford Masui in the report falls within the scope of Rule 404(b), that evidence is admissible to prove MAI's malicious intent, motive, and *modus operandi*: that MAI will clobber opponents—like L.J.M. with her federal lawsuit against MAI, or like Masui with his state lawsuit against MAI—who dare sue the company by using the criminal justice system to harass them and bludgeon them into submission.

    2.    *Evidence and Conduct in the Federal Civil Trial*

Because the United States intends to prove that the MAI defendants conspired to bribe Kaneshiro to prosecute L.J.M. in retaliation for her pursuing a federal lawsuit against MAI, and because that lawsuit occurred contemporaneously with key events of the conspiracy, evidence relating to the federal civil case is evidence of the underlying conspiracy or is inextricably intertwined with it. For example, the fact that (1) the civil jury rendered a verdict for L.J.M. on MAI's fraud and negligence

---

[1] The one that Detective Snoops later followed up on, as discussed at length in prior briefing. *See* ECF No. 285.

3

counterclaims; (2) the federal district judge dismissed MAI's conversion counterclaim on an unopposed Rule 50 motion; and (3) the civil jury awarded MAI just $1 on its breach of loyalty counterclaim; made it obvious there was no path to a criminal prosecution based on the same conduct. To the extent any aspect of the civil trial falls within Rule 404(b), the United States provides notice of the following:

- In July 2014, Tanaka repeatedly argued in court filings, in her opening statement, and in her closing argument, that L.J.M. was under criminal investigation and that a criminal prosecution against L.J.M. was possible. KM-12CV0468-000002.021; KM-12CV0468-000010.06; KM-12CV0468-000018.107. Tanaka's statements, however, occurred after she had already been informed by the senior deputy prosecutor assigned to the case that he would not bring charges against L.J.M. KM-GJT-001076; KM-GJT-003791–92; KM-GJEX-DN-031. Tanaka's statements, therefore, are evidence that she and her co-conspirators knew Kaneshiro would find a way to have L.J.M. criminally charged because of the defendants' agreement to purchase a criminal prosecution with bribes. The statements are also evidence of the defendants' planning, preparation, intent, absence of mistake, and lack of accident.[2]

---

[2] If the defendants argue that the senior deputy prosecutor notified Tanaka he would not charge L.J.M. *after* the federal civil trial ended, not before, then this is just more evidence that Kaneshiro's reassignment of the criminal case to a different deputy prosecutor was driven by bribes.

4

- In July 2014, MAI filed a motion *in limine* to preclude L.J.M. from referring to the criminal investigation. In that motion, MAI revealed that Kaneshiro had been investigating L.J.M. for exactly "21 months." KM-12CV0468-000013.02. That timeline placed the beginning of the investigation at October 2012, the very month Dennis Mitsunaga met with Kaneshiro and asked him to press charges against L.J.M. *See* FSI at ¶ 11 ("On or about October 4, 2012, MITSUNAGA and TANAKA met with KANESHIRO . . . to attempt to persuade KANESHIRO to investigate and prosecute L.J.M."). The fact that MAI knew Kaneshiro immediately began investigating L.J.M. pursuant to Dennis Mitsunaga's request is evidence of the defendants' knowledge about the conspiratorial agreement, as well as evidence of the defendants' planning, preparation, intent, and absence of mistake.

- During the discovery process in the federal civil case, MAI refused to turn over to L.J.M. the documents it had given to Kaneshiro's office. Instead, MAI—through Tanaka—repeatedly told L.J.M. to request the documents from Kaneshiro instead. KM-12CV0468-000014.27–28; KM-12CV0468-000015.23–24. Concurrently, Tanaka had obtained assurances from Kaneshiro's office that it would not produce the documents it had received from MAI to L.J.M. KM-GJEX-CN-037. MAI and Kaneshiro's efforts to improperly conceal the information MAI gave to Kaneshiro during civil discovery is evidence of their attempt to hide the existence of a criminal

5

conspiracy, which also proves the defendants' knowledge, intent, planning, and preparation.

