MERRICK B. GARLAND
Attorney General
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Michael.Wheat@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | CR No. 22-00048-TMB-WRP<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 16<br>[ECF No. 347] |

UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* NO. 16

## INTRODUCTION

In their motion *in limine* No. 16, Defendants seek to exclude evidence pertaining to Defendant Otani that is inextricably intertwined with the instant case or constitutes appropriate 404(b) evidence. ECF No. 347. Specifically, Defendants seek to exclude: (1) Defendant Otani's method of making political contributions; (2) Defendant Otani's gambling history; and (3) Defendant Otani's obstructive acts in the grand jury investigating this case. The United States briefed issue 1 in its Motion *in Limine* No. 4 (ECF No. 348) and response in opposition to Defendants' Motion *in Limine* No. 6, and briefed issue 3 in its Motion *in Limine* No. 5 (ECF No. 349), all of which the United States incorporates herein.

Defendant Otani's political contributions, gambling history, and obstructive acts in the grand jury are all inextricably intertwined with the charged conspiracy. That is, Defendant Otani's use of the MAI donor apparatus, which included bundled and straw donations, is relevant to show MAI's pre-existing mechanism and how they wielded it, leveraging its many sources of political contributions, in order to bribe Kaneshiro to wrongfully prosecute an innocent MAI employee. Further, Defendant Otani's gambling history, when compared to her yearly salary from MAI and political donations, underscores and explains her engagement of straw donors (including to Kaneshiro) and bundling as part of the MAI donor apparatus. Finally, Defendant Otani's obstruction in the grand jury goes squarely to her consciousness

of guilt. None of this evidence is being offered to demonstrate propensity or a wholly separate conspiracy – as the Defendants suggest – but rather, as inextricably intertwined or proper 404(b) evidence of the Defendants' intent, knowledge, planning, and consciousness of guilt. Any concern by the Court of any potential effects under Rule 403 can be cured with a limiting instruction.

ARGUMENT

Because the United States has briefed the admissibility of Defendant Otani's method of political contributions in its Motion *in Limine* No. 4 and a separate response in opposition to Defendants' Motion *in Limine* 6, the United States addresses here the arguments relating to Defendant Otani's gambling history and conduct in the grand jury.

1. *Otani's Gambling History*

Defendant Otani's gambling history, when compared with her salary, demonstrates the implausibility of Otani single-handedly being able to afford the political contributions she was making during the time of the charged conspiracy. The below chart compares Otani's annual salary at MAI with her gambling at a Las Vegas casino and her political contributions between 2012 and 2017:

3

| Year | MAI Annual Salary (Form W-2 Wages) | Gambling (Casino Chips Purchased)[1] | Political Contributions[2] |
|------|------------------------------------|--------------------------------------|----------------------------|
| 2012 | unknown | $18,600 | $15,700 |
| 2013 | $62,720 | $44,400 | $21,550 |
| 2014 | $57,828 | $27,900 | $21,750 |
| 2015 | $58,794 | $27,200 | $8,000 |
| 2016 | $59,330 | $9,600 | $10,800 |
| 2017 | $69,170 | $3,800 | $8,500 |

These numbers do not add up. Where is Otani's money coming from? This evidence establishes she is not contributing funds single-handedly—she is part of a larger coordinated donation apparatus, i.e., MAI's donation apparatus.

Defendants argue that Otani's gambling history is irrelevant to the charged conspiracy and therefore should be excluded. *See* ECF No. 347 at 6-8. Specifically, Defendants focus on the idea that Otani's gambling history is totally disconnected from whether she engaged in a conspiracy to bribe Defendant Kaneshiro. Not so— Defendants omit the link in that evidentiary chain. The United States seeks to introduce evidence of Otani's gambling, juxtaposed with her annual MAI salary, to demonstrate that she could not have single-handedly made the level of donations she

---

[1] During her visits to the casino, Otani did have gambling wins, but she netted an overall loss over the years. For example, in 2012, she walked away with an overall net win of $1,000. In 2013, she had a net loss of $27,000. In 2014, she had a net loss of $22,900. In 2015, she had a net loss of $23,200. In 2016, she had a net loss of $4,600. In 2017, she had a net loss of $3,800.

[2] These political contributions do not account for the approximately $32,000 in straw contributions by Otani through J.A., R.A, and J.H. to various public officials, including Kaneshiro, during this time period.

did during the years of the conspiracy. That she nonetheless did so is evidence of another force in effect: the MAI political machine flexing its muscles. That is, the amount of money Otani expends when gambling and contributing to politicians tends to show her knowing involvement in the MAI political apparatus, which involved coordinated efforts to bundle contributions from various sources and use straw contributions, all of which was eventually used to bribe Defendant Kaneshiro. Her knowing involvement in the MAI political apparatus is important evidence of her participation in the charged conspiracy. The MAI defendants' scheme to maliciously prosecute L.J.M. was taken from the playbook they frequently used, were very familiar with, and understood could be used to bribe Kaneshiro in exchange for getting what they wanted out of him. *See, e.g., United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (holding that where "actions tend to show the conspiratorial relationship between [the coconspirators], during the life of the conspiracy, … such 'other acts' are intrinsic to the Government's proof and not subject to Rule 404(b)"). Thus, these facts will allow the United States to tell a coherent and comprehensible story of the crime charged and are not 404(b) evidence. *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002).

To the extent this constitutes other act evidence under 404(b), however, the evidence of Otani's salary compared to her prolific spending on gambling and political donations—sometimes over 50 percent of her annual pay—is admissible.

