MERRICK B. GARLAND
Attorney General
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Andrew.Chiang@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 22-00048-TMB-NC |
| Plaintiff, | UNITED STATES' REDACTED RESPONSE IN OPPOSITION TO TANAKA'S MOTION TO SEVER AND RELATED JOINDERS; POSITION ON CONTINUANCE OF TRIAL [ECF 404, 405, 417, 418] |
| v. | |
| KEITH MITSUYOSHI KANESHIRO (1), DENNIS KUNIYUKI MITSUNAGA (2), TERRI ANN OTANI (3), AARON SHUNICHI FUJII (4), CHAD MICHAEL MCDONALD (5), SHERI JEAN TANAKA (6), | Date:    February 26, 2024 Time:    9:00 a.m. Judge:   Hon. Timothy M. Burgess |
| Defendants. | |

UNITED STATES' REDACTED RESPONSE IN OPPOSITION
TO TANAKA'S MOTION TO SEVER AND RELATED
JOINDERS; POSITION ON CONTINUANCE OF TRIAL

I

<u>INTRODUCTION</u>

Severing Sheri Tanaka from her co-conspirators in this complex conspiracy would be a profound miscarriage of justice. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Left holding the bag would be the United States, the Court, the public, and the victim in this case. Particularly in a months-long trial, severance "would impair both the efficiency and the fairness of the criminal justice system," requiring "prosecutors [to] bring separate proceedings, presenting the same evidence

again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying," and potentially subjecting the public to "the scandal and inequity of inconsistent verdicts." *Id.*

Third, severance would be all the more unjust because the very focus of this case is on the defendants' manipulation of the criminal justice system to achieve their corrupt objectives. The First Superseding Indictment (FSI) alleges that Tanaka and her MAI co-conspirators conspired to bribe Keith Kaneshiro to prosecute the victim in this case, L.J.M., in order "to injure, oppress, threaten, and intimidate L.J.M." because she sought legal recourse against MAI in federal court. See FSI ¶¶ 21(3), 24. Tanaka was a key participant in this plot. According to Judge Nakasone (the judge who ultimately dismissed the charges against L.J.M. for lack of probable cause), Tanaka was the one who "orchestrated the vast majority of the investigation" underpinning the baseless charges against L.J.M. ECF 383 at 6. Tanaka then obstructed the grand jury investigation in *this* case by, among other things, helping witnesses from MAI prepare false, scripted speeches designed to block the grand jury's inquiry into the charged conspiracies. See ECF 288, United States' Unredacted Consolidated Response to Misconduct Motions at 10–21 (describing Tanaka's and her co-conspirators' obstruction of the grand jury investigation); see also ECF 422, United States' Unredacted Response to Motion *in Limine* No. 12 (broadly describing Tanaka's orchestration of obstruction of justice in the grand jury). Moreover, Tanaka was MAI's attorney acting on behalf of her co-

2

defendants—officers and executives of MAI—during the course of the charged offenses. As the FSI makes clear, Tanaka was MAI's primary tool in facilitating the charged conspiracies. All of the defendants' relative culpabilities must therefore be assessed and decided together. If there were ever a case exemplifying "a preference in the federal system for joint trials" and its "vital role in the criminal justice system," it is this one. *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

This prosecution team aims do everything it can do to preserve a joint trial for all six defendants. █████████████████████████████

In the event the Court believes Tanaka's professed prejudice cannot be resolved in time—a claim this Court should view skeptically—the United States requests that the Court continue the trial for all defendants to preserve a joint trial. The remaining five defendants have each made or acceded to multiple motions to continue this trial, each is free on bond, and each has "agreed that the case should be deemed complex" under 18 U.S.C. § 3161(h)(7)(B)(ii). ECF 135 at 2. Failure to grant a continuance would result in a miscarriage of justice under § 3161(h)(7)(B)(i). The Court may also exclude time under § 3161(h)(6), under which "[e]very circuit to consider this section has concluded that 'an exclusion to one defendant applies to all co-defendants." *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993). In short, the Speedy Trial Act is designed to support a continuance for all defendants to effectuate a joint trial in the circumstances presented here.

