Andrew M. Kennedy (HI SBN 009734)
Andrew@kona-lawyer.com
Schlueter Kwiat & Kennedy LLLP
Atrium Court
75-167 Kalani St, Ste. 201
Kailua Kona, HI 96740
*Attorney for Defendant*
*Aaron Shunichi Fujii*

Attorney for
AARON SHUNICHI FUJII

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO 22-00048 TMB |
| Plaintiff, | DEFENDANT AARON SHUNICHI FUJII'S RESPONSE TO THE GOVERNMENT'S MOTION TO COMPEL RECIPROCAL DISCOVERY [DKT. NO. 450]; CERTIFICATE OF SERVICE |
| vs. | |
| AARON SHUNICHI FUJII. | |
| Defendants. | Hon. Timothy Burgess |

## DEFENDANT AARON SHUNICHI FUJII'S RESPONSE TO THE GOVERNMENT'S MOTION TO COMPEL RECIPROCAL DISCOVERY

AARON SHUNICHI FUJII hereby responds to the United States' Motion to

Compel Reciprocal Discovery pursuant to Fed. R. Crim. P. 16(b)(1).

Mr. Fujii reserves the right to rely on the advice of counsel defense. Mr. Fujii

has complied with his discovery obligations with respect to this defense.

Defendant Fujii does not intend to introduce into evidence any documents outside of what the Government has in their possession and has produced in discovery relating to this defense.

The Government is aware of attorney Sheri Tanaka's counsel to Mr. Fujii as it relates to his involvement in this case. The fact that the Mr. Fujii consulted with counsel was included in the original police complaint filed by Fujii in July 2011 ("July 2011 police report") (Attached hereto as Exhibit "A"). This July 2011 police report is referenced in the overt acts of the First Superseding Indictment. *See* ECF No. 70 at ¶¶ 22(2), (4).

The Government's filing on February 2, 2024, illustrates their awareness of the reliance upon counsel with respect to Mr. Fujii and the filing of the July 2011 police report. (*See* Dkt. No. 390, UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 14 ("Government's response in opposition to Motion in Limine No. 14"))

The topic of Motion in Limine 14 is a portion of the initial police complaint filed by Aaron Fujii in July 2011. The Government refers to the July 2011 police report as follows: "Fujii's report was a foundational moment in the conspiracy, an ace-in-the-hole to be played at the right moment against MAI's courtroom adversaries." *Id*. at 10

2

The report makes clear that it was prepared "in consultation with our attorney, Sheri J. Tanaka."   Exhibit "A" at 23.

The government quoted this excerpt from Exhibit "A" in their response in opposition to Motion in Limine No. 14:

Fujii's complaint went on, the animosity against Masui—for daring to file a lawsuit—became more palpable: "It was his fault alone and not the fault of MAI, it is *ludicrous* that S Masui is seeking compensation from MAI." *Id.* at 21 (emphasis added). Towards the conclusion, Fujii stated that, in "consultation with our attorney," Defendant Tanaka, "we believe that . . . Theft ha[s] been committed by Civil Attorney S Masui and [L.J.M.]." *Id.* at 24.

*See* Dkt. No. 390, Government's response in opposition to Motion in Limine No. 14 at 6. (emphasis added)

Mr. Fujii may rely on the evidence contained in the Government's own discovery to support an Advice of Counsel defense.   Should Mr. Fujii choose to testify, he would have the right to testify as to his complete involvement in the alleged conduct, including persons from whom he received advice.

DATED: February 25, 2024; Honolulu, Hawaii,

/S/ ANDREW M. KENNEDY
ANDREW M. KENNEDY
Attorney for Aaron Shunichi Fujii

3

# EXHIBIT "A"

Honolulu Police Department

**12-258968**

## Incident Report

<table>
<tr>
<td rowspan="7">B A S I C</td>
<td colspan="3"><b>Incident Type</b><br>THEFT 1 FB</td>
<td>Code<br>060</td>
<td>Reclass</td>
<td>X Key Rpt</td>
<td>F/U</td>
<td><b>Status</b><br>Open</td>
<td>Disp.</td>
<td colspan="2"><b>HRS Section No.</b><br>HRS 708-0830.5</td>
</tr>
<tr>
<td colspan="11"><b>Location of Offense</b><br>747 Amana St. #216, Honolulu, HI</td>
</tr>
<tr>
<td colspan="8"><b>Responsible Officer (Rank Last, First Middle Name</b><br>MPO Lozano, Cyrel R.</td>
<td colspan="2">(ID Number)<br>100716</td>
<td><b>Division</b><br>D-8</td>
</tr>
<tr>
<td><b>Beat of Offense</b><br>178</td>
<td><b>Location Code</b><br>16</td>
<td><b>Domestic Violence</b><br>No</td>
<td colspan="2"><b>Date/ Day/ Time Reported</b><br>7-17-2012 /Tue /1000</td>
<td colspan="3"><b>Date/ Day / Time Occurred From</b><br>8-31-2010 /Tue / 0830</td>
<td colspan="3"><b>Date/ Day/ Time Occurred To</b><br>10-3-2011 /Mon / 0830</td>
</tr>
<tr>
<td colspan="11"><b>Related Reports/ Comments</b></td>
</tr>
</table>

<table>
<tr>
<td rowspan="13">P E R S O N</td>
<td colspan="7">☐ Business/ School    ☒ Complainant    ☐ Victim    ☐ Reporting Person    ☐ Finder    ☐ Witness    ☐ Suspect</td>
<td colspan="2">Race:   Japanese /</td>
</tr>
<tr>
<td colspan="7"><b>Name (Last, First Middle)</b><br>Fujii, Aaron S.</td>
<td><b>DOB</b><br>957</td>
<td><b>Age</b> | <b>Juv.</b> No | <b>Sex</b> M</td>
</tr>
<tr>
<td colspan="4"><b>AKA</b></td>
<td colspan="5"><b>Occupation/ For Juvenile- School Attending</b><br>Vice President</td>
</tr>
<tr>
<td><b>SSN</b></td>
<td colspan="2"><b>SID</b></td>
<td colspan="2"><b>Special Status</b></td>
<td colspan="2"><b>BAC</b></td>
<td colspan="2"><b>BAC Results</b></td>
</tr>
<tr>
<td colspan="9"><b>Home Address City- Country- State- Zip</b><br>Hon. HI 96822</td>
</tr>
<tr>
<td colspan="9"><b>Employer/ Business Address City- Country- State- Zip</b><br>Mitsunaga and Associates Inc./747 Amana St. #216 Hon. HI 96814</td>
</tr>
<tr>
<td colspan="9"><b>Local Address (for visitors)</b></td>
</tr>
<tr>
<td colspan="2"><b>Home Phone</b></td>
<td colspan="2"><b>Local Phone</b></td>
<td colspan="2"><b>Business Phone</b><br>9457882</td>
<td colspan="2"><b>Work Hours</b><br>varies</td>
<td><b>At Loc Addr Until</b></td>
</tr>
<tr>
<td><b>Height</b></td>
<td><b>Weight</b></td>
<td><b>Build</b></td>
<td><b>Hair Color</b></td>
<td><b>Hair Char</b></td>
<td><b>Eyes</b></td>
<td><b>Compl</b></td>
<td><b>Voice</b></td>
<td><b>Fac Hair Color</b>   <b>Facial Hair Char</b></td>
</tr>
<tr>
<td colspan="2"><b>Victim Rel To Suspect</b><br>AQ</td>
<td colspan="3"><b>Who Described</b></td>
<td colspan="2"><b>Will Prosecute</b><br>Yes</td>
<td colspan="2"><b>Peculiarities</b></td>
</tr>
<tr>
<td colspan="9"><b>Clothing</b></td>
</tr>
</table>

<table>
<tr>
<td rowspan="4">H O S P</td>
<td><b>Injured</b><br>No</td>
<td><b>Treated</b><br>No</td>
<td colspan="2"><b>Hospital</b></td>
<td colspan="2"><b>Transported By</b></td>
<td><b>EMS #</b></td>
</tr>
<tr>
<td colspan="3"><b>Treatment Reason</b><br>☐ Mental   ☐ Suicide   ☐ J.C.F   ☐ S.C.F   ☐ Other<br>☐ Intox   ☐ Drugs   ☐ Indust   ☐ Uncon   ☐ Resisted Assist</td>
<td><b>Patient Condition</b></td>
<td><b>Patient Disposition</b></td>
<td colspan="2"><b>Attending Physician</b></td>
</tr>
</table>

HONOLULU POLICE DEPARTMENT

CONFIDENTIAL

To be used for Law Enforcement purposes only. **Not to be** duplicated. It and its contents are not to be distributed outside your agency.

