IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | Case No.1:22-cr-00048-TMB-NC<br><br><br><br>ORDER ON DEFENDANT<br>TANAKA'S MOTION TO SEVER<br>TRIAL FROM CODEFENDANTS<br>**(DKTS. 398 AND 405)** |

## I.      INTRODUCTION

Before the Court is Defendant Sheri Jean Tanaka's Motion to Sever Trial from Codefendants (the "Motion").[1] Defendants Keith Mitsuyoshi Kaneshiro, Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, and Chad Michael McDonald ("Codefendants") joined the Motion ("Joinder").[2] The United States opposed ("Opposition").[3] The matter is fully briefed, and a hearing was held on February 26, 2024.[4] Though the unredacted Motion, Joinder, and unredacted Opposition were filed under seal, as detailed below, the public facts developed such that the parties agreed that the hearing

---

[1] Dkt. 398 (Redacted Motion to Sever); 405 (Sealed Unredacted Motion to Sever).
[2] Dkt. 417 (Sealed Joinder).
[3] Dkts. 425 (Redacted Opposition); 428 (Sealed Unredacted Opposition).
[4] Dkt. 462 (Motion Hearing).

1

held on February 26, 2024, could be conducted on the public record. Therefore, this Order relies on statements made in open court and is entered on the public docket. Having considered the record, and without reference to or basis in any *ex parte* filings, Tanaka's Motion at Docket 405 is **DENIED.**

## II.   BACKGROUND

Keith Mitsuyoshi Kaneshiro, Dennis Kuniyuki Mitsunaga, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald, and Sheri Jean Tanaka (the "Defendants") are charged with being members of an alleged conspiracy to persuade City of Honolulu's Prosecuting Attorney Keith Kaneshiro ("Kaneshiro") and the Department of the Prosecuting Attorney ("DPA") to investigate and prosecute a former employee ("L.J.M.") at the Honolulu architecture firm Mitsunaga and Associates, Inc. ("MAI") for theft.[5] The Defendants are jointly charged by a Superseding Indictment with Conspiracy to Commit Honest Services Wire Fraud and Federal Program Bribery, in violation of 18 U.S.C. § 371 (Count 1), and Conspiracy Against Rights, in violation of 18 U.S.C. § 241 (Count 2).[6] Trial on these charges is set to begin on March 12, 2024.[7]

On January 24, 2024, the United States filed under seal a "Notice" that one of the defendants was under investigation for allegations of threatening the safety of the prior judge and a special prosecuting attorney in the case ("Alleged Tanaka Conduct"), directing

---

[5] Dkt. 70 (Superseding Indictment).
[6] *Id.*
[7] Dkt. 413 (Amended Trial Scheduling Order).

parties to contact the United States Attorney's Office for the District of Arizona ("Arizona USAO") for further information.[8]

### A. *Sheri Tanaka's Motion to Sever*

On February 6, 2024, Tanaka filed an unredacted Motion to Sever her trial from the Codefendants.[9] Her basis for seeking severance was that the execution of a search warrant on January 23, 2024, ("January 23 Search") and subsequent seizure of some of her electronic devices had resulted in several unexpected developments.[10]

Tanaka argues that four reasons fundamentally support her severance from the Codefendants.[11] First, severance is warranted because the seizure significantly prejudiced her trial preparation, particularly considering that the United States had not confirmed whether it would seek to introduce evidence from the materials seized.[12] Second, severance would ensure the rights of her Codefendants to a fair trial because, based on the nature of the allegation that Tanaka threatened the prior trial judge and a prosecutor, the slightest introduction of that information into this case could prejudice the Codefendants and taint the jury.[13] Third, the circumstances surrounding the Alleged Tanaka Conduct, further detailed in two *ex parte* submissions for *in camera* review,[14] would raise significant

---

[8] Dkt. 356 at 2.
[9] Dkt. 405 at 2.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] The Court accepted only the first of Tanaka's two *ex parte* motions for *in camera* review. It declined to consider Tanaka's second Motion to Submit materials *ex parte* and *in camera* when

prejudice to Tanaka if she is not severed.[15] And fourth, the *in camera* filings provide other reasons warranting severance.[16] Tanaka also suggests that the United States elected to introduce these complexities into this case when it deliberately chose to conduct the January 23 Search.[17]

