SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION
UNSEALED BY ORDER OF THE COURT
DATE: ___2/17/2026, see ECF No. 5,___
         MC 26-00010 SASP-KJM

1

1        IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF HAWAII

3

UNITED STATES OF AMERICA,        )  CRIMINAL NO. 22-00048TMB-NC
4                                 )
              Plaintiff,          )  Honolulu, Hawaii
5                                 )  February 26, 2024
        vs.                       )
6                                 )
   (1) KEITH MITSUYOSHI KANESHIRO,)  [397] DEFENDANT SHERI J.
7  (2) DENNIS KUNIYUKI MITSUNAGA,)   TANAKA'S MOTION TO CONTINUE
   (3) TERRI ANN OTANI,           )  TRIAL DATE
8  (4) AARON SHUNICHI FUJII,      )  [398] DEFENDANT SHERI J.
   (5) CHAD MICHAEL MCDONALD,     )  TANAKA'S MOTION TO SEVER
9  (6) SHERI JEAN TANAKA,         )  TRIAL FROM CO-DEFENDANTS
                                  )  [417] DEFENDANTS' UNDER SEAL
10           Defendants.          )  JOINDER TO DEFENDANT SHERI
                                  )  J. TANAKA'S UNDER SEAL
11                                )  MOTION TO SEVER TRIAL FROM
                                  )  CO-DEFENDANTS
12                                )  [346] DEFENDANTS' MOTIONS IN
                                  )  LIMINE NOS. 1-4
13                                )  [341] UNITED STATES' MOTION
                                  )  IN LIMINE NO. 2
14                                )  [345] DEFENDANTS' MOTION IN
                                  )  LIMINE NO. 5
15                                )  [339] DEFENDANTS' MOTION IN
                                  )  LIMINE NOS. 6-9
16                                )  [348] UNITED STATES' MOTION
                                  )  IN LIMINE NO. 4
17                                )  [347] DEFENDANTS' MOTION IN
                                  )  LIMINE NO. 16
18                                )  [337] DEFENDANTS' MOTION IN
                                  )  LIMINE NO. 10
19                                )  [338] DEFENDANT'S MOTION IN
                                  )  LIMINE NO. 11
20                                )  [342] DEFENDANTS' MOTIONS IN
                                  )  LIMINE NOS. 14 & 15
21                                )  [343] UNITED STATES' MOTION
                                  )  IN LIMINE NO. 3
22                                )  [340] UNITED STATES' MOTION
                                  )  IN LIMINE NO. 1
23                                )  [344] DEFENDANTS' MOTION IN
                                  )  LIMINE NOS. 12 & 13
24                                )  [349] UNITED STATES' REDACTED
_____)   MOTION IN LIMINE NO. 5
25                                   *[Open-court Proceedings*
                                     *Under Separate Cover]*

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1                    TRANSCRIPT OF SEALED PROCEEDINGS
             BEFORE THE HONORABLE TIMOTHY M. BURGESS
2                    UNITED STATES DISTRICT JUDGE

3    APPEARANCES:

4    For the Government:        MICHAEL G. WHEAT, ESQ.
                                ANDREW CHIANG, ESQ.
5                               Office of the United States Attorney
                                Southern District of California
6                               800 Front Street, Room 6293
                                San Diego, California  92101
7

8    For Defendant (1)          BIRNEY B. BERVAR, ESQ.
     Keith Mitsuyoshi           Bervar & Jones
9    Kaneshiro:                 1100 Alakea Street, 20th Floor
                                Honolulu, Hawaii  96813
10

11   For Defendant (2)          NINA MARINO, ESQ.
     Dennis Kuniyuki            RYAN MITSOS, ESQ.
12   Mitsunaga:                 Kaplan Marino
                                1546 N. Fairfax Avenue
13                              Los Angeles, California  90046

14                              JOHN M. SCHUM, ESQ.
                                Law Office of John Schum
15                              P.O. Box 1241
                                Honolulu, Hawaii  96807
16

17   For Defendant (3)          DORIS LUM, ESQ.
     Terri Ann Otani:           Law Office of Doris Lum, LLLC
18                              1001 Bishop Street, Suite 710
                                Honolulu, Hawaii  96813
19