- MAI conceded during the civil trial that there was no evidence to support its claim of conversion. It therefore did not oppose L.J.M.'s Rule 50 motion to dismiss the claim. KM-12CV0468-000008.049. To make this concession, and then seek criminal prosecution based in part on the same conversion theory—that L.J.M. wrongfully took a payment that Rudy Alivado had intended for MAI—proves the defendants' knowledge that there was no evidence to support charging L.J.M. and establishes the defendants' intent to subject L.J.M. to a malicious prosecution and plan to injure, oppress, threaten, and intimidate L.J.M. in the free exercise of her Fourth Amendment rights and right to file a federal lawsuit.

- Tanaka argued in her closing argument that (1) MAI's breach of loyalty counterclaim was based on L.J.M. doing side jobs while employed with MAI; (2) MAI's negligence counterclaim was based on L.J.M. drawing MAI into a lawsuit with Masui; and (3) MAI's fraud counterclaim was based on its allegation that L.J.M. falsified her timesheets and fraudulently billed MAI for time she did not work. KM-12CV0468-000018.108–109. These arguments, in conjunction with the jury's award of $1 on the breach of loyalty counterclaim; the jury's verdict in favor of L.J.M. on the negligence counterclaim; and the jury's verdict in favor of L.J.M. on the fraud counterclaim—is evidence that

6

the defendants knew there was no evidence to support criminal charges against L.J.M. KM-12CV0468-000021.13–18.

- In the civil trial, L.J.M. introduced evidence of a letter that Dennis Mitsunaga wrote to L.J.M. on November 2, 2011, in which he criticized L.J.M. and compared her unfavorably with Aaron Fujii and Chad McDonald, whose value to Mitsunaga was "immeasurable when you factor in their loyalty to me." KM-GJEX-TAO-033.07. This letter is evidence of Dennis Mitsunaga's motive for why he would go to such extreme lengths, with the assistance of the other MAI defendants, to bribe Honolulu's top prosecutor for the purpose of retaliating against L.J.M. Her lawsuit against MAI was the ultimate act of disloyalty—the trait that Mitsunaga valued above all else.

- Furthermore, MAI took positions in the federal civil trial that were directly contrary to positions they would later take in its state litigation against Masui. For example, less than one month after the conclusion of the federal civil trial against L.J.M., MAI filed a motion for summary judgment against Masui in the state case. In that motion, MAI contended that "[t]he Masuis testified that they knew from day one, before the Project even started, that [L.J.M.] was helping them on the Alewa Project as a 'side job' and not in her capacity as an MAI employee." KM-GJ-BL1068-HI-1ST-CIRCUIT-000088.009. MAI contended that L.J.M.'s "voluntary role was limited, and she mainly served as a facilitator/go-between amongst various individuals working on the Project."

7

KM-GJ-BL1068-HI-1ST-CIRCUIT-000088.012. MAI further declared that "[i]t is also undisputed that, from day one, the Masuis knew [L.J.M.] was performing the favor as a side job, outside the course and scope of her employment at MAI." KM-GJ-BL1068-HI-1ST-CIRCUIT-000088.012. These statements in court are irreconcilable with the positions that MAI took in the federal civil case just weeks earlier, which underscored how L.J.M.'s negligence in failing to distinguish her individual capacity and her capacity as a MAI employee had drawn MAI into a lawsuit with Masui. These contradictions supply evidence of MAI's *modus operandi* of taking frivolous and baseless positions within the judicial system, even to the point of misrepresentation, in order to achieve its desired outcome of getting L.J.M. at all costs. This evidence is also relevant to demonstrating the defendants' knowledge that L.J.M.'s behavior with respect to side jobs—whether with Stanford Masui or otherwise—did not amount to a crime and did not support felony theft charges.