*See, e.g., United States v. Jackson*, 882 F.2d 1444, 1449 (9th Cir. 1989) (no error when prosecution was permitted to introduce evidence of defendant's financial difficulties in fraud trial in effort to show financial motive for scheme). Rule 404(b) "is a rule of inclusion – not exclusion – which references at least three categories of other "acts" encompassing the inner workings of the mind: motive, intent, and knowledge." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc). The disputed evidence meets the test under Rule 404(b) because it tends to show that Otani knowingly and intentionally bundled donations or made straw donations to Kaneshiro and others as part of her role in the MAI political apparatus; her own financial condition would not have allowed her to do so single-handedly. Moreover, Otani's gambling is not too remote in time because it was ongoing throughout the years of the conspiracy when she and others actively participated in bundling their contributions to Kaneshiro and other candidates. Lastly, there is sufficient evidence of Otani's gambling, annual salary, and political donations through casino records, MAI records, and campaign contribution records.

To the extent the Court is concerned that evidence of Otani's gambling may improperly cast shade on Otani's character as an avid gambler, the Court may issue a limiting instruction to cure any undue prejudice under Rule 403.

//

//

6

2. *Otani's Obstruction of the Grand Jury*

Defendants seek to exclude evidence of Otani's obstruction in the grand jury on the basis that it encompasses a separate and uncharged conspiracy, and is not material, close in time to the other acts in the conspiracy, or attributable to the other defendants. As argued in the United States' Motion *in Limine* 5 on this point (ECF No. 349), Defendants' arguments lack merit.

Defendant Sheri Tanaka spearheaded the MAI machine in preventing the grand jury for the District of Hawaii from uncovering the crimes in this case. Although the grand jury proceedings occurred slightly over three years after the L.J.M. case was dismissed, that passage of time does not by itself dictate whether the obstruction was a wholly separate conspiracy.[3] Nor do the bare facts lend themselves to that conclusion. Rather, Otani's (and others') obstructive conduct in the grand jury involved the same cast of individuals involved in the original effort to wrongfully prosecute L.J.M. – Tanaka, Otani, Fujii, McDonald, and many MAI associates. Their obstructive conduct in the grand jury was a continuation of their efforts to legitimize their prior criminal actions and hinder any efforts of the United States to uncover those actions. Case law supports the notion that an effort to cover up a crime is profound evidence of consciousness of guilt as to that crime and a

---

[3] Moreover, if a "wholly separate conspiracy's" object was to obstruct the investigation of the initial conspiracy, calling it "wholly separate" does nothing to disturb the admissibility of the obstructive conduct.

7

continuance of that conspiracy that properly should be placed before the jury. And even if their obstructive acts *did* constitute a separate, uncharged conspiracy, it is not clear why that matters. What matters is that the MAI defendants, represented by Tanaka, under the employment and leadership of Dennis Mitsunaga, worked together to prevent the grand jury from uncovering evidence of their crimes. That is relevant proof relating to their knowledge and collective consciousness of guilt, and should be placed before the jury. *See United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976) ("the concealment of evidence subsequent to a commission of a crime or evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact."); *United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) ("evidence of the Collins' attempts to induce witnesses to lie is indicative of consciousness of guilt and may be placed before the jury").

Defendants make the curious argument – without any supporting case law – that the "government is required to show that the other act evidence was committed by *all* of the defendants" because the United States has charged a conspiracy between the defendants. ECF No. 347 at 9 (emphasis added). That argument misses the mark. Even as to overt acts, there is no requirement that all defendants commit one. *See Braverman v. United States*, 317 U.S. 49, 53 (1942) ("The overt act, without proof of which a charge of conspiracy cannot be submitted to the jury, may be that of only

a single one of the conspirators and need not be itself a crime."); *Lyman*, 592 F.2d at 500 ("Among the elements required to support a conspiracy conviction is proof of only one overt act in furtherance of the illegal purpose."). And where "other act" evidence only implicates one defendant, the proper approach is to issue a limiting instruction—not exclude the evidence. *See United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) ("Even if portions of Dreier's testimony could be categorized as 'other crimes' evidence, the district court would not have abused its discretion in admitting it. The additional acts predating the conspiracy pertained to Allen only, and the court issued a cautionary instruction as to Allen.").

As the United States has argued throughout, Otani's obstruction is as probative of the charged conspiracy as it is probative of her consciousness of guilt: as soon as she realized law enforcement was onto her criminal acts, she took steps within her reach to obstruct the investigation. That included attempting to dissuade her niece—who was a straw donor to Kaneshiro's campaign—from testifying before the grand jury. *See* United States' Motion *in Limine* No. 5 at 2–4. As such, these acts are, at a minimum, admissible against Otani to show her knowing participation in the charged conspiracy and consciousness of guilt surrounding the charged conspiracy.

However, even if Defendants' argument that *all* defendants must somehow commit the "other act" were true (which it is not), Otani's obstructive acts involve

9

not only her, but also her co-Defendants and other MAI affiliates, who acted in concert with her, such as Tanaka, who was her attorney during the time she obstructed the grand jury. As a result, the evidence will show that the other Defendants were involved in this obstruction effort.

For all of the reasons set forth herein, the Court should deny the Defendants' Motion *in Limine* No. 16.

Dated: February 2, 2024.                     Respectfully submitted,

                                                             MERRICK B. GARLAND
                                                             Attorney General
                                                             */s/ Janaki G. Chopra*
                                                             MICHAEL G. WHEAT
                                                             JOSEPH J.M. ORABONA
                                                             JANAKI G. CHOPRA
                                                             COLIN M. MCDONALD
                                                             ANDREW Y. CHIANG
                                                             Special Attorneys of the United States

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | CR No. 22-00048-TMB-WRP<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Janaki G. Chopra, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893. I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 2, 2024.        */s/ Janaki G. Chopra*
                                       JANAKI G. CHOPRA