Although the loss of the current jury pool would be unfortunate, at least a final panel of jurors has not been selected or begun their months-long service. Severing Tanaka in lieu of continuing all defendants would produce a *worse* outcome—requiring two fully screened juries to complete two multiple month trials. Judicial efficiency, basic principles of justice, and the law on severance, all support denying Tanaka's motion. She should not be severed out of this conspiracy, even if it means continuing the trial for all of the defendants together.

II

DISCUSSION

Tanaka has not met her heavy burden of showing that severance is the only option under the circumstances. On the contrary, the circumstances fall strongly in favor of maintaining joinder. The Court should therefore preserve the properly joined defendants for a single trial. Moreover, it can easily do so by maintaining the current trial date or by ordering a continuance for all of the defendants.

A.   DIFFICULT STANDARD FOR SEVERANCE

"Severance under Rule 14 is proper only when the defendant carries the difficult burden of demonstrating undue prejudice resulting from a joint trial." *United States v. Davis*, 663 F.2d 824, 832 (9th Cir. 1981). This is because "'[j]oinder is the rule rather than the exception.'" *United States v. Kaplan*, 895 F.2d 618, 621 (9th Cir. 1990) (internal quotations omitted). "Generally speaking, defendants jointly charged are to be jointly tried." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). Moreover, "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

5

The Supreme Court has often underscored the "preference in the federal system for joint trials" and its "vital role in the criminal justice system," *Zafiro*, 506 U.S. at 537, describing the damage done when defendants are severed:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice and avoiding inconsistent verdicts and enabling more accurate assessment of relatively culpability—advantages which sometimes operate to the defendant's benefit. Even part from these tactical considerations, joint trial generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson*, 481 U.S. at 210.

Consequently, the Ninth Circuit has left no doubt that the burden for a severance is extremely difficult. "Clearly, this is not an easy burden to meet." *Escalante*, 637 F.2d at 1201. It is a "heavy burden," *United States v. Patterson*, 819 F.2d 1495, 1502 (9th Cir. 1987); "difficult," *United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978); necessitating "a high standard for a showing of prejudice." *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994).

"The test for abuse of discretion by the district court is whether a joint trial was *so manifestly prejudicial* as to require the trial judge to exercise his discretion *in but one way*, by ordering a separate trial." *Fernandez*, 388 F.3d at 1241 (emphases added; internal quotations omitted). Put it another way, the prejudice to the defendant must be "of such magnitude that the defendant was denied a fair trial,"

6

*Vasquez-Velasco*, 15 F.3d at 846 (internal quotations omitted), "outweigh[ing] the dominant concern with judicial economy" such that it "*compelled* the exercise of the court's discretion to sever." *Kaplan*, 895 F.2d at 621 (emphasis added).

B.    TANAKA FAILS THE HIGH STANDARD

Tanaka falls well short of this "heavy burden." *Patterson*, 819 F.2d at 1502. She—joined by her co-defendants—presents two primary grounds for severance.

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

██  ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████ She has been a party to this case since September

2022—comprising over 16 months of trial preparation. In fact, Tanaka has easily

been the most litigious defendant in this case, filing four failed motions to dismiss

the indictment. See ECF 120, 165, 205, and 228. One of those motions involved

Tanaka's unsuccessful attempt to disqualify this team from prosecuting her. ECF

228 at 7–9. She also joined a massive prosecutorial misconduct motion (also

unsuccessful) impugning the prosecutors' actions during a 16 month grand jury

investigation. See ECF 273. And she has filed seven of the defendants' sixteen

collective motions *in limine* pending before the Court. See ECF 344–46.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

The Ninth Circuit generally follows a four factor test for assessing the prejudicial effect of a joint trial, including: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendant can show a particularized risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *Fernandez*, 388 F.3d at 1241. "The first two factors are the most important in this inquiry." *Id.*; see *United States v. Gaines*, 563 F.2d 1352, 1355 (9th Cir. 1977) ("the prime consideration is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in the light of its volume and the limited admissibility").