<table>
<tr>
<td>Submitted By: LOZANO, CYREL R.</td>
<td colspan="2">Approved By: LOUDERMILK.BRYAN</td>
</tr>
<tr>
<td>ID Number: 100716   Rank: MPO   Date/ Time: 7-17-2012 / 1306</td>
<td colspan="2">ID Number: 508400   Rank: Sgt.   Date/ Time: 7-17-2012 / 1311</td>
</tr>
<tr>
<td>MDC-HPD-192 Rev. Dec. 2003</td>
<td>This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.</td>
<td>Control No.1464328</td>
</tr>
</table>

**Honolulu Police Department**

**12-258968**

| ☐ Business/School | ☐ Complainant | ☐ Victim | ☐ Reporting Person | ☐ Finder | ☐ Witness | ☒ Suspect | Race: | / | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Name (Last, First Middle)**
L.J.M.

| DOB | Age | Juv. | Sex |
|---|---|---|---|
| | | No | F |

| AKA | Occupation/ For Juvenile- School Attending |
|---|---|
| | interior designer |

**PERSON**

| SSN | SID | Special Status | BAC | BAC Results |
|---|---|---|---|---|

Home Address City- Country- State- Zip

Employer/ Business Address City- Country- State- Zip

**Local Address (for visitors)**

| Home Phone | Local Phone | Business Phone | Work Hours | At Loc Addr Until |
|---|---|---|---|---|
| unknown | | | | |

| Height | Weight | Build | Hair Color | Hair Char | Eyes | Compl | Voice | Fac Hair Color | Facial Hair Char |
|---|---|---|---|---|---|---|---|---|---|
| 5'4" | 115 | | Dk Brn | | Brown | | | | |

| Victim Rel To Suspect | Who Described | Will Prosecute | Peculiarities | |
|---|---|---|---|---|
| | | No | | |

Clothing

**HOSP**

| Injured | Treated | Hospital | Transported By | EMS # |
|---|---|---|---|---|
| No | No | | | |

**Treatment Reason**
☐ Mental ☐ Suicide ☐ I.C.F ☐ S.C.F ☐ Other
☐ Intox ☐ Drugs ☐ Indust ☐ Uncon ☐ Resisted Assist

| Patient Condition | Patient Disposition | Attending Physician |
|---|---|---|

---

| ☐ Business/School | ☐ Complainant | ☐ Victim | ☐ Reporting Person | ☐ Finder | ☐ Witness | ☒ Suspect | Race: | / | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Name (Last, First Middle)**
Masui, Standford H.

| DOB | Age | Juv. | Sex |
|---|---|---|---|
| | | | M |

| AKA | Occupation/ For Juvenile- School Attending |
|---|---|
| | attorney |

**PERSON**

| SSN | SID | Special Status | BAC | BAC Results |
|---|---|---|---|---|

Home Address City- Country- State- Zip

Employer/ Business Address City- Country- State- Zip
500 Ala Moana Blvd. #400 Hon. HI 96813

**Local Address (for visitors)**

| Home Phone | Local Phone | Business Phone | Work Hours | At Loc Addr Until |
|---|---|---|---|---|
| | | 5438346 | | |

| Height | Weight | Build | Hair Color | Hair Char | Eyes | Compl | Voice | Fac Hair Color | Facial Hair Char |
|---|---|---|---|---|---|---|---|---|---|

| Victim Rel To Suspect | Who Described | Will Prosecute | Peculiarities | |
|---|---|---|---|---|
| | | No | | |

Clothing

**HOSP**

| Injured | Treated | Hospital | Transported By | EMS # |
|---|---|---|---|---|
| No | No | | | |

**Treatment Reason**
☐ Mental ☐ Suicide ☐ I.C.F ☐ S.C.F ☐ Other
☐ Intox ☐ Drugs ☐ Indust ☐ Uncon ☐ Resisted Assist

| Patient Condition | Patient Disposition | Attending Physician |
|---|---|---|

**MO**

| A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | Latents |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 4 | | 4 | | 4 | 4 | 4 | | 4 | | 4 | | 4 | 4 | 4 | 4 | 4 | | Not Dusted |

---

| Submitted By: LOZANO, CYREL R. | Approved By: LOUDERMILK,BRYAN |
|---|---|
| ID Number: 100716   Rank: MPO   Date/ Time: 7-17-2012 / 1306 | ID Number: 508400   Rank: Sgt.   Date/ Time: 7-17-2012 / 1311 |

MDC-HPD-192 Rev. Dec. 2003

This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.

Control No.1464328

KM-GJ-RPTS-000027.04

**SYNOPSIS**

On above date/time/location, L.J.M. entered into an agreement with MASUI to perform work on behalf of (MAI). L.J.M. conducted her work without the consent/knowledge of the owners of (MAI) while receiving money. FUJII, V.P. of (MAI), is willing to prosecute.

| Submitted By: LOZANO, CYREL R. | | | Approved By: LOUDERMILK, BRYAN | | |
|---|---|---|---|---|---|
| ID Number: 100716 | Rank: MPO | Date/ Time: 7-17-2012 / 1306 | ID Number: 508400 | Rank: Sgt. | Date/ Time: 7-17-2012 / 1311 |

MDC-HPD-192 Rev. Dec. 2003   This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.   Control No. 1464328

Honolulu Police Department

**12-258968**

## Property Page

| Incident Type | | Code | Reclass | X Key Rpt | F/U | Status | Disp. | HRS Section No |
|---|---|---|---|---|---|---|---|---|
| THEFT 1 FB | | 060 | | | | Open | | HRS 708-0830.5 |

| Complainant (Last, First Middle Name) | Date of Occurrence |
|---|---|
| Fujii, Aaron S. | 8-31-2010 |

| Location of Offense |
|---|
| 747 Amana St. #216 |

| Item# | Status | Type | Serial/ Other ID | Description/ Mfr/ Model/ Gun Make/ Type Cal Ga. | Property Codes | Qty | Value |
|---|---|---|---|---|---|---|---|
| 1 | ST | I | none | Mitsunaga and Associates Inc. company time & resources and compensation received from unapproved projects | Yother | 1 | 21,000.00 |

Value Total: **$21,000.00**

| Submitted By: LOZANO, CYREL R. | | | Approved By: LOUDERMILK, BRYAN | | |
|---|---|---|---|---|---|
| ID Number: 100716 | Rank: MPO | Date/ Time: 7-17-2012 / 1306 | ID Number: 508400 | Rank: Sgt. | Date/ Time: 7-17-2012 / 1311 |

MDC-HPD-192B1 Rev. Dec. 2003       This report was prepared, signed, reviewed, submitted, and filed electronically via secure       Control No.1464328
network in accord with Honolulu Police Department policy.

KM-GJ-RPTS-000027.06

**Honolulu Police Department**

12-258968

**Continuation Page**

| Incident Type<br>THEFT 1 FB | Code<br>060 | ☐ Reclass ☒ Key Rpt ☐ F/U | Status<br>Open | Disp. | HRS Section No<br>HRS 708-0830.5 |
|---|---|---|---|---|---|
| Complainant (Last, First Middle Name)<br>Fujii, Aaron S. | | | | | Date of Occurrence<br>8-31-2010 |
| Location of Offense<br>747 Amana St. #216 | | | | | |

ASSIGNMENT/ARRIVAL:

7-17-12/1000 hours - I was assigned as 2M865 and was on routine patrol when I picked up this onbeat theft case at 91-544 Awakumoku St. with complainant Aaron FUJII.

SCENE/TIME ELEMENT:

The scene is 747 Amana St. #216 and the time element is 8-31-10 through 10-3-11.

BACKGROUND INFORMATION:

The Mitsunaga and Associates Incorporated (MAI) is an architecture, engineering, planning, project and construction management company. Aaron FUJII is the Vice-President of (MAI). Laurel L.J.M. was an interior designer for (MAI). Standford MASUI entered into an agreement with L.J.M. to work on a project at 1578 Alewa Drive without approval and knowledge of FUJII and (MAI).

COMPLAINANT STATEMENT:

Aaron FUJII related that  L.J.M.  was an interior designer for (MAI). On 8-31-10, FUJII related that MASUI hired and entered into an agreement with L.J.M. without approval or knowledge of (MAI) to work on a project. FUJII related that this agreement pursued by MASUI afforded him the opportunity of obtaining the professional services of an employee at a reputable firm at a significantly lower cost that if he had contracted services directly with (MAI).

From 8-31-10, MASUI and L.J.M. began formulating plans to work on his project outside the premises of (MAI). As the project progressed, L.J.M. began working on the project at work using the company's time, resources, equipment, fax, email, etc. still unknown to FUJII or any administrator at (MAI). FUJII related that company policy prohibits employees from working on any projects without approval from (MAI).

On 2-25-11, MASUI personally wrote out a check for $8467.75 to L.J.M. for her services without the knowledge or approval from (MAI). FUJII related that the work had been done under the table without the knowledge of (MAI).

At around 10-3-11, the work being performed at 1578 Alewa Drive began to be plagued with cost over runs, lack of materials, poor planning, substandard, unlicensed contractors, etc. MASUI terminated everyone from the project including L.J.M.