## B. Codefendants' Joinder

On February 12, 2024, the Codefendants joined Tanaka's Motion to Sever.[18] First, the Codefendants share Tanaka's concern that the United States would not affirmatively state whether it would introduce evidence of the Alleged Tanaka Conduct in this case.[19] Although the United States alleged it did not have current access to the investigation, the Codefendants argue this did not preclude it from gaining later access to evidence of the Alleged Tanaka Conduct, and that they could not proceed to trial without clear assurance that the United States would not introduce such evidence.[20] Citing cases in which courts held that a serious risk of prejudice arose when evidence admissible against one codefendant that would not be admissible if tried alone, the Codefendants likewise argue

---

submitted on February 5, 2024. As established above, by the February 26, 2024, hearing, the publicly available facts had developed. All parties agreed that the hearing could be held on the public record and Tanaka's counsel further clarified in open court the nature of the materials on Tanaka's seized devices. Therefore, the information Tanaka references in her second *ex parte* Motion to Submit is not presently before the Court. Thus, the Court has not reviewed these materials and they cannot form a basis for the Court's decision.

[15] *Id.* at 4.
[16] *Id.*
[17] *Id.*
[18] Dkt. 417 at 2.
[19] *Id.* at 2.
[20] *Id.* at 3.

that the Alleged Tanaka Conduct may be admissible against Tanaka, but that it is unquestionably inadmissible against the Codefendants.[21] Further, they suggest that potential spillover prejudice could not be corrected by limiting instructions if such evidence were introduced against Tanaka.[22]

Second, the Codefendants raise concerns that, even with staunch assurances from the United States, there could be substantial pretrial publicity surrounding Tanaka herself.[23] They argue that heightened media coverage of the Alleged Tanaka Conduct could exacerbate risk that the jury would impute highly prejudicial information regarding Tanaka to the Codefendants by association.[24]

Third, the Codefendants suggest that the continued participation of the special attorney associated with the Alleged Tanaka Conduct supports severance.[25] They cite United States Supreme Court's comment in *Marshall v. Jerrico, Inc.*, that "[a] scheme injecting a personal interest . . . into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions."[26] They suggest that severing Tanaka's trial would moot the issue as to them.[27]

---

[21] *Id.* (citing *United States v. Lujan*, 529 F. Supp. 2d 1315, 1325 (D.N.M. 2007) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).
[22] Dkt. 417 at 5.
[23] *Id.* at 6–7.
[24] *Id.* at 7.
[25] *Id.* at 7–8.
[26] *Id.* (citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980); 28 U.S.C. § 528).
[27] *Id.*

Last, they offer arguments against a continuance.[28]

## C. United States' Opposition

Opposing severance, the United States argues that "[s]evering Sheri Tanaka from her co-conspirators in this complex conspiracy would be a profound miscarriage of justice."[29] The United States asserts that the Defendants' relative culpabilities all must be decided together and that this case exemplifies the vital importance of the joint trial, which is the preference in the federal system.[30]

First, the United States raises the severe potential consequences of severance if the Alleged Tanaka Conduct is ultimately substantiated.[31] The United States posits that Tanaka would have obtained severance and recusal through threats, which would "be all the more unjust" in light of the conduct alleged in this case, which involves bribery and use of the criminal justice system for personal retaliation, and to which it alleges Tanaka was central"[32]

Second, the United States expresses its aim to "do everything it can to preserve a joint trial for all six defendants."[33] To that end, it assures that it is insulated from the Alleged Tanaka Conduct investigation currently being handled by the Arizona USAO.[34]

---

[28] *Id.* at 8–11.
[29] Dkts. 425, 428 at 1.
[30] Dkt. 428 at 4 (citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).
[31] *Id.* at 3–4.
[32] Dkts. 425, 428 at 1.
[33] Dkts. 425, 428 at 1.
[34] Dkts. 425, 428 at 1.