20   For Defendant (4)          ANDREW M. KENNEDY, ESQ.
     Aaron Shunichi Fujii:      Schlueter, Kwiat & Kennedy LLLP
21                              75-167 Kalani Street, Suite 201
                                Kailua-Kona, Hawaii  96740
22

23   For Defendant (5)          THOMAS M. OTAKE, ESQ.
     Chad Michael McDonald:     Thomas M. Otake AAL, ALC
24                              851 Fort Street Mall, Suite 400
                                Honolulu, Hawaii  96813
25

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION
                                                                          3

1        APPEARANCES CONT'D:

2        For Defendant (6)        MARK MERMELSTEIN, ESQ.
         Sheri Jean Tanaka:       ANDREW S. COWAN, ESQ.
3                                 Holmes, Taylor, Athey, Cowan,
                                  Mermelstein & Jones LLP
4                                 811 Wilshire Blvd., Ste. 1460
                                  Los Angeles, California  90017
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20       Official Court          Cynthia Fazio, RMR, CRR, CRC
         Reporter:               United States District Court
21                               300 Ala Moana Blvd., C-270
                                 Honolulu, Hawaii  96850
22

23

24
         Proceedings recorded by machine shorthand, transcript produced
25       with computer-aided transcription (CAT).

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION
4

1   MONDAY, FEBRUARY 26, 2024

2                                    *  *  *  *  *

3                          (Sealed proceedings:)

4            THE COURT:  Thank you, Renee.

5            THE COURTROOM MANAGER:  We're sealed, Your Honor.

6            THE COURT:  Okay.  We are under seal.  So we are going

7    to be discussing under seal a couple of motions.  It is

8    defendants' 12 and 13 and government's 5.  And let me just see

9    what I allotted for that.

10           So that was, again, 15 minutes for each side for each

11   issue.  Are the parties ready to proceed that way or is this

12   another one of those situations in which you think you just

13   want to --

14           MR. CHIANG:  Your Honor, I'm fine with merging my

15   response and then using my time from our affirmative motion and

16   merging that into our response.

17           THE COURT:  Okay.  So it sounds like everybody is in

18   agreement that we can just -- it's just -- we'll start with

19   defense, you can make your argument, and then we'll go to the

20   government, and then we'll get a reply and a reply, or a

21   response and a response.  So, let me just get this set up.

22           So, Mr. Mermelstein, we'll start with you, sir.

23           MR. MERMELSTEIN:  Thank you.  Ironically I think being

24   here will keep my back better because it's going to keep me off

25   the basketball court, so.

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

5

1          THE COURT:  Keep you off what?

2          MR. MERMELSTEIN:  The basketball court.  Unless I find

3     a game here, in which case.

4          Your Honor, I think the -- the issue here, this

5     relates to defense 12, defense 13, and government's five.

6          THE COURT:  Yes.

7          MR. MERMELSTEIN:  It relates to a series of actions

8     taken before the grand jury that investigated this case.  None

9     of what we're talking about -- none of what we're talking about

10    here is charged in the conspiracy.  None of it is part of the

11    overt acts.  None of it could be in furtherance of the

12    conspiracy.  We're talking about conduct that for the most part

13    is more than three-and-a-half years later.  Three-and-a-half

14    years after the conspiracy.

15         The conduct that we're talking about here I believe

16    for the most part about entirely is not obstruction of justice

17    conduct.  It's what I would categorize as more obstructionee

18    conduct, obstruction-like.  It's not conduct that rises to the

19    level of criminal obstruction of justice.  It was not charged

20    as criminal obstruction of justice.

21         So as a threshold matter, if there is some relevance

22    and it's in fact the less prejudicial than probative, then it

23    should come in.  The real problem I think with this conduct is

24    having the jury draw some inference from having the word

25    "obstruction" thrown around when the conduct does not rise to

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

6

1    the level of criminal obstruction of justice.

2            And I don't know that there's any limiting instruction

3    that can be crafted to differentiate between what I'll call

4    obstructionee conduct and criminal obstruction of justice

5    conduct.  And that's really the concern here.  And the jury

6    would not be given any direction.  I'm not aware of any way to

7    do this, any particular direction as to how you would decide

8    whether to draw some inference of consciousness of guilt with

9    respect to the obstruction.