### 3. *MAI's Meritless and Malicious Tax Complaint*

The defendants maliciously sought to break L.J.M. on various fronts—all of which the United States intends to introduce at trial. Two weeks after the civil trial ended, on August 7, 2014, Defendant Otani, from her MAI email, emailed a complaint to the State of Hawaii Department of Taxation, with the subject line "[L.J.M.] – Alleged Tax Evasion/Fraud." BL972-HDT-0004 (produced in Round 1

on July 11, 2022). A letter attached to the email, signed by Otani, states in part that "[L.J.M.] was terminated and a further investigation revealed that she received payment from these 'side job' clients, but failed to report the income on her taxes." *Id.* at 5. Otani's referral sparked a formal audit and investigation into L.J.M. by the Department of Taxation (in addition to the investigation the defendants spearheaded with the DPA). L.J.M. was thereafter subjected to an investigation into her financial activity and tax compliance. Otani did not inform the investigator that MAI and L.J.M. had just completed a civil lawsuit against each other. According to the investigator, that sort of information was something he would have investigated because it made the tax referral look malicious. For several months, L.J.M. was subjected to an invasive tax investigation—she was formally advised that she was under investigation, her records were pulled, she was interviewed, among other things. After several months, on October 6, 2014, the Department of Taxation closed the case, finding no improprieties in LJM's file. KM-GJEX-GZ-003.

This episode represents yet another frivolous effort by the defendants to harass and intimidate L.J.M. This evidence is inextricably intertwined with the charged conspiracy—it is the continuation of the relentless harassment campaign against L.J.M. In the event Rule 404(b) is even implicated, this evidence is not propensity evidence. Rather, it is admissible for proving the knowledge, intent, plan, and *modus operandi* of the conspirators in their effort to falsely entangle L.J.M. in spurious investigations. Moreover, even with the denials piling up—starting with the initial

9

unemployment proceedings,[3] continuing with a senior deputy prosecutor's declination of the conspirators' criminal referral to the DPA, the civil jury's rejection of their theories, etc.—the conspirators continued to press forward against L.J.M. The knowledge that their claims lacked merit further establish they acted with corrupt intent when pressing charges against L.J.M. before the DPA, *see* 18 U.S.C. § 666(a), and that they knew the allegations against L.J.M. lacked probable cause and were instead presented the DPA for a wrongful purpose, *see* 18 U.S.C. § 241.

The defendants have long possessed the discovery pertaining to Otani's false tax referral. The certified records from the Department of Taxation were produced in Round 1 on July 11, 2022 (BL0972-HDT). Likewise, the statements of the assigned tax investigators were produced on that same date, with related exhibits produced in Round 2 on July 28, 2022.

---

[3] As alleged in the FSI, after MAI terminated L.J.M., MAI contested L.J.M.'s request for unemployment benefits from the State of Hawaii. After the initial claims reviewed concluded L.J.M. was eligible for unemployment benefits, MAI—through Tanaka—appealed that finding to the State of Hawaii's Employment Security Appeals Office. After a lengthy evidentiary hearing, an Appeals Officer again found L.J.M. was eligible for unemployment benefits. MAI—through Tanaka—appealed further to the Hawaii Circuit Court, which affirmed the finding the L.J.M. was eligible for unemployment benefits. FSI at ¶ 8. MAI's courtroom malice towards L.J.M. originated during this initial unemployment proceeding. The details of the unemployment proceeding are inextricably intertwined with the story of the defendants' malicious treatment of L.J.M. If within the scope of Rule 404(b), those facts are relevant for proving MAI's intent, purpose, and plan of harassing L.J.M. through legal process.

### *4.     MAI Contributions to Other Politicians*

As evidenced by the overt acts in the First Superseding Indictment, the United States intends to prove that the MAI defendants conspired to bribe Kaneshiro through the use of political contributions in exchange for prosecuting L.J.M. in retaliation for her pursuing a federal lawsuit against MAI.  Political contributions made by the MAI defendants, employees, and affiliates to Kaneshiro are key events of the conspiracy and are inextricably intertwined.  In addition, the MAI defendants made concerted contributions to other politicians using the same *modus operandi* as alleged in the conspiracy.  That is, the MAI defendants, employees and affiliates donated to other politicians, such as Ann Kobayashi, Ben Cayetano, Neil Abercrombie, Kirk Caldwell, and Colleen Hanabusa, on the same dates between November 2006 and December 2020.  For example, the United States has produced a summary chart of the political contributions made to Ben Cayetano for Mayor in 2012. The summary charts shows that MAI defendants and their family members, as well as other MAI employees, made contributions to the campaign on the same date in May 2012.  A fundraising letter, prepared by defendant Dennis Mitsunaga, as the Finance Chair, was sent in April 2012. In the letter, Dennis Mitsunaga told potential contributors the "legal limit is $4,000 per person per election cycle."[4] He further told them to "call Terri Otani…if you have any questions or if you would