Tanaka's argument does not fall under the two "most important" factors of the prejudice inquiry. Instead, it falls under the final prong—"whether the defendant can show a particularized risk that the joint trial would compromise a specific trial right." *Fernandez*, 388 F.3d at 1241. ████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████ The ramifications of

9

severing this complex conspiracy would be significant—requiring a second months-long trial, ordering 80 witnesses return to court for testimony, see ECF 324 at 2, forcing the victim relive the trauma of another public proceeding, distorting the jury's "assessment of relative culpability" among the conspirators, and risking "the scandal and inequity of inconsistent verdicts." *Richardson*, 481 U.S. at 210.

Tanaka therefore cannot show that joinder is "so manifestly prejudicial" that it "outweigh[s] the dominant concern with judicial economy and compel[s] exercise of the court's discretion to sever." *Kaplan*, 895 F.2d at 621. Here, the concern with judicial economy is unquestionably "dominant"—the scale of the conspiracies charged, the size of the upcoming trial, and the number of witnesses expected to be called, all tip heavily in favor of a joint trial that "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burdens upon citizens to sacrifice time and money to serve on juries and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978).

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



For these reasons, the Court should deny Tanaka's motion to sever.

### C.   IF NECESSARY, TRIAL CONTINUANCE IS THE PROPER OPTION, NOT SEVERANCE

If the Court concludes that more time is required for Tanaka to prepare for trial, that would still not justify severing her out. Severance is warranted only when "a joint trial would be so prejudicial that the trial judge *could exercise his discretion in only one way*." *Escalante*, 637 F.2d at 1201 (emphasis added). In other words, the decision to sever must be "compelled" by the circumstances. *Kaplan*, 895 F.2d at 621. Here, the Court has options besides the drastic recourse of severance.

Specifically, the Court can continue the trial for all defendants until Tanaka is ready to stand trial. Numerous provisions of the Speedy Trial statute support this approach.

First, § 3161(h)(6) provides for a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." "Every circuit to consider this section has concluded that 'an exclusion to one defendant applies to all co-defendants." *Butz*, 982 F.2d at 1381. Under this well-established ground for excluding time, this Court can justifiably continue the trial for a reasonable period of time until Tanaka is ready to proceed.

Second, all defendants have "agreed that the case should be deemed complex" under 18 U.S.C. § 3161(h)(7)(B)(ii). See ECF 135 at 2–3. 

Third, failure to grant a continuance would "result in a miscarriage of justice" under § 3161(h)(7)(B)(i). As the United States has argued throughout this response, severing Tanaka from her co-conspirators would constitute a miscarriage of justice. If the Court believes the only alternative to severance is to continue the trial, then the failure to grant such a continuance in the proceeding would result in a miscarriage of justice as well. Accordingly, for similar reasons, the ends of justice would also support a continuance under § 3161(h)(7)(A).

"It is clear that the STA was not intended to alter existing rules of joinder." *United States v. King*, 483 F.3d 969, 974 (9th Cir. 2007). "Congress recognized the utility of multi-defendants trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting severance where the criterion was simply the passage of time." *Id.* (internal quotations omitted). Thus nothing in the Speedy Trial statute prevents the Court from continuing the trial as to all defendants—"the proper test is whether the totality of the circumstances warrants a conclusion that the delay was unreasonable." *United States v. Messer*, 197 F.3d 330, 338 (9th Cir. 1999).