After the termination, MASUI filed a civil suit against (MAI) seeking monetary damages due to the unsuccessful project. FUJII related that only at this time did they discover the actions of L.J.M. and what she had been doing without the knowledge of (MAI)

FUJII related that he estimated the theft by L.J.M. to be about $21,000 due to the company time and resources spent for her personal benefit without knowledge of (MAI). L.J.M. was subsequently terminated from (MAI) on 10-3-11.

| Submitted By: LOZANO, CYREL R. | | | Approved By: LOUDERMILK,BRYAN | | |
|---|---|---|---|---|---|
| ID Number: 100716 | Rank: MPO | Date/ Time: 7-17-2012 / 1306 | ID Number: 508400 | Rank: Sgt. | Date/ Time: 7-17-2012 / 1311 |

MDC-HPD-192B Rev. Dec. 2003

This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.

Control No. 1464328

KM-GJ-RPTS-000027.07

Honolulu Police Department

**12-258968**

**Continuation Page**

| Incident Type THEFT 1 FB | Code 060 | ☐ Reclass ☒ Key Rpt ☐ F/U | Status Open | Disp. | HRS Section No HRS 708-0830.5 |
|---|---|---|---|---|---|
| Complainant (Last, First Middle Name) Fujii, Aaron S. | | | | | Date of Occurrence 8-31-2010 |
| Location of Offense 747 Amana St. #216 | | | | | |

FUJII related that they did not give permission for L.J.M. or MASUI to do this and is willing to prosecute both parties. Refer to attached statement.

COMPANY INVESTIGATION:
FUJII related that their computer technician was able to recover evidence of L.J.M. activies during company time on their computer. (MAI) was able to recover the check paid to L.J.M. from MASUI for the amount of $8467.75 on 2-25-11. Refer to attached statement.

SUSPECT #1:
FUJII identified suspect #1.
Laurel MAU
DOB: ▇▇▇▇
SSN: ▇▇▇▇
former interior designer for (MAI)
Refer to facepage for more info.

SUSPECT #2:
FUJII identified suspect #2.
Stanford MASUI, attorney
500 Ala Moana Blvd. #400
Refer to facepage for more info.

DISPOSITION:
Pending CID

| Submitted By: LOZANO, CYREL R. | | | Approved By: LOUDERMILK,BRYAN | | |
|---|---|---|---|---|---|
| ID Number: 100716 | Rank: MPO | Date/ Time: 7-17-2012 / 1306 | ID Number: 508400 | Rank: Sgt. | Date/ Time: 7-17-2012 / 1311 |

MDC-HPD-192B Rev. Dec. 2003 — This report was prepared, signed, reviewed, submitted, and filed electronically via secure network in accord with Honolulu Police Department policy.

Control No.1464328

<u>HONOLULU POLICE DEPARTMENT</u>
SUPPLEMENTAL ATTACHMENT PAGE

REPORT NUMBER: 12-258968

| Incident Type | Code | Reclassify | F/U | Status | Disposition | NRS Section Number |
|---|---|---|---|---|---|---|
| Theft 1 | 060 | ☐ Yes | ☐ | ☒ Open ☐ Closed | | 708-830.5 |

| Complainant Name: Last | First | Middle | Location of Offense | Date of Occurrence |
|---|---|---|---|---|
| Fujii | Aaron | | 747 Amana St. #216 | 8-31-10 |

## Please check the appropriate blocks (This applies only to AFR Reports)
Attach diagrams, HPD-252, etc to this form and submit to Records

| | |
|---|---|
| ☐ HPD-192C (DV Bodies) | ☐ OVUII (# of Pages_____) |
| ☐ HPD-192D (DV Statement Forms) | ☐ Warrant |
| ☐ HPD-192E (Use of Force form) # of Pages_____ | ☐ HPD-172 (Withdrawal of Complaint Forms) # of Pages_____ |
| ☒ HPD-252 (Statement Forms) # of Pages 17 | ☐ HPD-207 (Crime Lab/Work Request Forms) |
| ☐ HPD-458 (Suspect Description Forms) # of Pages_____ | ☐ HPD-393 (Written Consent to Search From) |
| ☐ Photos (# of Photos_____) | ☐ Forgery Forms (HPD-488, 489, etc) # of Pages_____ |
| ☐ Diagrams (# of Diagrams_____) | ☐ Other Court Docs. (TRO, Geo. Rest, Etc) # of Pages_____ |
| ☐ HPD-81 (Adult Constitutional Rights Form) # of Pages_____ | ☐ HPD-11 (Juvenile Constitutional Rights Form) # of Pages_____ |
| ☐ HPD-13 (Physicians Report Form) # of Pages_____ | ☐ MH-1/2/3/4 |

☐ Other (Please Print Clearly) List Form Name/Number and total pages (Shoplifting/HPD-XXX  8 Pages)

<u>For Property Inventories, enter all items into the AFR report.</u>
You may attach the inventory sheet after inputting into AFR.

| Officer's Name | ID Number | Date/Time | Supervisor's Name | ID Number | Date/Time |
|---|---|---|---|---|---|
| C-Lozano | 10076 | 7-17-12/1500 | Sgt. | 508400 | 7-18-17 |

HPD-537 (6/06)

KM-GJ-RPTS-000027.09

| | |
|---|---|
| COMPLAINANT | Aaron Fujii<br>Vice President, Chief Operating Officer<br>Mitsunaga and Associates Incorporated ("MAI")<br>747 Amana Street Suite 216<br>Honolulu, Hawaii 96814<br>Ph: (808) 945-7882 |
| ACCUSED: | Stanford H. Masui ("S Masui")<br>Seven Waterfront Suite 400<br>500 Ala Moana Blvd<br>Honolulu, Hawaii 96813<br>Ph: (808) 543-8346 |
| | L.J.M.   ("Ms L.J.M.<br>1259 Ala Mahamoe St<br>Honolulu, Hawaii 96819 |
| DATES: | August 31, 2010 thru October 3, 2011 |
| SCENE: | 1587 Alewa Drive<br>Seven Waterfront Suite 400, 500 Ala Moana Blvd<br>747 Amana Street, Suite 216 |
| DOCUMENTS SUBMITTED: | (1) E-mails (████@mitsdesign.com) extracted from MAI's computer utilized by Ms L.J.M. IT technician. (2) MAI's propriety information (documents) were recovered from a desk utilized by Ms L.J.M. (3) Time Sheets (4) Cell Phone records. |

SYNOPSIS

On the above dates S Masui and Ms L.J.M. intentionally diverted services meant for MAI's client for S. Masui's personal benefit at the expense of MAI. No one at MAI had authorized, consented, approved nor had knowledge of the agreement between Ms L.J.M. and S Masui to work on his project on MAI's time clock working out of MAI's office using MAI's equipment, resources, supplies, catalogs, fax, email and other services. S Masui paid Ms L.J.M. for services rendered and made no payment to MAI.

BACKGROUND OF THIS CASE

Beginning on August 31, 2010, S Masui, a practicing civil attorney hired Ms L.J.M. an employee of MAI to work on his project at 1578 Alewa drive. This arrangement and agreement was unknown to MAI. The oral agreement entered between the two parties were entered into without the approval and knowledge of MAI. This agreement pursued by S Masui afforded him the opportunity of obtaining the professional services of an employee from a reputable firm at a significant lower cost then if he had contracted services directly with the firm itself.

I, Aaron Fujii, certify that the above and following information contained herein are to the best of my knowledge.

_____ Aaron Fujii          _____ Date

747 Amana 216
c4o
808-736-5

Initially S Masui and Ms L.J.M. began formulating the plans to work on his project outside the premises of MAI. However, on August 31, 2010, S Masui (standmanmasui@gmail.com) initiated the first contact to Ms L.J.M. at MAI's office at 3:56 am in the morning. At 8:38 am, while at work she responded back to him. From that day on S Masui continued to work with Ms L.J.M. directly out of MAI's premises instead of using Ms L.J.M. home address as their place to do business. This was intentionally done as all of the resources, equipment, computers, fax, e-mail, catalogs, telephones, research information, vendor information and supplies needed to effectively work on his project was located on the premises of MAI. Working out of Ms L.J.M. home address was ineffectual and not a viable working solution for both of them.

Ms L.J.M. was issued a employee handbook, which prohibited MAI employees from working on any project unless prior approval is given due to liability concerns; conflict of interest; adverse effect on their work performance on MAI's projects; and other pertinent issues. Even if approval were given, all employees of MAI are prohibited from conducting their side jobs on the premises of MAI; use company resources; use company equipment; use company supplies; use company telephones; use company computers; use company e-mail; and work on the side project during work hours.

NO monies were paid to MAI at the onset, during or after the project was terminated. S Masui wrote a personal check in the amount of $8,467, directly to Ms L.J.M. in her name to cover her fees, the permit, architectural plans including a charge for the General Excise Tax of 4.712%.

There were no written contractual agreements between Ms L.J.M. Bill Wong ("Wong") of Jenken Architecture ("JA") and S Masui for the work to be done at 1587 Alewa drive. The only written agreement signed by S Masui was with Edgar Kamaka ("Edgar"), who S Masui hired as his General Contractor.