And it commits that it does not have and will not use any evidence from the Alleged Tanaka Conduct in a joint trial of this case.[35] It notes that this commitment should alleviate all Defendants' expressed concerns of spillover prejudice.[36]

Responding to Tanaka's arguments on prejudice to her trial preparation, the United States observes that its executive management had shared with the Arizona USAO Tanaka's concern that the seizure had impacted her trial preparation, and expressed its belief that the Arizona USAO was communicating with Tanaka, but declined further comment given its distance from the investigation.[37]

Third, the United States advocates for a continuance over severance as a more efficient use of court and juror resources.[38] Although losing the current jury pool would be challenging, it argues, severing Tanaka would result in two multiple-month trials with two juries, arguably a worse outcome.[39]

Fourth, the United States argues that Tanaka failed to show "that severance is the only option under the circumstances."[40] It suggests that severance is a "difficult standard," particularly in a conspiracy case.[41] It also suggests that the "heavy burden" is justified because of the strong and important interests met by joint trials identified by the United

---

[35] *Id.* (emphasis added).
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.* at 5.
[40] *Id.* at 6–12
[41] *Id.* at 6–7.

States Supreme Court: efficiency, fairness, minimizing inconvenience and sometimes trauma to witnesses, avoiding inconsistent verdicts, accurately assessing relative culpability, avoiding inequity between defendants, and "randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand."[42]

The United States addresses Tanaka's argument regarding prejudice resulting from introducing evidence of the Alleged Tanaka Conduct at trial,[43] arguing it is now moot because of its commitment not to introduce any evidence from the Arizona USAO's investigation regarding the Alleged Tanaka Conduct.[44]

The United States also addresses Tanaka's argument that her ability to prepare for trial is compromised due to her devices being seized by arguing that her claim is baseless.[45] It suggests that Tanaka "has been a party to this case since September 2022—comprising over 16 months of trial preparation" and describes her as "easily . . . the most litigious defendant," filing four motions to dismiss, a "massive" prosecutorial misconduct motion, and seven of the Defendants' sixteen motions *in limine*.[46] Therefore, the United States argues, it is implausible that seizing two iPhones, a computer, and a USB drive impair her trial preparation so severely that she cannot proceed with trial.[47] It further notes that

---

[42] *Id.* (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1997)).
[43] *Id.* at 8.
[44] *Id.*
[45] *Id.* at 9.
[46] *Id.*
[47] *Id.*

Tanaka's filings did not detail with specificity the information on the devices that Tanaka's team now lacks such that it cannot defend itself.[48]

The United States further expresses particular concern that Tanaka's Motion is based on *ex parte* filings to which it cannot respond. It argues that vague or conclusory assertions made *ex parte* without the benefit of the adversarial process do not give the Court a proper basis to decide the Motion.[49]

Next, the United States argues that if Tanaka prevails on her arguments regarding trial preparation after seizure of her devices, a continuance is the proper remedy.[50]

Last, regarding the Codefendants' argument on disqualification of the special prosecutor, the United States notes that any need for recusal is extinguished because of the prosecution team's intentional insulation from the Arizona USAO's investigation.[51] Further, it offers to share *ex parte* and *in camera* other measures taken regarding the possibility of a personal conflict, if the Court requires.[52]

*D. Bail Hearing*

On February 15, 2024, the United States Probation Office petitioned for action on Tanaka's conditions of pretrial release on the public docket, on the grounds that "[p]ursuant to 18 U.S.C. § 3145(5), that the defendant may pose a danger to any other person or the

---

[48] *Id.*
[49] *Id.* at 12.
[50] *Id.* at 12–16.
[51] *Id.* at 16–17.
[52] *Id.*

community."[53] On February 23, 2024, the Magistrate Judge held a hearing on the issue of

Tanaka's bail, and declined to modify the conditions of her pretrial supervision.[54]

### E. Hearing on the Motion to Sever

On February 26, 2024, the Court held a hearing on the Motion.[55] The Court heard

argument on the public record from Tanaka's counsel, the Codefendants' counsel, and the