10           Because we have a number of what I'll call

11    recalcitrant witnesses that were not enthused, were not

12    interested in testifying.  They made speeches, they did a lot

13    of conduct that I would call obstructionees.  Not criminal

14    obstruction, we're not talking here about false testimony,

15    we're not talking here about destruction of documents.  We're

16    talking about conduct which insulted the prosecutor.  We're

17    talking about conduct which -- reading speeches.  And that

18    conduct to -- to try -- for the government to argue some

19    inference is drawn from that conduct, I do not believe it is

20    appropriate.

21           We have the same problem with respect to Ms. Tanaka's

22    role in any of this conduct.  Ms. Tanaka, as an attorney, has a

23    duty of zealous advocacy.  She has a duty to -- I'm not going

24    to say she has a duty to engage in obstructionee conduct, but

25    as a criminal defense attorney with clients appearing before

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1    the grand jury, certainly you cannot engage in criminal

2    obstruction of justice conduct.  But if you have a duty of

3    zealous advocacy, you do have a duty to kind of get right up to

4    the limit and not cross over the limit, certainly.

5        And so I do not believe it would be appropriate to

6    draw any inference with respect to any type of consciousness of

7    guilt with respect to what is in effect zealous advocacy.

8    If -- if things crossed the line, if there was something that

9    rose to the level of criminal obstruction of justice conduct,

10   and it related to the consciousness of guilt of an individual,

11   it may be admissible with respect to that individual.  But if

12   we're falling short of that, then I believe it's entirely

13   inappropriate.

14       The -- on the issue of who it's admissible against,

15   I've read the government's papers a number of times.  It's not

16   clear to me exactly what the request is, because there seems to

17   be this idea that folks engaged in a conspiracy to engage in

18   this obstructionee conduct, and it should be admissible against

19   a whole group of folks, that's just not an analysis I've ever

20   seen done before and I don't think it's an appropriate

21   analysis.

22       If there is an individual that engaged in certain

23   conduct that rises to the threshold that I've been talking

24   about, and that relates to that individual's consciousness of

25   guilt, maybe.  But to say that because an individual was

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION
8

1    involved in a underlying conspiracy and one of his

2    co-conspirators, alleged co-conspirators engaged in conduct

3    that constitutes consciousness of guilt, that's just not

4    conduct that's in furtherance of the conspiracy.

5            So, yes, a co-conspirator could be responsible for the

6    acts of a co-conspirator, but it's only -- it's limited to acts

7    that are in furtherance of the conspiracy.  So to say that

8    there should be something attributable to one -- attributable

9    against one defendant because three-and-a-half years later

10   another defendant engaged in certain conduct well beyond the

11   end of the conspiracy, I don't believe that's the correct

12   analysis.  I think the way to do this would be to do it on an

13   individual by individual basis and actually see if there is

14   something that rises to the level of consciousness of guilt

15   with respect to that individual, not with respect to anyone

16   else.

17           And so there are a number of challenges that I think

18   it's ultimately the government's burden here to admit this

19   evidence.  The government has the burden to run through the

20   *Bailey* factors and establish that the conduct that they are

21   proposing to offer in meets all of those -- all of those

22   factors.

23           I think just big picture, Your Honor, you have

24   essentially an attorney, Ms. Tanaka, who represented a number

25   of individuals.  This was her first time appearing as a

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1   criminal defense attorney before a federal grand jury.  This is

2   someone who is frustrated because the government wouldn't tell

3   her what the investigation was all about.  And maybe you and I

4   and other folks who have more preindictment experience

5   understand that the government doesn't have a particular duty

6   to share what an investigation is all about.

7          And I think you have a situation where the advice was

8   conservative in terms of invoking.  There were Motions to

9   Compel brought.  There were folks who were invoking across the

10  board.  There were Motions to Compel that were filed, and as a

11  result of that, appropriate lines were drawn in terms of what

12  is appropriate to testify about, what is not appropriate to

13  testify about.  In one -- with respect to Ms. Otani, I think

14  that the court actually -- seems like the court got it wrong

15  because the court actually compelled her to testify, Your Honor

16  has issued an order on that.  So I think there was a line drawn

17  that needed to take place with respect to what was or was not

18  fair game with respect to Fifth Amendment invocation.  And I

19  think that got -- I think that got sorted out.