---

[4] This letter further shows Dennis Mitsunaga's knowledge of the campaign finance laws, including the campaign donation limits.

like to have the checks picked up." This evidence is proof of the defendants' knowledge, intent, and *modus operandi* of bundling political contributions and collecting them for delivery to political campaigns. Moreover, these acts are similar to the manner in which the MAI defendants, employees, and affiliates made bundled contributions to Keith Kaneshiro on the same dates between October 25, 2012 and October 19, 2016. These other contributions also include the same MAI defendants, employees and affiliates.  This evidence is proof of the MAI defendants' motive, opportunity, knowledge and *modus operandi* in the way MAI pools money towards candidates for political office, avoiding contribution limits.

The MAI defendants' political contribution history is relevant in another way as well. Before the MAI defendants and their affiliates started giving to Keith Kaneshiro's campaign, they had never before (in the records accessible from the Campaign Spending Commission) donated to any candidate for the Honolulu Prosecuting Attorney's Office. In other words, despite extensive giving to other political offices, the MAI defendants' donations to the Prosecutor's Office started only after—three weeks after—Mitsunaga met with Kaneshiro to request prosecution of L.J.M. *See* FSI at ¶ 12.[5]

The United States also intends to introduce evidence of the MAI defendants' compensation and compare it to the contributions made to Kaneshiro and to other

---

[5] Notably, while in theory, MAI had legitimate engineering/architectural business pending with the other people receiving contributions, that was not so with the Prosecutor's Office.

politicians. While these comparisons are inextricably intertwined with the underlying charges because they include contributions to Kaneshiro, the United States hereby provides notice under FRE 404(b) should the Court consider it other act evidence as the analysis includes contributions made to other politicians. When comparing the MAI defendants' officer compensation with their annual political contributions, such evidence is proof of the implausibility of several of the MAI defendants' ability to afford such contributions without back-filling – namely, Terri Ann Otani, Aaron Fujii, and Chad McDonald.

The United States has further prepared an analysis of Terri Ann Otani's political contributions and gambling records from January 2010 through March 2021. This evidence will be used in a comparison to Otani's MAI officer compensation in order to demonstrate the implausibility of Otani being able to afford making regular and significant political contributions and spending significant sums gambling at casinos.

The United States produced a chart of the political contributions made by Terri Ann Otani and the "A" family (Otani's relatives, including the A's daughter, J.H.). This—and other evidence obtained in the grand jury—established that Otani made straw contributions to Kaneshiro and other politicians through J.H. (with J.H.'s knowledge) and through J.H.'s parents (without their knowledge). Otani's straw contributions to Kaneshiro are just evidence of the charged conspiracy. Her straw contributions to other politicians are admissible "other act" evidence under Rule

13

404(b) because it demonstrates the MAI defendants' knowledge of campaign finance limits and their efforts to skirt those limits by maximizing contributions to politicians under cover of concealment and fraud. It is also part of MAI's *modus operandi* of paying off politicians in Hawaii, and evidence of planning and absence of mistake. In addition, this evidence is inextricably intertwined with the obstructive conduct by Otani against J.H. and the A family as further discussed below. Moreover, the charts are further evidence of Otani's knowledge and intent of her involvement in the underlying charges which were under investigation by the grand jury. *See also* Grand Jury Testimonies of Mr. "A," Mrs. "A," and J.H.

Lastly, the United States intends to introduce evidence that the accountant for MAI received a check, signed by Arnold Koya and Chad McDonald, in the amount of $6,350 on September 21, 2017. According to the accountant, the check falsely claimed to be for general excise taxes. However, the accountant stated that on September 26, 2017, he deposited the check into his bank account and thereafter made a maximum contribution of $6,000 to the campaign of Colleen Hanabusa. The accountant further admitted that he received $350 from MAI to pay the general excise taxes for making this political contribution at the request of defendant Dennis Mitsunaga. This other act evidence is proof of the MAI defendants' knowledge, intent, and *modus operandi* when making political contributions. The United States has previously produced the statements of the accountant and other records supporting these acts.