Continuing the trial and excluding time under the Speedy Trial is manifestly reasonable here. Keeping the defendants together "is particularly appropriate where the co-defendants are charged with conspiracy," *Fernandez*, 388 F.3d at 1243, and where "the joined counts are logically related, and there is a large area of overlapping proof." *United States v. Anderson*, 642 F.2d 281, 284 (9th Cir. 1981). Particularly in a conspiracy as complex as this one, necessitating a two month trial with an anticipated 80 witnesses, including the victim, "the dominant concern with judicial economy" must prevail. *Kaplan*, 895 F.2d at 621.

In addition, any continuance would not be lengthy—████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

     The remaining five defendants have not articulated any concrete injuries that would bar a reasonable continuance. In fact, each of Tanaka's co-defendants have made, or at least acceded to, multiple motions to continue this trial—five continuances in all—reaching all the way up to the March 12, 2024 trial date. See ECF 57, 69, 135, 198, and 406. No unreasonable or prejudicial delay arises when the defendants have previously "affirmatively indicated during much of this period that [they were] willing to countenance extensive pretrial delays." *United States v. Vasquez*, 918 F.2d 329, 337 (2d Cir. 1990). Moreover, each of the defendants in this case are free on bond, not in custody. The Ninth Circuit, along with "a number of circuits, have recognized that the fact that the defendant is not incarcerated weighs against a finding of prejudice." *Messer*, 197 F.3d at 340.

     Finally, if the price of not continuing the trial is severance, then this decision would significantly "impair both the efficiency and the fairness of the criminal justice system." *Richardson*, 481 U.S. at 210.██████████████████████

███████████████████████████████████████████████

████████████████████████████████ Moreover, without Tanaka in the courtroom, her co-defendants would benefit from the distortion in the "accurate assessment of relative culpability." *Id.* Prosecutors would have to present "the same evidence again and again" in two multi-month trials, forcing "victims and witnesses

to repeat the inconvenience (and sometimes trauma) of testifying." *Id.* In addition to the significant strain on social and judicial resources, the risk associated with inconsistent verdicts would inure to the public's detriment. *Id.*

* * *

In the face of these considerations, the defendants have not offered any persuasive reasons against a trial continuance.

First, they argue that it would be unfair to lose the prospective jurors the Court and the parties have expended resources to screen. ECF 418, Def. Opp. to Cont. at 4. At the outset, this is not the "prejudice" contemplated by severance jurisprudence. "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 *only if* there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (emphasis added). For this reason alone, this argument should be rejected out of hand. Moreover, the defendants fail to recognize that severing Tanaka would produce a worse outcome with an even greater social cost. In such a case, two fully screened and empaneled juries would have to sit for months-long trials, whereas only one trial would be required were a continuance granted in this case.

Second, they claim that a continuance would cause "severe economic hardship." ECF 418, Def. Opp. to Cont. at 4. Again, this does not engage with the "prejudice" required in the severance context. See *Zafiro*, 506 U.S. at 539. In any

15

event, the claim also seems overstated. The cost of pre-screening jurors is a marginal expense relative to the cost of all the heavy pretrial litigation that has occurred in this case, and the cost of the upcoming trial. Moreover, although "the retention of counsel is frequently an inconvenience and an expense, the Speedy Trial Clause's core concern is impairment of liberty; it does not shield a suspect or a defendant from every expense or inconvenience associated with criminal defense." *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986).

Last, the defendants suggest that their anxiety and concern about their trial forecloses a continuance. "Conclusory allegations of general anxiety and depression are present in almost every criminal prosecution." *United States v. Simmons*, 536 F.2d 827, 831 (9th Cir. 1976). Such allegations "constitute a showing of minimal prejudice of a type normally attending criminal prosecution." *Id.* In addition, their multiple motions to continue this case—five in all—belie the contention they cannot endure a reasonable continuance to account for the recent surprise developments.



["

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | CR No. 22-00048-TMB-NC<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Andrew Y. Chiang, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893. I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 14, 2024.         */s/ Andrew Y. Chiang*
                                        ANDREW Y. CHIANG

18