S Masui could NOT and did NOT enter into any signed contractual agreement that would identify Ms L.J.M. as an agent, employee or servant overseeing the project at Alewa drive in behalf of MAI. A contract of this nature would in the end involve making payment to MAI or lead to civil litigation if discovered at a later date. S Masui's oral agreement with Ms L.J.M. was done under the table without the authorization and knowledge of MAI.

In addition, had this project come to the attention of MAI at the onset or at any time during the construction phase of the project from March 1 to October 3, 2011, or prior to its termination by S Masui, MAI would have issued a order to cease and desist to both Ms L.J.M. and S Masui. In this case approval would never had been given as it involved excavating underneath the structure. In the event of wrongful death, injuries, structural collapse, faulty design anyone remotely connected to this type of project would had been facing a civil litigation suit. Following that order MAI would have disciplined Ms L.J.M. file a civil litigation suit against S Masui and sought monetary compensation from S Masui.

S Masui's project fall apart due to his problems with the General Contractor (unlicensed) that he hired. The project was plagued with costs over runs, lack of materials, poor planning, unclear responsibility of work to be done, sub-standard work and not meeting the completion date of the project. At no time during the construction phase of his project or even when his project was running into trouble did S Masui contact MAI to notify them of problems that he was having with everyone

_____ (AF Initials)                                                              _____ Date

Theft Complaint

that he had hired including Ms. L.J.M.

Only after S Masui terminated everyone from working on his project did S Masui in preparation of filing a civil suit, filed a complaint with the Design Conciliation Panel, State of Hawaii, against MAI seeking monetary damages. In his complaint S Masui acknowledged that Ms Masui at all times represented herself as an employee, agent, servant of MAI to work on his project at 1587 Alewa drive. At no time prior to filing the complaint did S Masui acknowledge that Ms L.J.M. was an employee, agent, servant of MAI assigned to his project by MAI by entering into a contractual agreement. Furthermore S Masui did NOT render any payment to MAI for Ms. L.J.M. services, which Ms L.J.M was NOT authorized by MAI to provide.

Ms L.J.M. while being paid by MAI supervised Masui's project out of MAI'S office as soon as she reported for work. Ms L.J.M. intentionally diverted services, supplies, resources and time meant for MAI's client to work on S Masui's project at Alewa drive. Ms L.J.M. used the fax machine, used equipment, provided vendor information, did site inspections, communicated with e-mails, cell phones, provided supplies, did research, purchased building materials, hired a security service and provided consultation services for S Masui on Mai's time clock. Those services meant for MAI's clients were readily accepted by S Masui.

The check issued by S Masui to Ms L.J.M. afforded him control over Ms L.J.M. for her services for work to be done on his project at Alewa drive at the expense of MAI. S Masui did NOT issue a check to or reimburse MAI for services, time spent, equipment and resources used by Ms L.J.M. on his project. S Masui did NOT inquire if Ms L.J.M. was issued an employee handbook, which prohibits Ms L.J.M. from providing personal professional services to anyone working on the premises of MAI and during her work hours. S Masui did NOT contact or inform anyone at MAI that he had a working arrangement with Ms L.J.M. before the start of his project, during the course of the project or prior to the termination of his project.

Based on this unauthorized arrangement both Stanford H. L.J.M. Wong and Ms L.J.M. personally benefited and profited at the expense of MAI.

## BODY OF REPORT - AARON S. FUJII

**I,** AARON S. FUJII, am the Executive Vice President and Chief Operating Officer Officer of Mitsunaga & Associates, Inc ("MAI"). I oversee, supervise and control **ALL** of the projects and architectural designs for MAI. I had not given approval, or consented or authorized Ms L.J.M. to work on any side jobs nor did I have any knowledge that Ms Mau had entered into a agreement with S Masui to work on his project at 1578 Alewa drive.

1.   On November 17, 2011, (Thursday) MAI received a certified letter dated October 10, 2011, (Monday) from

> Stanford H. Masui ("S Masui),
> Law Offices of Stanford H. Masui, LLC
> Seven Waterfront Suite 400, 500 Ala Moana Boulevard
> Honolulu, Hawaii 96813 ·

_____ (AF-Initials)                                                        _____Date

Theft Compliant                                                   page 4 of 17 pages

a practicing attorney, informing MAI of general defects, plumbing/masonry, electrical problems at

1578 Alewa Dr., Honolulu, Hi. 96813
Tax Map Key: 1-8-031-051
Building Permit Number  668116

that had been worked on by MAI's employee, **L.J.M.** ("Ms **L.J.M.** The initial letter did not state that  **L.J.M.**  had acted as a representative for the company on his project nor did it state that approval had been granted by MAI or that a contract had been signed or that payment had been rendered to MAI. Prior to the letter MAI was NOT contacted by S Masui nor made aware that he had hired Ms **L.J.M.** to work on his project during her work hours working out of MAI's premises and that she had acted as a employee, servant, agent of MAI. **Refer to Exhibit #1, 1A, 1B**

2 .     Prior to the arrival of this letter I had no knowledge, nor granted approval, nor consented or informed by Ms **L.J.M.** to review her outside project and make a determination if there were any grounds to approve or disapprove her project as specified in MAI'S employee handbook. Ms **L.J.M.** worked on this project without authorization and approval from me.

3.      On November 22, 2011, (Tuesday) MAI's attorney

Sheri J. Tanaka ("S Tanaka")
1777 Ala Moana Boulevard Suite #111-09
Honolulu, Hawaii  96813

responded back to S Masui at his Ala Moana Boulevard address. She informed S Masui that MAI had no record of his project, nor were there a contract on file, record of payment received, or other documents that would in any way indicate that MAI was involved with his project. She requested that S Masui provide her with a copy of an contract, record of payment made and other documentation that would indicate that MAI had a relationship with the project at Alewa drive.     **Refer to Exhibit #2 (Letter)**

4.      On December 2, 2011, (Friday) in response to S Tanaka's letter, S Masui related that Ms **L.J.M.** had acted in an apparent capacity as an employee, servant or agent of Mitsunaga and Associates. Her communications for this project, represented her as such, and they accepted the representation as an indication that the firm stood firmly behind her work. As a practicing attorney S Masui has extensive knowledge dealing with liability civil litigation suits for damages. He should realize that NO architectural firm would allow it's employee to represent the company on any moon lighting project without first reviewing the project due to liability concerns. After review it is MAI's sole decision to either grant or disapprove the project.

        In addition to the letter, S Masui provided MAI's attorney S Tanaka with a copy of a check, number 227 from Territorial Savings Bank. It was made out to Laurel Mau in the amount of Eight Thousand Four Hundred Sixty Seven dollars and Seventy-Five Cents ($8,467.75)  This amount paid by S Masui is substantially lower than what MAI would have charged S. Masui.
**Refer to Exhibit #3 (Letter) Exhibit # 4 (check)**

_____(AF Initials)                                               _____ Date

Theft Complaint

5.    S Masui did not provide to S Tanaka as requested with any record or contract on file, or
         record of payment or other documents that would have demonstrated that there had been an
agreement or contract between himself and MAI as requested in Ms. Tanaka's letter addressed to him.
S Masui failed to address this important matter of having a contractual agreement. If Ms L.J.M. had
represented MAI as stipulated by S Masui it would have been on a "Contract drawn up by MAI;"
S Masui's project was done on a cash basis only, so no written contract was made.  S Masui issued the
check in Ms L.J.M. name and NOT under MAI's Name.  As such NO terms or Conditions or Time
Frame or Job Responsibilities were agreed upon by Ms L.J.M. working on his project.
**Refer to Exhibit #3**

6.    The only evidence that Stanford Masui provided was a copy of a check made out in the name
         of    L.J.M.    instead of MAI. Written on the Memo line were the following words.
Permit/Fees.  There were no indication that the check issued to Ms L.J.M. was for the Alewa drive
project nor did it indicate that part of the fees would be directed to MAI. No written agreement
between S Masui and Ms Mau was provided by S Masui to S Tanaka denoting the work to be done by
the company as in normal contracts, the time frame for completion and a payment schedule.
In an effort to cut cost, S Masui paid cash with no contract to achieve his goal, which worked to his
disadvantage
**Refer to Exhibit #4 (Check)**

7.  To cut cost for professional services instead of paying MAI any fees, S Masui issued

                    Check Number 227, Dated February 25, 2011
                    Territorial Savings Bank
                    $8,467.75
                    Eight-Thousand Four-Hundred Sixty-Seven dollar Seventy-Five Cents

directly to Ms L.J.M. for the building permit, architectural/structural fees and the General Excise
Tax of 4.17 percent.
**Refer to Exhibit 4 (Check)**

8.    As indicated in an email dated on February 22, 2011, (Tuesday) 8:38 am from Ms
         L.J.M. (        @mitsdesign.com) to S Masui (        @gmail.com) the check of
$8,467.75 issued to her was for the building permit amounting to $665.00, $7,812.75 for
architectural/structural fees $7,500 + .0417 GET. This email is the first connection that Bill Wong
("Wong") of Jenken Architecture ("JA") in the future would be involved with the project at Alewa
drive.   Communication to Ms L.J.M. from S Masui occurred during her work hours, when she was
being paid by MAI. She was supposed to be working specifically on MAI's projects during her work
work hours. She responded to an email sent by S Masui sent early in the morning at 3:56 AM dated
February 22, 2011.
**Refer to Exhibit #5 (email from Ms L.J.M. to S Masui)**
**Refer to Exhibit #5A (email from S Masui to Ms L.J.M.**
**Refer to Exhibit #5B (Time Sheet)**