United States, relating to the Motion and the Alleged Tanaka Conduct. Due to the recent

development of public knowledge of the Alleged Tanaka Conduct through media coverage,

the United States Probation Office's petition for bail review, and the bail hearing, the

parties agreed that all issues could be heard on the public record and no portion of the

hearing was held under seal.[56]

## III.    LEGAL STANDARD

Federal Rule of Criminal Procedure ("Rule") 8 permits joinder of offenses and

defendants. Separate offenses may be joined on one charging document if the offenses "are

of the same or similar character, or are based on the same act or transaction, or are

connected with or constitute parts of a common scheme or plan."[57] Multiple defendants

may be charged together "if they are alleged to have participated in the same act or

transaction, or in the same series of acts or transactions, constituting an offense or

---

[53] Dkt. 430 (USPO Petition) at 1.
[54] Dkt. 452 (Minute Order, Bail Hearing).
[55] Dkt. 462.
[56] *See id.*
[57] Fed. R. Crim. P. 8(a).

offenses."[58] Joinder is the rule rather than the exception.[59] In conspiracy cases, defendants jointly charged are presumed to be jointly tried.[60]

Severance under Rule 14, which guards against prejudicial joinder, is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants" or "prevent the jury from making a reliable judgment about guilt or innocence."[61] Joinder must be "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever."[62]

"The burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial."[63] To show "clear," "manifest," or "undue" prejudice, a defendant must "show violation of one of [her] substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with

---

[58] Fed. R. Crim. P. 8(b); *see, e.g.*, *United States v. Roselli*, 432 F.2d 879, 899 (9th Cir. 1970) (noting Rule 8(b)'s purpose is to maximize trial convenience and efficiency with minimum prejudice.).

[59] *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980).

[60] *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *see also United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004), *modified,* 425 F.3d 1248 (9th Cir. 2005) (noting that joint trials are particularly appropriate when codefendants are charged with conspiracy as "the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials").

[61] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

[62] *United States v. Lopez*, 477 F.3d 1110, 1116 (9th Cir. 2007) (quoting *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976)); *Armstrong*, 621 F.2d at 954.

[63] *United States v. Mikhel*, 889 F.3d 1003, 1046–47 (9th Cir. 2018) (*citing United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986)).

conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant."[64] Even where the risk of prejudice seems high, such risk can often be cured by "less drastic measures, such as limiting instructions."[65]

## IV.    ANALYSIS

The Court finds it inappropriate to sever Tanaka's trial from that of the Codefendants at this stage and **DENIES** the Motion accordingly.

As an initial matter, the Court carefully considers that there may be a serious risk that proceeding with a joint trial will (1) "compromise a specific trial right of one of the defendants, or" (2) "prevent the jury from making a reliable judgment about guilt or innocence."[66] But the Court is persuaded that the United States' commitment not to introduce the Alleged Tanaka Conduct as evidence in this case significantly alleviates the concerns addressed in the Ninth Circuit standard for assessing the prejudicial effect of joint trials.[67]

---

[64] *Escalante*, 637 F.2d at 1201.

[65] *Zafiro*, 506 U.S. at 539.

[66] *Zafiro*, 506 U.S. at 539.

[67] *United States v. Fernandez,* 388 F.3d 1199, 1241 (9th Cir. 2004) ("Inquiry into the prejudicial effect of a joint trial involves consideration of several factors, including: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether Appellants could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence . . . The first two factors are the most important in this inquiry.").

The Alleged Tanaka Conduct is not at issue in this case. And because the Alleged Tanaka Conduct will not be introduced as evidence, the jury will not be tasked with a potentially complicated duty of "collat[ing] and apprais[ing]" its weight as to Tanaka alone, nor burdened with understanding issues beyond the competence of the ordinary juror.[68] Further, certain information around the Alleged Tanaka Conduct has already been released publicly via media coverage, improving the Court's ability to diligently select and instruct jurors to ensure that the jury is able to make a reliable judgment as to the guilt or innocence of each Defendant. Moreover, absent the introduction of the Alleged Tanaka Conduct, Tanaka has yet to identify a specific substantive trial right as to her that would be impacted. As such, as a threshold matter, the Court finds that Tanaka has not established prejudice under the factors considered in the Ninth Circuit.