20         And so with respect to each of these particular

21  buckets of evidence, I think that we need to go through it,

22  have the government explain, they haven't done it in the motion

23  papers, explain how it meets all the factors and explain who

24  they propose to have it be admissible against.  Because this

25  sort of blunderbuss of it all comes in against everyone is just

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

10

1    not the appropriate analysis that needs to be done here.

2         Specifically I wanted to talk for a minute about the

3    Fifth Amendment.  Because I think that's very dangerous

4    territory if we're going to -- if we're going to wade into

5    that.  There's the suggestion that there was the wrongful

6    invocation of the Fifth Amendment.  And I think unless there

7    has been some threshold establishment that it was in fact a

8    wrongful invocation of the Fifth Amendment, I think there is a

9    substantial danger of attributing something negative in terms

10   of consciousness of guilt to invoking one's Fifth Amendment

11   rights before the grand jury.

12        THE COURT:  Yeah, but that doesn't mean a witness can

13   invoke the Fifth Amendment to each and every question no matter

14   what it is.

15        MR. MERMELSTEIN:  Of course.  And --

16        THE COURT:  Didn't that in fact occur in this case?

17        MR. MERMELSTEIN:  I think there were certain witnesses

18   that did invoke on the basis that ultimately was brought before

19   the judges.  There were different Motions to Compel, different

20   judges.  And some line drawing was made in terms of what is or

21   is not appropriate.

22        But I think it's very dangerous territory to then put

23   that in front of a jury and have a jury draw the conclusion

24   that that behavior constituted consciousness of guilt because

25   of the Fifth Amendment right to remain silent.  And I just

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1    don't see how we're -- we would instruct the jury as to when

2    the line was crossed or -- or not have the jury draw some

3    adverse conclusion based on the proper invocation of the Fifth

4    Amendment.

5           And I think all of the stuff, Your Honor mentioned the

6    word sideshow a couple -- long time ago, couple hours ago.  And

7    I think a lot of the stuff really has the risk of becoming a

8    sideshow, because when -- when we go through each of these

9    things, and we look at the probative value in terms of the

10   consciousness of -- alleged consciousness of guilt with respect

11   to that individual that engaged in the conduct, when you

12   consider that against the risk of all of the other defendants

13   and something nefarious being attributed to all the other

14   defendants, I don't think we're left with much of anything

15   that -- that survives.

16          Let me also talk -- I want to be mindful of my time

17   here and talk about Motion in Limine 13 -- are we doing 13 at

18   this point?

19          THE COURT:  We're doing 12, 13 and five.  And you're

20   doing a combined argument in favor of 12 and 13, and whatever

21   opposition you have to five.

22          MR. MERMELSTEIN:  Okay.  So, moving on to 13 for a

23   moment.  The government's argument both with respect to 12 and

24   13 that there was some modus operandi here, which was a

25   suggestion in their original notice, it seems to me they've

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1   largely abandoned the modus operandi theory.  I think modus

2   operandi is limited to proving up identity.  So I don't think

3   that's any issue here, which is why I spent my time focused on

4   the consciousness of guilt.

5        When you talk about -- so this is really focused on

6   attorney litigation conduct.  I think there's a very dangerous,

7   speaking personally as an attorney that takes positions on

8   behalf of clients all the time, and then if you were to ask,

9   well, why did I take a particular position on a particular

10  issue, to then say, well, that was on me or that was on my

11  client, I'm not quite sure how we parse through who we can

12  infer that that decision was on.

13       So this issue really relates to a decision not to

14  oppose a Motion to Dismiss for the conversion claim in the

15  civil case, and the argument that it's admissible to show that

16  Tanaka knew there was no probable cause for the criminal theft,

17  is one of the particular pieces of attorney litigation conduct

18  that the government seeks to admit.