14

To prove the acts discussed above, the United States intends to introduce witness statements, documents, records, and summary charts. The summary charts have been produced and are identified as: KM-LO-000002 through KM-LO-000012.

### 5.  *Obstruction of the Grand Jury Investigation*

The United States plans to introduce evidence that the defendants affiliated with MAI, collectively and individually, engaged in conduct in the grand jury designed to thwart, impede, and obstruct the grand jury's ability to investigate and uncover information about the conspiracy to bribe Keith Kaneshiro and injure L.J.M.'s rights. The description of MAI's obstructive conduct, along with source citations, is contained in ECF 288, the United States Unredacted Consolidated Response to Motions to Dismiss, Section II(A). The following conduct demonstrates the MAI defendants' *modus operandi* and consciousness of guilt—tending to prove their distinctive collective behavior, intent, knowledge, absence of mistake, and lack of accident. To be clear, the United States will attribute the following evidence to *all* MAI defendants, who are linked together by CEO Dennis Mitsunaga, and by attorney Sheri Tanaka, who represented MAI as well as every MAI witness in the grand jury investigation.

- Numerous MAI witnesses represented by Sheri Tanaka—including Terri Ann Otani, A.K., J.F., and S.W.—read prepared speeches conveying false information about the lead prosecutor to the grand jury. They also stonewalled the grand jury by (1) refusing to answering questions, (2) improperly asserting

15

the Fifth Amendment in blanket fashion, and (3) improperly asserting the equivalent of a blanket Fifth Amendment invocation by invoking the privilege to every question asked regardless of whether it elicited incriminating information. These actions demonstrate a concerted effort within MAI to prevent the grand jury from uncovering facts about the conspiracy, and is probative of MAI's *modus operandi* of acting in lockstep to achieve and obfuscate its criminal objectives. MAI's collective conduct to fend off the grand jury is also proof of the defendants' consciousness of guilt, knowledge, intent, lack of accident, and absence of mistake.

- Numerous MAI witnesses represented by Sheri Tanaka deliberately provided materially false statements under oath to the grand jury. L.M. lied to the grand jury by stating that L.J.M.'s criminal charges had been dismissed because of a technicality, despite knowing the charges were dismissed for lack of probable cause. Chad McDonald lied in the grand jury by falsely stating he had no discussions with anyone, at MAI or otherwise, about contributing to Kaneshiro's re-election campaigns. M.M. lied in the grand jury by falsely claiming she could not recall whether anyone had instructed her to say, "I don't recall," to each and every question posed to her. Terri Ann Otani lied in the grand jury by falsely denying she ever coordinated political contributions with anyone. These acts are evidence of concerted behavior within the MAI organization to prevent the grand jury from learning about the conspiracy, and

16

evince the defendants' *modus operandi*, consciousness of guilt, knowledge, intent, lack of accident, and absence of mistake.

Moreover, Otani also attempted to exert pressure on her niece, J.H., to not talk to the grand jury or to the authorities about Otani's criminal behavior. Despite Otani's tampering of a grand jury witness, J.H. confessed in the grand jury that Otani routinely used J.H.'s name to make illegal straw contributions to multiple politicians in Hawaii, including to Kaneshiro. Otani also attempted to exert pressure on J.H. through J.H.'s mother to "help me get out of this shit" because "[t]hey gonna put me in jail." Otani's efforts to obstruct the grand jury, tamper with witnesses, and conceal information about her criminal behavior, serve as evidence of consciousness of guilt, and prove Otani's knowledge, intent, lack of accident, and absence of mistake.

Dated: January 16, 2024                Respectfully submitted,

                                       MERRICK B. GARLAND
                                       Attorney General

                                       */s/ Colin M. McDonald*
                                       MICHAEL G. WHEAT
                                       JOSEPH J.M. ORABONA
                                       JANAKI G. CHOPRA
                                       COLIN M. MCDONALD
                                       ANDREW Y. CHIANG
                                       Special Attorneys of the United States

17

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>    v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>              Defendants. | CR No. 22-00048-JMS<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

    I, Colin M. McDonald, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893. I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on January 16, 2024.      */s/Colin M. McDonald*
                                                          COLIN M. MCDONALD