_____ (AF Initials)                                          _____ Date

Theft Complaint

9.      There are no written or signed contractual agreements between Ms ⌐J.M⌐ Wong and S
        Masui.for work to be done at 1587 Alewa drive. The only written contractual agreement
related to the Alewa drive project is the contract that S Masui had signed, was with Edgar Kamaka
("Edgar"), who S Masui had hired as his General Contractor. As quoted from S Masui's email dated
February 16, 2011, 0254 pm. "Edgar Kamaka has my signed contract and down, and will act as general
contractor.
**Refer to Exhibit 79 (email)**

10.     In a email from S Masui to Edgar ( ▇▇▇@gmail.com) dated February 15, 2011,
(Tuesday) at 09:19 am, S Masui informed Edgar that his bid had been accepted. S Masui asked
Edgar if he wanted the check of $29,580.00 (20%) mailed out to him or if Edgar wanted to
arrange a pick up? **Refer to Exhibit #6 - 6A (email).**

11.     In another email from S Masui to Mel Megia of Access Lift Hawaii
        ( ▇▇@accesslifthawaii.com) dated February 16, 2011 (Wednesday) at 2:54 pm, S Masui
informed Mel that he had hired Edgar as his General Contractor. Again, there is no mention in any of
S Masui's emails that states specifically that he hired Ms ⌐J.M⌐ as an agent, servant or employee of
MAI. A low payment of "CASH to Ms ⌐J.M⌐ was the basis for their agreement.
**Refer to Exhibit #7 (email)**

12.     The Contract date of February 15, 2011, between S Masui and Edgar Kamaka can also
        be found on the Contractor complaint form. **Exhibit 8 (Contractor complaint form)**

13      While S Masui's wife "Doretta Masui was listed as the owner builder, S Masui ran, directed
        and controlled the project at Alewa driver by monitoring and pushing the project along
towards a completion date.

14      S Masui did NOT enter into any written and signed contractual agreement with Ms
        ⌐J.M⌐ or Wong as his Alewa drive project was done without the authorization, or consent of
MAI or JA. NO firm especially an architectural firm would allow its employees to do
side jobs such as do site pre-inspections; site preparation; drawing up plans; run projects due to
conflicts of interest; undue competition; unauthorized use of its equipment, supplies, phones and poor
work performance by its employees because of increased workload. Another strong point to forbid
moonlight activities are due to liability concerns, which could expose the company to possible civil
suits.

15.     S Masui could NOT and did NOT enter into any signed contractual agreement identifying
        Ms ⌐J.M⌐ as an agent, employee or servant overseeing his project at Alewa drive in behalf
of MAI. S Masui's oral agreement with Ms ⌐J.M⌐ was done under the table without the authorization
and knowledge of MAI. Had this project come to the attention of MAI prior to, or at the onset, or at
anytime during the construction phase of the project from March 1 to October 3, 2011 or prior to its
termination by S Masui as he struggle to have the project completed; MAI would have issued an order
to cease and desist to both Ms ⌐J.M⌐ and S Masui. Following that order to stop MAI would have
disciplined Ms ⌐J.M⌐ and brought a civil litigation suit against S Masui for damages and compensation.

_____(AF Initials)                                              _____Date

Theft Complaint                                                    Page 7 of 17 pages

16.     MAI's employee handbook, which was issued to Ms L.J.M. prohibits it employees from
        undertaking side jobs prior to getting approval from MAI. As outlined in MAI's handbook
employees are strictly prohibited from doing outside professional services on the office premises using
the office equipment, supplies, catalogs or facilities either during or after regular office hours. This
restriction applied also to the use of the office telephone, E-mail, cellular phone or mailing address.
**Refer to Exhibit # 9, 9A, 9B, 9C, 9D  (employee handbook-moonlighting)**

17.     Ms L.J.M. violated this section of the employee handbook, when she undertook the Alewa
        drive project without getting prior approval. Ms. L.J.M. while being paid by MAI provided
outside professional services on MAI'S office premises, using the office equipment, supplies, catalogs,
telephone, cellular phone, E-mail, did research and provided consultation to S Masui during office
hours, while she was being paid wages by MAI.

18.     S Masui did not ask Ms L.J.M. if she had been issued an employee's handbook, which
        specifically restricted her as well as all other employees from moonlighting unless certain
conditions are met and approval granted by MAI. S Masui as a practicing attorney are well aware that
any large firm with a large staff of employees will have an employee handbook covering moonlighting
activities.  This is especially true at a architectural and engineering firm such as MAI. The
architectural plans for S Masui DOES NOT HAVE AN ARCHECTURAL STAMP FROM MAI.

19      Despite having this knowledge S Masui claimed that when he hired Ms L.J.M. to work on his
        project as she represented herself at all times as an employee, servant, agent of MAI to work
on his project. S Masui accepted this position taken by Ms L.J.M. yet did not rendered any payment to
MAI nor he contact MAI at anytime at the onset, during and when his project was running into
problems. S Masui allowed this to happen for if he had contacted MAI during this period of time his
project would have been halted by a cease and desist order from MAI.  Only after S Masui exhausted
all avenues of approach to finish his project in time at that lower agreed upon price did he try to
recover monetary damages from MAI.
**Refer to Exhibits  9, 9B, 9C (employee handbook)**

20.     As stated above this project would never have been approved by MAI due to the fact
        of the excavation work to be done and the shoring up of the house. In the event of wrongful
death, injuries, structural collapse, faulty design or any other life threatening issues, anyone or firm
remotely connected to this project no matter how far removed from the project would be facing a civil
litigation suit. Especially so since this was an oral agreement made between S Masui and Laurel L.J.M.
with NO specifications of how the work is to be done, work scheduling and if it the work being done
complies with OSHA safety standards.
**Refer to exhibit 10 (e-mail from S Masui to Edgar and Ms L.J.M. dated 2-22-11/Tuesday: 2:30 pm)**

21.     S Masui never did contact, inform, negotiate, enter into a agreement, sign a contract with MAI
        prior to Ms L.J.M. working on his project at Alewa drive. S Masui did NOT pay any fees to MAI for
services rendered in his behalf by MAI's employee Ms. L.J.M. The agreement between S Masui and Ms
L.J.M. was intentionally done in secrecy without the knowledge or approval of MAI for both their
financial advantage at the expense of MAI.

_____ (AF Initials)                                          _____ Date

22.   In an email from S Masui to Ms. L.J.M. dated August 31, 2010, at 10:24 am, **S Masui related** that
      he knew that <u>she was backlogged with work</u>. S Masui knew that she a PAID employee of MAI.
and NOT an independent contractor. Further that during her work hours, she was supposed to work
only on MAI's projects, as she was being paid by MAI. Despite this fact, S Masui pursued Ms L.J.M. to
work on his project at Alewa drive. It didn't matter that she was backlogged with work or the fact that
it his project could have an adverse effect on her work performance while working on MAI's projects.
All that mattered to S Masui was that he would get a basement bargain price for her professional
services.

   Despite knowing that Ms L.J.M. was backlogged with work, he began communicating with her at
work during her work hours, when she was being paid by MAI. The fact that she would be backlogged
with more work and effect her work performance at MAI was irrelevant. S Masui looked at the cost of
going to a architectural firm and getting his plans drawn versus paying a cheaper price in getting his
job done.
**Refer to Exhibit 11 (email)**
**Refer to Exhibit (11A) Ms L.J.M. Time Sheet 8-31-11**

23.   That same day at 02:58 am from MAI's office using the company's email, during her work
      hours, while being paid by MAI she responded back to him. Related that she visited the Mom
and Dad Leo last night to confirm location of elevator and access/exits from the house. Further that
she would be meeting with Bill (Wong) to go over the numbers and the estimated schedule and fees for
the permit drawings and work and sent him an informative fee proposal.
**Refer to Exhibit (12) email from Ms L.J.M. to S Masui**
**Refer to Exhibit (11A) Ms L.J.M. Time sheet 8-31-11**

24.   As stated in S Masui's email, **"Your** estimated compensation to date". S Masui did NOT
      mention MAI's name in this email nor inquire if payment to MAI was required or if she was
authorized to do side jobs. As indicated in this email this compensation for services rendered was due
to Ms L.J.M. and Ms L.J.M. alone for her disposition and use at her discretion.
**Refer to Exhibit 11 (email)**

25.   At the onset based on the contents of the email dated August 31, 2010, between S Masui and
      Ms L.J.M. it revealed that S Masui and Ms L.J.M. had been in contact with one another and
developed a point of contact and working relationship outside of the confines of the offices of MAI as
required in MAI's employee handbook. There are no other emails or written documents to indicate
otherwise. **Refer to Exhibit 11 and 12 (e mails).**

26.   As this was a side job, Ms L.J.M. and S Masui should have established and kept their
      working relationship and place to do business at Ms L.J.M. residence at 1578 Alewa drive in Salt
Lake. Evidence submitted will prove that they choose to bring their side job into the work place of
MAI as it was advantageous for them to do so. As all the necessary equipment, supplies, data was
readily available there.