The Court turns now to Tanaka's four reasons to support severance.[69]

A. *The issue of whether introduction of evidence of the Alleged Tanaka Conduct at trial impairs Tanaka's ability to prepare for trial is moot, and her ability to prepare for trial is best addressed by a motion to continue, not to sever.*

Regarding the first reason, her ability to prepare for trial, one of Tanaka's predominantly expressed concerns has been that the United States had not committed whether or not it would seek to introduce the Alleged Tanaka Conduct in this case, a concern which is now moot.[70] Tanaka argues that introduction of this evidence would render a joint trial highly prejudicial to the Codefendants and compromise the jury's ability

---

[68] *See id.*
[69] Dkt. 405 at 2–4.
[70] *Id.*

to make a reliable judgement on the Codefendants' guilt or innocence.[71] Tanaka further reasons that a midtrial revelation of the Alleged Tanaka Conduct by the United States would pose particular risks to the Codefendants.[72]

The Codefendants share this first concern, noting that since the United States has not committed whether it will introduce such evidence at trial, the Codefendants face grave concerns of prejudice both from the uncertainty over the potential introduction of the Alleged Tanaka Conduct into their trial and from likely negative press when the story became public.[73] They suggest severance would be warranted if the United States sought to introduce evidence relevant to Tanaka but not the Codefendants, particularly considering the nature of the allegations, citing substantial case law supporting this proposition.[74]

The Court finds that this primary argument is rendered moot by the United States' commitment not to introduce any evidence regarding the Alleged Tanaka Conduct in a joint trial of this case.[75] Tanaka has not otherwise established that the Alleged Tanaka Conduct is related to this case.

Tanaka's first argument also raises her concern about her ability to prepare for trial given the seizure of her devices, including both Tanaka's counsel's access to Tanaka's

---

[71] Dkt. 405 at 7–8.

[72] *Id.* at 8.

[73] Dkt. 417 at 2–3.

[74] *Id.* at 4 (citing *U.S. v. Lujan,* 529 F. Supp. 2d 1315, 1326 (D.N.M. 2007); *United States v. Taken Alive*, 513 F.3d 899, 902 (8th Cir. 2008); *United States v. Koskela*, 96 F.3d 122, 126 (8th Cir. 1996); *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003); *United States v. Sampol*, 636 F.2d 621, 642–51 (D.C. Cir. 1980)).

[75] Dkt. 428 at 4.

discovery notes and Tanaka's counsel's time being absorbed by responding to the Alleged Tanaka Conduct. This concern would be best addressed by a continuance, not a severance. The Court addresses the issue of trial preparation fully in its order on continuance.

B. *The issue of whether introducing evidence of the Alleged Tanaka Conduct would cause prejudicial spillover is moot.*

Second, regarding Tanaka and the Codefendants' arguments on prejudicial spillover to Tanaka's co-defendants, the Court finds that this argument also is rendered moot by the Government's commitment to exclude all evidence on the Alleged Tanaka Conduct.

C. *Pretrial publicity concerns can be addressed through jury selection.*

Regarding the remaining concerns with pretrial publicity, the Court takes seriously its responsibility to ensure that jurors remain fair and impartial, and to empanel a jury committed to the "impartial consideration of the evidence at trial."[76] "Pretrial publicity— even pervasive, adverse publicity—does not inevitably lead to an unfair trial."[77] Rather, as the United States Supreme Court has articulated, "[p]rominence does not necessarily produce prejudice, and juror impartiality . . . does not require ignorance."[78]

In high-profile cases receiving significant pretrial publicity, courts are afforded broad discretion to gauge and manage the temperature of the jury and media to avoid prejudice, and a variety of tools are available.[79] Courts have mitigated potential effects of