19       It just seems to me that in any litigation, decisions

20  are made between a client, an attorney in this case, to

21  corporate clients, not an individual client.  And so I was

22  going to say Tanaka was the mouthpiece here, but she wasn't

23  even the mouthpiece.  Her trial partner, Myron Takemoto, was

24  the mouthpiece here.  And Mr. Takemoto agreed to have a certain

25  -- a cross-claim withdrawn.

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1          The government wants to attribute that conduct to

2     Tanaka and draw some inference about how Tanaka felt about

3     something.  And I just don't see how you get there.  Even if

4     you get from Takemoto to Tanaka, or Tanaka then to -- to the

5     corporate clients, who are we going to attribute that knowledge

6     to, and -- and based on what?  You have a privilege that is in

7     between the attorney and -- and the clients.  Who are we going

8     to draw this adverse inference against?

9          And lots of times, I mean like imagine a situation

10    where a U.S. Attorney's Office in a situation similar to this

11    doesn't seek an indictment on the -- on obstruction of justice

12    conduct.  What would you attribute to the particular Assistant

13    U.S. Attorney in a situation where an entire -- an office

14    doesn't seek an indictment.  Do you attribute they didn't have

15    probable cause, they didn't think they could convince a grand

16    jury of probable cause?  Maybe they decided that using the

17    obstruction of justice conduct as 404(b) evidence was

18    sufficient.  Maybe it just wasn't important.  To try to

19    conclude that the reason that particular attorney didn't do

20    something was because they didn't think they had probable cause

21    for it I think is it's very dangerous territory.

22          Their boss could have told them not to do it.  I don't

23    know.  But I think it's a very dangerous and I think it's a

24    very speculative inference to try to conclude that because the

25    attorney said something in court or did something in court or

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

14

1    didn't do something in court, that the reason they did that was

2    because of X or Y or Z or A or B or C.

3              Let me -- if the Court has questions, I'm happy to

4    address.  Otherwise I think I'll reserve the remainder of my

5    time.

6              THE COURT:  No, I don't have any questions.  Thank

7    you.

8              MR. MERMELSTEIN:  Thank you.

9              MR. CHIANG:  Your Honor, I'll start with grand jury

10   conduct and then I'll move on to the civil attorney litigation

11   conduct.

12             THE COURT:  Okay.

13             MR. CHIANG:  Your Honor, when a group of people, you

14   know, band together and try to stop the grand jury from

15   figuring out what they did, that is relevant admissible

16   evidence.  It's consciousness of guilt.  We would seek to admit

17   it under 404(b).  But it's -- it's -- you know, it's evidence

18   of trying to stop the grand jury from figuring out what they

19   did.  This is evidence that can go before a jury under a proper

20   404(b) analysis.  And this is evidence that is admissible at

21   least, at least against Sheri Tanaka, and at most against the

22   people who she was representing, which is the rest of the MAI

23   defendants.

24             Ms. Tanaka represented each defendant that went into

25   that grand jury.  She counseled them.  And, you know, the Ninth

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

15

1    Circuit has said, One who advises with corrupt motive the

2    witness to take the Fifth Amendment can and does obstruct the

3    influence of the due administration of justice.

4             And in this particular case we have evidence that

5    Ms. Tanaka did do that.  She had -- she had witnesses go to the

6    grand jury, first read these false typed out prepared speeches.

7    These speeches, you know, contained falsehoods about the

8    prosecutor who was assisting the grand jury in the case.  It

9    contained other falsehoods.  One witness said the FBI was

10   terrorizing me and then from -- he read the FBI was terrorizing

11   him from a speech and then later admitted that that hadn't

12   really happened.  And, you know, evidence from the grand jury

13   showed that these statements were aided or facilitated by

14   Ms. Tanaka.

15            One particular statement, you know, a witness said

16   that Ms. Tanaka helped him write it.  And there was these --

17   and she also highlighted these all cap letters that said --

18   that told the witness to repeat the statement over and over and

19   over again.

20            So, you know, I think that's evidence of a corrupt

21   motive in trying to -- in counseling someone to take the Fifth

22   Amendment.  And, you know, there's other conduct as well that

23   is not limited to reading false speeches and inappropriately

24   pleading the fifth.  We have witnesses -- one witness in

25   particular who dodged grand jury subpoenas on three occasions,

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1    and there's evidence that shows that while he was dodging those

2    subpoenas, he was speaking to Ms. Tanaka on the phone the

3    entire time.  And we also have another witness who at the time

4    was the CFO or MAI, came to the grand jury and wanted to

5    present a prepared statement to the grand jury that was filled

6    with things that were false about Laurel Mau and her

7    prosecution.

8            So all these things are happening and these things

9    are, you know, quite -- they're -- they're bizarre in one

10   sense, but they're also very brazen of people coming in and

11   trying to block the grand jury from figuring out exactly what

12   happened.  And based on the evidence, it's quite clear that

13   Ms. Tanaka was behind that.  She was -- she was representing

14   these witnesses, she was speaking to these witnesses.  And we

15   have one witness in particular that -- that tied the conduct to

16   her.

17           So I think that, you know, this is relevant 404(b)

18   evidence, at least with respect to Ms. Tanaka, but because she

19   was also acting at the behest of MAI and the other defendants

20   are principals, agents, officers of MAI, you know, she was

21   acting -- she was acting for them.

22           I think that this evidence therefore should come in

23   against all of the evidence -- against all of the defendants.

24   We ask the Court to, you know, do the requisite 403 balancing

25   test.  And I think when the Court does do that, the potential

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1    for prejudice is not outweighed by the probative value of the

2    evidence.

3            So, with that, let me move on to the attorney

4    litigation conduct.

5            As we argued earlier this morning, the civil case

6    evidence, the civil case is an important chapter of this

7    conspiracy because, you know, it generated the very evidence

8    that was used in the criminal case.  And that's what makes the

9    attorney conduct in a civil case so relevant.

10           I think for one thing, for one thing, you know, we

11   want to admit the judgment and the verdict to show effect on

12   the listener on the -- on the counterclaims.  But the jury is

13   not going to understand what these counterclaims mean.  They're

14   not going to understand what these counterclaims are about

15   without hearing what Ms. Tanaka argued about them during

16   closing arguments.  In her closing argument she basically

17   tied -- she basically explained what these counterclaims were

18   about and this allows the jury to make the connection that the

19   counterclaims from the MAI civil trial are basically repackaged

20   versions of the criminal charges that came later.  Right?  Or

21   rather, more accurately, that the MAI defendants repackaged

22   those counterclaims and turned them into criminal charges.

23           So the jury needs to understand, you know, what those

24   counterclaims are.  And they will -- and they understand it by

25   hearing how Ms. Tanaka made her closing arguments and how she

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION
18

1    explained what those counterclaims were from the civil trial.

2            Now, there's, you know, additional things from the

3    civil trial that reflect Ms. Tanaka's knowledge about the

4    conspiracy.  When -- during closing arguments she told the jury

5    that Laurel Mau may be charged with a crime for her conduct,

6    and Kaneshiro continues to pursue it to this day.  How does

7    she -- how does she know that?

8            You know, at the time that the civil trial was

9    happening, Kaneshiro's deputy, Dwight Nadamoto, had already

10   made the decision that he wasn't going to charge her because he

11   believed that she committed no crimes.  Then one month later,

12   at the -- at the civil trial closing, Ms. Tanaka is telling a

13   group of people that Keith Kaneshiro may still charge her.

14   He's still pursuing her.  How does she know that?  These --

15   statements like these, these are statements of conspirators

16   reflecting knowledge about a conspiracy.  You know, it doesn't

17   matter that it's being made in the context of litigation.  I

18   would argue that that statement isn't really relevant to the

19   civil -- to the -- the civil claims themselves.  But yet she

20   still made them, and it shows knowledge.

21           In her -- in her -- in one of the Motions in Limine --

22   in Motion in Limines in the civil case she wrote that Kaneshiro

23   had been investigating Laurel Mau for 21 months.  And so if you

24   date that -- the date of that pleading back 21 months, that

25   takes it to October of 2012, which is the very day that -- the

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1    very month that Dennis Mitsunaga sat down with Keith Kaneshiro

2    and requested that he press charges against Laurel Mau.  How

3    does Sheri Tanaka know that that was -- that day, that month

4    was when Keith Kaneshiro began to investigate Laurel Mau?

5    Again, these are statements of a conspirator with knowledge

6    about a conspiracy.  So there's a whole host of things that

7    happened in the civil trial that are relevant.  They come in as

8    substantive evidence.  Thank you.

9            THE COURT:  Thank you.  Mr. Mermelstein, how long do

10   you need for your rebuttal?

11           MR. MERMELSTEIN:  Not long, Your Honor.

12           THE COURT:  Well --

13           MR. MERMELSTEIN:  How long do I have?

14           THE COURT:  Let's try to assign a number.  How about

15   five minutes?

16           MR. MERMELSTEIN:  Five minutes is great.

17           THE COURT:  Great.

18           MR. MERMELSTEIN:  Your Honor, what we heard here was

19   an analysis at a 40,000-foot level whereas what we need, or

20   what the government needs is an analysis at the four-foot

21   level.  It's their burden to prove, to show you that they've

22   traced through the factors and there's a particular chain of

23   inferences that shows it should be admissible against specific

24   people, and they've fallen woefully short of that.

25           They're asking you for a blanket ruling with respect

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

20

1    to an entire panoply of conduct, some of which invokes Fifth

2    Amendment issues, other of which invokes conduct that does

3    clearly not rise to the level of criminal obstruction of

4    justice.

5            When I heard the conduct that we're talking about, I

6    did not hear any conduct that talks about anything that would

7    rise to the level of a violation of 18 U.S.C. 1510 for

8    obstructing a criminal investigation or making a false

9    declaration before the grand jury under 1623, or perjury under

10   1621.  We didn't get there.  And for the government to say they

11   want to just put this all in is not appropriate and it's not

12   consistent with the law.  And this type of information

13   absolutely runs the risk of the jury concluding that folks were

14   recalcitrant witnesses, were not interested in participating in

15   this process, but from Ms. Tanaka's vantage point was

16   fulfilling her duty of zealous advocacy.  And the absolute risk

17   here is that jurors will draw some nefarious conclusion from

18   that, and that is that is the concern.

19           It's very similar in fact when you think about the

20   bribery allegations here, and the Supreme Court has been very

21   tight to circumscribe what needs to be proved for bribery,

22   because we have First Amendment conduct in terms of campaign

23   donations on one side and we have other First Amendment

24   conduct, the right to redress, government to remedy harms as a

25   victim on the other side.  And so the Supreme Court has been

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1    very tight in terms of what actually needs to be proved to run

2    afoul of the bribery laws.  And I think we're doing the same

3    thing here, we're running the risk of the same thing here all

4    for conduct that is minimally probative.

5          I do not think a blanket ruling is -- is appropriate

6    at all.  Counsel mentioned dodging subpoenas.  Well, where is

7    the line?  One would have to sort of look very carefully at,

8    well, was the subpoena served properly.  If the subpoena is

9    served properly, okay, then the witness has to appear.  But if

10   the subpoena wasn't served, then it's not inappropriate to --

11   to not appear and it's not inappropriate to counsel a witness

12   that if you haven't been served properly you don't need to

13   appear.  I don't think we can do this at a 40,000-foot level.

14         Counsel talked about moving over to -- moving over to

15   in limine 13 for a moment on the attorney conduct.  Counsel

16   talked about Ms. Tanaka referencing Keith Kaneshiro's name in

17   the civil case.  That was -- must have been an overstatement.

18   But Mr. Kaneshiro's name -- it was not Mr. Kaneshiro will

19   charge this case.  This wasn't a statement about her alleged

20   co-conspirator that he will charge this case.  Certainly I

21   think counsel meant to say it was a statement by, if anything,

22   the DPA.  There was no reference in the closing argument to

23   Mr. Kaneshiro will charge this case.

24         In terms of the references to the criminal case in the

25   civil case, as I understand it, MAI actually filed a Motion in

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

22

1    Limine to exclude all references to the criminal investigation

2    because MAI did not think it was appropriate to be in the civil

3    case at all.  And MAI lost that motion and the trial judge made

4    a determination that the criminal investigation had some

5    relevance to the civil case.  That wasn't MAI's request.  That

6    was the ruling by the court.  Well, once the court has made

7    that ruling, then sure, there's going to be references to the

8    criminal investigation because that's what the court had ruled.

9            And to say that well, Ms. Tanaka knew the

10   investigation --

11                    (Alarm ringing.)

12           MR. MERMELSTEIN:  I will take my cue and wrap up in a

13   moment, Your Honor.

14           To say that Ms. Tanaka -- to draw some inference from

15   the fact that Ms. Tanaka knew the investigation had been going

16   for 21 months, well, she was aware of when the referral had

17   been made.  She was aware of when the dialogue had moved from

18   Honolulu Police Department to the DPA.  So of course she knew

19   how long the investigation had been going on.  That doesn't

20   prove a bribe.  It doesn't show anything about the bribe -- an

21   alleged bribe.  What it shows is an awareness of a criminal

22   investigation.  They all knew there was a criminal

23   investigation because they had litigated the propriety of

24   admitting the fact of the investigation.

25           And as for a statement that the government, the DPA

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

```
 1   may file these charges, it's a matter under investigation.  Of
 2   course they may file the charges.  That doesn't show anything
 3   one way or the other.  So, I just -- it looks to me like this
 4   attorney litigation conduct is -- the chain of inferences that
 5   the government would need to make to establish some probative
 6   value from that is -- is very speculative.  I think it verges
 7   on -- I think it also puts the defendants in a very awkward
 8   spot because it puts them to the position where if they have to
 9   explain that conduct, then they have to talk about waiving
10   privilege and getting into -- or whether an attorney can
11   testify about why the attorney did -- took certain steps, made
12   certain decisions in court, and I think that that's --
13   that's -- ultimately invades the privilege.  I don't know that
14   the attorney has the ability to do that.
15            THE COURT:  And your last point?
16            MR. MERMELSTEIN:  That is my last point, Your Honor.
17            THE COURT:  Thank you very much.
18            MR. MERMELSTEIN:  Thank you.
19            MR. CHIANG:  Very briefly, Your Honor.  Regarding
20   Mr. Mermelstein's interpretation of Ms. Tanaka's statements in
21   the civil case, that's for a jury to decide.  The jury can
22   decide what those statements meant.
23            And then going to prosecution -- to the obstruction
24   issues, I'm not aware that the acts have to arise to a
25   chargeable offense for them to constitute other act evidence
```

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

1    under 404(b).  So long as they are acts that are trying to

2    thwart the grand jury investigation and reflect, you know, a --

3    a inference of consciousness of guilt, that is proper 404(b)

4    evidence.  And if the Court wants -- sees any -- any, you know,

5    danger of prejudice from that type of evidence, then the Court

6    can issue a proper limiting instruction that says that 404(b)

7    conduct should be considered only for consciousness of guilt

8    and not for evidence of the substantive act.

9            THE COURT:  All right.  Thank you.  Anything else we

10   need to discuss under seal today?  On this issue?

11           MR. CHIANG:  Not from us.

12           MR. MERMELSTEIN:  No, Your Honor.

13           THE COURT:  All right.  Let's go ahead and unseal the

14   courtroom, please.

15                   (End of sealed proceedings.)

16

17

18

19

20

21

22

23

24

25

SEALED DOCUMENT CONTAINING NON-PUBLIC INFORMATION

```
 1                   COURT REPORTER'S CERTIFICATE

 2

 3          I, CYNTHIA FAZIO, Official Court Reporter, United

 4    States District Court, District of Hawaii, do hereby certify

 5    that pursuant to 28 U.S.C. §753 the foregoing pages is a

 6    complete, true, and correct transcript of the stenographically

 7    reported SEALED proceedings held in the above-entitled matter

 8    and that the transcript page format is in conformance with the

 9    regulations of the Judicial Conference of the United States.

10          DATED at Honolulu, Hawaii, February 29, 2024.

11

12

13                    /s/ Cynthia Fazio
                      CYNTHIA FAZIO, RMR, CRR, CRC
14

15

16

17

18

19

20

21

22

23

24

25
```