_____ (AF Initials)                                            _____ Date

Theft Complaint                                                    page 9 of 17 pages

27.     Based on the first email S Masui (███████@yahoo.com) sent to Ms L.J.M.
        (██████@mitsdesign.com) on August 31, 2011, Thursday, at 10:24 am.  S Masui on his own
volition made the **FIRST** contact with Ms L.J.M. at MAI's office for the first time during Ms L.J.M.
work hours.  S Masui in this email gave recognition to Ms L.J.M. as being an employee of MAI by
sending the email directly to MAI's office instead of continuing to work with Ms L.J.M. off MAI's
premises.  It should be noted that Ms L.J.M. did not begin emailing S Masui from MAI's office until he
started to email her first.
**Refer to Exhibit 11 (email)**

28.     A professional architectural firm charges a percentage based on the cost of the project.  Prices
        range from 12% and upwards based on the size of the project, complexity of design,
engineering and scope of work to be done.  Out investigation of Ms L.J.M.'s phone records revealed that
based on the work done by Ms L.J.M. and was work demanded of her by S. Masui the check of
$8,467.75 was extremely low.  This fact will be revealed later in this report.

29.     By issuing the check directly to Ms L.J.M. "IN HER NAME" S Masui completed and sealed
        the agreement between himself and Ms L.J.M.  This payment to Ms L.J.M. demonstrated that S
Masui had not intention of compensating MAI at all.  S Masui at this point in time took a position that
although Ms L.J.M. presented herself as an employee, servant or agent of MAI, NO PAYMENT was
warranted to MAI as it was a deal consummated directly with Ms L.J.M. and NOT MAI.  S Masui
readily accepted Ms L.J.M. stance as MAI's representative working on his project without question for
her professional services at a significant lower rate.
**Refer to Exhibit 4 (Check)**

30.     S Masui knew that Ms L.J.M. was an experienced employee working for the reputable firm
        such as MAI.  The price that Ms L.J.M. had quoted to him was significantly below the going
market rate.  Had S Masui sought a quote from MAI it be significantly higher than the price quoted by
Ms L.J.M.  As a result S Masui had good reason to kept this agreement under the table and under the
radar from MAI.

31.     S Masui never did inquire with anyone at MAI including Ms Mau nor did he try to
        make a determination if Ms L.J.M. was authorized to moon light (side jobs),  or had been given
consent by MAI to provide services, do research, provide consultation, use equipment, phones,
fax, using supplies, resources, on the premises of MAI's office  to work on his project during Ms
L.J.M. work hours.  Nor did S Masui ask Ms L.J.M. if she was authorized to use MAI's name,
business tax license to obtain lower material costs for his project.

32.     S Masui at the onset of the Alewa Project on February 2, 2010, through the entire length of
        the project to October 2, 2011, Sunday, until he terminated the agreement with Ms L.J.M.
Edgar and Wong, S Masui never did attempt to contact, notify or negotiate a contract with MAI for
professional services nor did he inquire if Ms L.J.M. had been authorized to enter into a contractual
agreement representing MAI as claimed by S Masui.


_____(AF Initials                                    _____ Date

33.      As outlined below Ms <sup>L.J.M.</sup> from August 31, 2010 to October 2, 2011, was being paid by
          MAI for forty (40) hours each week, Monday through Friday.   Listed below is a summary
of the dates and time that she was off work, given time off or on vacation

          09-06-2010 (Mon) Off 8 hours Holiday Exhibit 14
          10-04-2010 (Mon) Off 2 hours  10-05-2010 (Tue) Off 2 hours  Exhibit 18
          11-25-2010 (Thu)  Off 8 hours  11-26-2010 (Fri)  Off 8 hours  Exhibit 25
          12-09-2010 (Thu) Off 8 hours  Exhibit 27
          12-24-2010 (Fri)   Off 8 hours  Holiday Exhibit 29
          02-21-2011 (Mon) Off 8 hours   Exhibit 38
          05-23-2011 (Mon) thru 05-27-2011 (Friday) Off 40 hours  Exhibit 51
          05-30-2011 (Mon)  Off 8 hours  Exhibit 52
          07-04-2011 (Mon)  Off 8 hours Holiday Exhibit 57
          07-29-2011 (Fri)    Off 8 hours Exhibit 60
          09-05-2011 (Mon)  Off 8 hours Holiday Exhibit 66

34.      As there was no written contract between S Masui and Ms Mau or Bill Wong as to work to
          be done by Wong and Ms <sup>L.J.M.</sup> problems arose and the project stagnated.  The job was not
progressing along to S Masui's expectations.  S Masui related that this was due to the lack of detailed
drawings.  Wong related that detailed drawings were not necessary and that the drawing submitted by
them was done solely on obtaining the building permit and nothing else.
**Refer to Exhibit 104 & 104A (email- Masui to Wong)**
**Refer to Exhibit 105  (email-Wong to Masui)**

35.      Please note as quoted in Wong's email- Dated 8/2/2011, 1651 hours

 "Both Laurel and myself made it a point to be at the job site asap to assist.  In addition, we were at the
job site on a regular basis to ensure construction is moving along to plans.  This service is NOT
included in our design fees.
**Refer to Exhibit 105 (email -Wong to Masui)**

36.      In a email dated August 3, 2011, at 11:18 am S Masui wrote to Bill Wong, as Bill
          was balking at doing more than what Wong believed to be required on the job.  It was S
Masui's belief that Wong should have worked harder and provided specific plans during the
construction phase of Alewa drive.  As there was no written contract between Bill Wong, Ms <sup>L.J.M.</sup> and
S Masui this has led to continued misunderstanding as to the design changes, material procurement and
construction scheduling.  To prod Wong along towards doing more than was required for the minimal
small fees paid to them, S Masui related the following

"As you may also know Laurel did assume the role of ordering materials and has been actively
involved in the selection of product and vendor." "If she did, she did it without being compensated for
the services.
**Refer to Exhibit 106 (email from Masui to Wong)**


_____(AF Initials)                                                        _____ Date

Theft Complaint

37.    S Masui failed to realize that Ms L.J.M. was compensated by MAI for work being done at
       Alewa drive on MAI's time clock and it was for this reason why no compensation was needed
by Ms L.J.M.  Based on this extra work provided to S Masui during her work hours it adversely effect
her work performance at MAI.  Based on this extra work Ms L.J.M. work production and performance
on MAI's was sub-standard.  Her poor work performance was noted was discussed at MAI prior to the
appearance of the first letter to MAI from S Masui on October 10, 2011.

38.    After reading Ms L.J.M. emails it had been determined that she had been ordering and paying
       for materials for Masui's project.  She had fronted the money for materials for his project.  Due
to cost over runs and a ongoing dispute about the completion date, shoddy construction, lack of
communication and material scheduling S Masui had deferred on making payment to Ms L.J.M.  Masui
related that Ms L.J.M. seek compensation from Edgar Kamaka for the cost of the materials.  It is
apparent that Ms L.J.M. had been ordering material at the onset of the project for Edgar Kamaka, while
being paid by MAI.  Edgar had been reimbursing Ms L.J.M. with the funds given to him by S Masui.
**Refer to Exhibit 125 & 125A (email from L.J.M. to Masui seeking reimbursement)**
**Refer to Exhibit 126  (email from Masui to L.J.M. deferring payment)**

39.    In an email from Ms L.J.M. to S Masui, she related that she was currently helping Bill Wong
       open up the area between the 2 bedrooms and office.  She related that they needed to remove
the walls and exposed the pipe columns.  She related that they could finish the drawings if they
were given  permission to remove the walls.  All these emails indicate Ms. L.J.M. active participation
in this project.  Based on the emails and cell phone records it was determined that Ms L.J.M. had been
spending a substantial amount of time working on Masui's project at the expense of MAI.
**Refer to Exhibit 76 -email from Ms L.J.M. to Masui dated Dec. 20, 2010**

40.    A check of the emails between S Masui and Ms L.J.M. Edgar Kamaka and Bill Wong
       from the beginning of the project to when he terminated the project demonstrated his role in
directing, controlling, monitoring and checking every detail involved with the project.  S Masui even
volunteered to go down to the building department to get the permit.  A check of Ms L.J.M. cell phone
records showed that S Masui did contact them using the cell phone.  S Masui made it a point to contact
all parties involved with this project using the email.  A check of the emails revealed that S Masui
contacted Ms L.J.M. during her work hours at MAI instead of establishing a point of contact outside
MAI.  I'm sure S Masui would never allow any employee to work on their side projects during the
company's work hours.
**Refer to Exhibit  90 (E mail to get building permit)**
**Refer to Exhibits 71 to 134. emails from August**

41.    A check of Ms L.J.M. cell phone usage gave a strong indication why her work performance at
       MAI was sub-standard.  Phone records indicated that Ms L.J.M. was running S Masui's project
out of MAI's office.  She ran the Masui's project from MAI's office, inspected the work site on a
regular basis and ordered materials.  All this activity cut into her work production at MAI.  A check of
her cell phone records indicated that at the onset of her work day she began working on Masui's project
instead of concentrating on her work at MAI.  Ms L.J.M. even continued to supervise and work on the

_____ (AF Initials)                                          _____ Date

Theft Complaint                                                                   page 12 of 17 pages

project after hours, weekends and in the evenings. A check of the phone logs revealed that a majority of cell phone usage were not related to MAI's business. Ms L.J.M. was working on S Masui project on MAI's during her work hours, when she was being paid to work on MAI projects only.
**Refer to Exhibits 129 thru 145 (Summary of Cell phone activity for Ms L.J.M.**
**Complete phone logs are attached to this report.**

42.     Services meant for MAI's clients were diverted by Ms L.J.M. and accepted by S Masui, during
        Ms L.J.M. work hours, when Ms L.J.M. began working on his project located at Alewa drive at
MAI's expense. This report will demonstrate that the side project that was undertaken by Ms L.J.M.
took a lot of time and effort as a result, her work performance at work was substandard. Phone records
will indicate that Ms L.J.M. at the start of her work day worked on the Alewa drive project exclusively in
the morning, before working on any of MAI's projects. She worked on this project even on her days
off and after hours to the detriment of MAI.

43.     A email from Doretta Masui (          t@vahoo.com) dated **August 16, 2011**, (Tuesday) at
        **7:38 pm** to Edgar, gave an indication that the project at Alewa drive was in some kind of
trouble, when Doretta requested the Edgar provide her with his Contractor's License Number.
**Refer to Exhibit 120 (email)**

44.     Edgar Kamaka totally avoided answering that question about his Contractor's License
        Number from Doretta Masui  in his email to S. Masui sent that same day at **11:37 pm**. That
should have given S Masui a clue that sometime was wrong. S Masui should have contacted MAI if he
believed that MAI stood behind Ms L.J.M. as she represented herself as an employee, agent and servant
of MAI. S Masui knew that he paid cash for her services, hence could NOT contact MAI and bring to
closure to his problem. Instead S Masui continued to work with Edgar to resolve their differences to
save his project at that low price until it was no longer feasible to do so. From that point on until S
Masui terminated the project on Oct 2, 2011, Edgar Kamaka never did provide him with a contractor's
license number.
**Refer to Exhibit 121 (email that avoided the question)**

45.     During that period of time between August 3, 2011 (Sunday) to Oct 2, 2011, (Sunday) when
        the Alewa project was in trouble of closing down due to dispute between S Masui and Wong,
Ms L.J.M. and Edgar, S Masui made no attempt to notify MAI of the problems. From that date onwards
the Alewa drive project began to come apart due to lack of communication between parties, design
problems, contractual task responsibilities, construction scheduling, material ordering, which led to the
lack of materials on the job, costs overruns and who should be making payment for some of the
materials. Due to the lack of a contract between Ms L.J.M. and Wong there was confusion at the job
site.    The lack of clear direction, inexperienced unlicensed general contractor prolonged the project's
completion date and in the end caused the termination of the job at Alewa drive.

46.     At this time it would have been appropriate for S Masui to contact MAI, based on the fact that
        Ms L.J.M. had presented herself to S Masui as being an employee, agent, and/or servant of MAI
on the Alewa project. At the onset to obtain professional services at a substantial lower cost S Masui
avoided in checking with MAI to ascertain if Ms L.J.M. was allowed to present herself as a MAI

_____ (AF Initials)                                                            _____ Date

Theft Complaint

page 13 of 17 pages

employee on the Alewa drive project. Notification to MAI of this sort would have led to the termination of his project and raised the cost of his project to a significantly higher rate for professional services of this nature.

Based on the emails at hand between S Masui, Ms L.J.M. Wong, Edgar, and Doretta, S Masui consented and allowed Ms L.J.M. to continually project herself as MAI's employee on the job at Alewa drive. This subject was brought to light only at the end in Masui's complaint after S Masui exhausted all means to complete his project.  **Refer to Exhibit 146D paragraph 22.**

47.  Had S Masui checked on whether or not Edgar Kamaka had a general contractor's license, he would have never hired Mr. Kamaka. S Masui sustained monetary damages, but they are nothing in comparison to what damages that MAI suffered due to the poor work performance of Ms L.J.M.

48.  On October 2, 2011, Sunday, S Masui shut down and terminated the project at Alewa drive and ordered Edgar to cease working there.
**Refer to Exhibit #127**

49.  On December 21, 2011, S Masui filed a statement of claim design under case Number 2011-019 with the

> Design Claim Conciliation Panel
> Office of Administrative Hearings
> Department of Commerce and Consumer Affairs
> State of Hawaii
> Post Office Box 541
> Honolulu, Hawaii  96809

In his body of his complaint in Count I, under the heading of "Misrepresentation and/or Fraud", S Masui related that Ms L.J.M. and Wong drew up the architectural design and drawings and assisted in coordinating the design and structural aspects of the project.
**Refer to Exhibit 146**

In the same complaint under Count V under the heading of "Respondeat Superior" S Masui related as quoted. "At all times, individual defendant   L.J.M.   represented that she was an employee, agent, and/or servant of Mitsunaga and Associates on the Alewa project."
**Refer to Exhibit 146D paragraphs 21 & 22.**

50.  In this part of the complaint filed by S Masui, based on his statement, it revealed that S Masui acknowledged, recognized, consented and allowed Ms L.J.M. to continue on as MAI's official representative working on his project at Alewa drive.  S Masui recognized Ms L.J.M. as a MAI representative working at his job site only when it was advantageous to him. At the onset no recognition and no compensation was given to MAI by S Masui as it was not to S Masui's advantage..

_____(AF Initials)

_____Date

Theft Complaint                                                    page 14 of 17 pages

51.   Had Ms L.J.M. and S Masui entered into an agreement that had been initiated, or endorsed, or promoted by MAI at the fair market value price, his project would have completed in a timely and satisfactory manner. MAI had no opportunity to reject, accept, consent to, authorize this agreement between S Masui as it was never brought to the attention by S Masui or Ms L.J.M. prior to, during and near the termination date of their agreement.

52.   Only after S Masui had terminated the project at 1587 Alewa drive and prohibited Ms L.J.M. Wong, Edgar and all other sub-contractors from working on the project did S Masui file a "Statement of Design Claim" with the State of Hawaii Department of Commerce and Consumer Affairs against MAI, JA, Ms L.J.M. and Wong.
**Refer to Exhibit 146**

53   S Masui under this claim stated that MAI was liable for the acts, conduct and representations of Ms L.J.M. based on respondeat superior as such S L.J.M. wanted payment for damages, cost for the proceeding including attorney fees and interestS Masui never gave compensation to MAI; never entered into a contract with MAI; and never informed MAI of his agreement with Ms L.J.M. never inquired as to whether or not Ms L.J.M. was authorized to work on his project out of MAI's premises.
**Refer to Exhibit 146**

54.   It is important to note that after getting the initial letter from S Tanaka.
In a letter addressed to MAI'S Attorney Sheri Tanaka dated December 2, 2011,
S Masui wrote the following. As quoted.

Dear Ms Tanaka
        This letter responds to yours dated November 22, 2011. Please be advised that Ms L.J.M. acted in capacity in an apparent capacity as an employee, servant or agent of Mitsunaga and Associates. Her communications for this project, represented her as such, and we accepted the representation that your firm stood behind her.
**Refer to Exhibit 3.**

55.   It was S Masui failure NOT to check on whether or not Edgar Kamaka had a general contractor's license. It was his fault alone and not the fault of MAI, it is ludicrous that S Masui is seeking compensation from MAI. Had S Masui done his homework he would never hired Edgar Kamaka as his general contractor. Based on this investigation it is believed that Edgar Kamaka did NOT have the experience as a general contractor as a result: his work was shoddy; material scheduling was bad; subject was unsure as to how to proceed with the construction; the bid price submitted to do a job of this magnitude was very low and insufficient to cover costs. All this resulted in Ms L.J.M. having to work harder to make up for his short comings. **Refer to Exhibit 146.**

56   S Masui: made NO payment to MAI; did NOT sign a written contract with Ms L.J.M. as to the work to be done by her or MAI; appropriately allowed her to work on his project out of MAI's office; never notified MAI of the project or that Ms L.J.M. had entered into an agreement with him; entered into a agreement with Ms MAI for professional services instead of MAI to get a substantial lower rate then if he entered into an CONTRACTUAL agreement with MAI.

_____(AF Initials)                                        _____Date

Theft Complaint

57. S Masui: intentionally did not notify MAI at any time that Ms L.J.M. had entered an agreement with him as she would have been told to cease and desist; intentionally did not notify MAI of problems associated with the project and tried to get it completed without notifying MAI as again she would have been told to cease and desist.

58. From August 31st, 2010, onwards S Masui began contacting Ms Mau at ███@mitsdesign.com

> Mitsunaga's Office
> 747 Amana Street Suite #216
> Honolulu, Hawaii 96814

59. From this point on until October 2, 2011, when their agreement was terminated both S Masui and Ms L.J.M. had maintained their working relationship and place to conduct business out of MAI's office unknown to MAI.

60. As a consequence of establishing her side job for S Masui's project at Alewa drive at MAI's office, Ms L.J.M. worked on his project during her work hours, using MAI's company resources like e-mail, phone, fax, conducted research, provided supplies, conduct inspections of S Masui's project and provide consultation to the advantage of S Masui and detriment to MAI. This additional unauthorized work adversely effected Ms L.J.M. work performance on MAI projects to the point that her work was substandard.

61. Beginning on August 31, 2010 till October 2, 2011, S Masui and ███ L.J.M. had diverted services and resources meant for MAI's clients towards the personal benefit of both S Masui and L.J.M. at the expense of MAI. S Masui used Ms L.J.M. expertise to do research in his behalf on his project as to type of materials to use, costs and design.

62. The Alewa project officially began on February 25, 2011, when S Masui issued a directly to L.J.M. in the amount of Eight Thousand Four hundred Sixty Seven dollars and Seventy five cents ($8,467.75). However the phone records and emails indicate that Ms L.J.M. was already working on S Masui's project.
**Refer to Exhibit 4**
**Refer to Summary of phone calls Exhibits 129 thru 145**

63. The Alewa Drive project ran from that aforementioned date to October 2, 2011, when S Masui terminated the project due to a disagreement over date of completion, cost and work to be done under their agreement. During that period of time of the Alewa drive project L.J.M. received pay for work at MAI. During that aforementioned period of time Ms L.J.M. was specifically tasked to work on MAI's projects only and nothing else. This was not the case for Ms L.J.M. worked on the Alewa drive project. .
**Refer to Exhibit (Time Sheets)**

_____ (AF Initials)                                        _____ Date

Theft Complaint                                                                                    page 16 of 17 pages

64.  Ms L.J.M. related in her statement on December 1, 1211, to the unemployment
     insurance division that she did side jobs as well as 3 or 4 people in the office, which she did not
name. Ms L.J.M. failed to realize that their side jobs had been approved after those individuals and
checked with the management of MAI first prior to accepting the side job. Ms L.J.M. related that she
never asked like "can I do side job for this client". She also related that sometimes her side jobs may
have crossed the lines.
**Refer to Exhibit 28.**

65 .  S Masui intentionally hired Ms L.J.M. to work on the side job for him, while she was
     working for MAI. Her hiring was based on: obtaining professional services at a lower cost; her
expertise; fact that she worked for a reputable firm; that all equipment, resources, materials, computers,
fax and other resources were readily available on MAI's premises for his personal use.

66 .  S Masui openly contacted Ms L.J.M. during her hours of work at MAI to work on his
     project at Alewa drive using MAI's equipment, phones, email, fax, supplies, do research,
provide consultation at the expense of MAI with no compensation or reimbursement to MAI.

67.  In addition to the Alewa drive project, further investigation revealed that   L.J.M.
     (Ms L.J.M. had been performing numerous other "side jobs" in the past without MAI's approval,
authority, consent or knowledge.

68.   On November 10, 2011, Ms L.J.M. was terminated from her position for misconduct
and insubordination.

69.   S Masui hired Ms L.J.M. by rendering payment to her instead of MAI, as a result had
      gained and had exercised control over her activities at MAI. S Masui profited by this control
and obtained services for his own benefit, for which he was not entitled to at the expense of
MAI. He intentionally kept this oral agreement between himself and Ms L.J.M. under the table to obtain
professional services at a substantially lower rate then if he contracted services from a reputable
architectural-engineering firm like MAI.

70.   Theft section of the Hawaii Revised Statutes 708-830 as quoted.
      A person commits theft if the person does any of the following.
(5) Diversion of Services:  Having control over the disposition of services of another to which a
person is not entitled, the person intentionally diverts those services to the person's own benefit
or to the benefit of a person not entitled thereto.

71.  In consultation with our attorney

                                   Sheri J. Tanaka
                                   1777 Ala Moana Boulevard #111-09
                                   Honolulu, Hawaii 96815
                                   Telephone (808) 276-4942


_____(AF Initials)                                                    _____Date

12-258968

Theft Complaint                                              page 17 of 17 pages

   we believe that that Theft had been committed by Civil Attorney S Masui and Ms. L.J.M. This is
based on the fact that the project was done at MAI's expense, during Ms. L.J.M. work hours,
using the company's e-mail, telephone, fax and other company resources. The project at Alewa drive
by S Masui and Ms L.J.M. was done without MAI's knowledge and at MAI's expense. MAI did not
enter into any agreement with S Masui that would have allowed Ms L.J.M. to work on his project at
Alewa drive. Projects involving excavation and shoring would never been approved by me due to
liability concerns in the event of wrongful death, injuries, structural failure due to design faults,
injuries accidents, no OSHA safety inspections and poor planning.

72.    Monetary funds should have been given to MAI even though no contract had been entered into
       between MAI and S Masui, instead monies were given directly to Ms. L.J.M. in the amount of
$8,467.75.. S Masui and Ms. L.J.M. intentionally diverted services meant for MAI's clients for work on
his project at 1578 Alewa drive for their own personal benefit.

73.    Had S Masui contracted his project at Alewa job with MAI, the cost for his project
would have been well over **$20,000.00.**

74.    During the period of time that Ms L.J.M. was working on S Masui's project her hourly pay was
       at $35.00 per hour.
**Refer to attachments 148 & 148A (pay scale)**

75.    Ms. L.J.M. was terminated from her position on November 10, 2011 for misconduct.

76.    Submitted are times sheets, cell phone records and emails in chronological order between S
Masui, Doretta Masui, Ms L.J.M. Wong, Edgar and Mel Megia of Hawaii from August 31, 2010 thru
October 2, 2011.

77.    All emails contained herein were recovered from MAI's computer that was used by Ms L.J.M.
       by an IT person.


_____            _____
Aaron  Fujii                                              Date

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO 22-00048 JMS |
| Plaintiff, | |
| vs. | CERTIFICATE OF SERVICE |
| AARON SHUNICHI FUJII. | |
| Defendants. | |

CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of DEFENDANT AARON SHUNICHI FUJII'S RESPONSE TO THE GOVERNMENT'S MOTION TO COMPEL RECIPROCAL DISCOVERY [DKT. NO. 450] have been duly served upon the following at their last known addresses by the CM/ECF system on the date indicated below.

MICHAEL G. WHEAT, ESQ.
JOSEPH J.M. ORABONA, ESQ.
JANAKI G. CHOPRA, ESQ.
COLIN M. MCDONALD, ESQ.
ANDREW Y. CHIANG, ESQ.
United States Attorney's Office 880 Front Street, Room 6293
San Diego, California 92101

E-mail:
michael.wheat@usdoj.gov
joseph.orabona@usdoj.gov
Janaki.Chopra@usdoj.gov
Colin.McDonald@usdoj.gov
Andrew.Chiang@usdoj.gov
Attorneys for the United States of America

CRYSTAL G. K. GLENDON
Glendon & Ponce,
LLLC 1001 Bishop St., Suite 710
Honolulu, Hawaii 96813
E-mail: crystal@glendonponce.com

Mark Mermelstein
Andrew S. Cowan
HOLMES, TAYLOR, ATHEY, COWAN,
MERMELSTEIN & JONES LLP
811 Wilshire Boulevard, Suite 1460
LosAngeles, California 90017
Email:
mmermelstein@holmestaylor.com
acowan@holmestaylor.com

Attorneys for Defendant Sheri Jean Tanaka

BIRNEY B. BERVAR, ESQ.
Bervar & Jones
1100 Alakea Street, 20th Floor
Honolulu, Hawaii 96813
E-mail: bbb@bevar-jones.com

Attorney for Defendant Keith Mitsuyoshi Kaneshiro

JOHN M. SCHUM, ESQ.
Law Office of John Schum
P.O. Box 1241 Honolulu, Hawaii 96807
E-mail: John@JohnSchum.com

6

NINA MARINO
JENNIFER LIESER
KAPLAN MARINO
1546 N. Fairfax Ave.
Los Angeles, California 90046

Attorneys for Defendant Dennis Kuniyuki Mitsunaga

DORIS LUM, ESQ.
Law Office of Doris Lum, LLLC
1001 Bishop Street, Suite 710
Honolulu, Hawaii 96813
E-mail: doris@dorislumlaw.com

Attorney for Defendant Terri Ann Otani

THOMAS M. OTAKE
841 Bishop St. Suite 2201
Honolulu, HI, 96813
thomas@otakelaw.com

Attorney for Defendant Chad McDonald

DATED:  February 26, 2024; Honolulu, Hawaii,

/S/ ANDREW M. KENNEDY
ANDREW M. KENNEDY
Attorney for Aaron Shunichi Fujii

7