---

[76] *Skilling v. United States*, 561 U.S. 358, 392 (2010).
[77] *Id.* at 380–81.
[78] *Id.* at 381.
[79] *Id.* at 382 ("When pretrial publicity is at issue, 'primary reliance on the judgment of the trial court makes [especially] good sense[.]'"); *see also United States v. Polizzi*, 500 F.2d 856, 879

pretrial publicity prejudice through carefully structured processes for *voir dire*, including individual questioning, that are "thorough and appropriately calibrated to expose bias, ignorance, and prevarication" among potential jurors.[80] Other methods include jury polling, post-empaneling jury instructions, and managing  media presence in the courtroom.[81]

Here, the Court's ability to ensure an unbiased jury pool is strengthened because of the recent development of the publicly known facts surrounding the Alleged Tanaka Conduct. Though the investigation may remain ongoing, the recently public facts and the media coverage surrounding the Alleged Tanaka Conduct mean that efforts can begin immediately to select a jury while mitigating risk of bias from media coverage of an investigation of uncharged allegations of conduct unrelated to this case. To that end, the Court grants the parties' agreed-upon suggestions at the hearing to begin mitigating measures including a third juror questionnaire related to pretrial publicity, additional time to question jurors, and additional juror strikes.

D. *The Alleged Tanaka Conduct is not established to have bearing on this case.*

Tanaka's third and fourth arguments relate to the nature of the Alleged Tanaka Conduct itself, including its "highly unusual" circumstances, and certain related arguments

---

(9th Cir. 1974) ("The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial.").

[80] *See In re Tsarnaev*, 780 F.3d 14, 27 (1st Cir. 2015).

[81] *See, e.g., Skilling,* 561 U.S. at 373–92 (detailing "appropriate steps to reduce th[e] risk" of juror prejudice through careful voir dire, juror questionnaires, directing jury to avoid exposure to recent publicity, and appropriate jury instructions regarding pretrial publicity).

raised in an *ex parte* filing. As established above, the Court is not convinced that the Alleged Tanaka Conduct has any bearing on this case whatsoever. And the Court's ruling is not based on any material related to the Alleged Tanaka Conduct filed *ex parte*, being made solely on the materials made available to all parties, either on the public docket or under seal. As such, the Court does not find that these reasons support severing Tanaka's trial.

   E. *There is no evidence before the Court that the special prosecutor has a conflict sufficient to warrant recusal.*

   Finally, the Court is not swayed by the Codefendants' argument that recusal or other remedies are warranted because the special prosecutor alleged to have been a target of the threat of harm now has a "personal interest" constituting a conflict sufficient to warrant recusal.[82] The special prosecutor is not a victim in this case. As the Alleged Tanaka Conduct will not be introduced in this case, the special prosecutor is not anticipated to be called to testify as a victim. Nor is the special prosecutor or prosecution team involved in the investigation of the Alleged Tanaka Conduct being handled in the Arizona USAO. Therefore, the Court declines to sever Tanaka's trial on this basis.

---

[82] *See, e.g.*, *Resnover v. Pearson*, 754 F.Supp. 1374, 1388–89 (N.D. Ind. 1991) (noting that criminal defendants often threaten the lives of judges, public defenders, and prosecutors, and stating that "[t]he law is clear that a party, including the defendant in a criminal case . . . cannot cause the recusal of his prosecutor by threatening the prosecutor or having him threatened."); *see also State v. Iowa Dist. Ct. for Dubuque Cnty.*, 870 N.W.2d 849, 854 (Iowa 2015) ("Many courts have specifically observed that threats on the life of a prosecutor from a criminal defendant will not cause a disqualifying interest in the prosecution of a different offense."); *State v. Robinson*, 179 P.3d 1254, 1260 (Ct. App. 2008) ("We agree with these cases that, as a matter of policy, a defendant does not create a disqualifying interest and cannot choose his or her prosecutor for an underlying offense by the use of threats.").

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Sever at Dockets 398 and 405.

IT IS SO ORDERED.

Dated this 28th day of February 2024.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE