UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

```
                                )
UNITED STATES OF AMERICA,       )  Case No. 22-CR-00048TMB-NC-6
                                )
                  Plaintiff,    )  February 23, 2024
                                )  10:31 a.m.
          vs.                   )
                                )
SHERI JEAN TANAKA,              )
                                )  U.S. District Court
                  Defendant.    )  300 Ala Moana Boulevard
                                )  Honolulu, HI 96850
_____ )
```

TRANSCRIPT OF BAIL REVIEW HEARING
BEFORE THE HONORABLE NATHANAEL M. COUSINS
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES:</u>

| | |
|---|---|
| For the Plaintiff: | Shauna Prewitt, Esq. |
| | Department of Justice-USAO |
| | 880 Front Street, Suite 6293 |
| | San Diego, CA  92101 |
| | |
| For the Defendant: | Mark Mermelstein, Esq. |
| | Andrew S. Cowan, Esq. |
| | Holmes Athey Cowan & Mermelstein |
| | 811 Wilshire Boulevard |
| | Suite 1460 |
| | Los Angeles, CA  90017 |
| | |
| For the Defendant: | Crystal Gail, K. Glendon, Esq. |
| | 1130 N. Nimitz Highway |
| | Suite B-299 |
| | Honolulu, HI  96817 |
| | |
| Transcription Service: | Jessica B. Cahill, CER/CET-708 |
| | Maukele Transcribers, LLC |
| | 467 Maukele Place |
| | Wailuku, Maui, HI  96793 |
| | Telephone: (808)298-8633 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    FEBRUARY 23, 2024                                  10:28 A.M.

2              THE CLERK:  All rise.

3              THE COURT:  Good morning.

4              THE GALLERY:  Good morning, Your Honor.

5              THE CLERK:  United States District Court for the

6    District of Hawaii with the Honorable Nathanael M. Cousins,

7    United States Magistrate Judge presiding, is now in session.

8              THE COURT:  Thank you all.  Please be seated.

9              THE CLERK:  Criminal number 22-00048TMB-NC, United

10   States of America v. Defendant (06) Sheri Jean Tanaka.  This case

11   is called for a bail hearing.

12             Counsel, please make your appearances for the record,

13   starting with the Government.

14             MS. PREWITT:  Good morning, Your Honor.  Shauna

15   Prewitt, on behalf of the United States, specially appearing out

16   of the Southern District of California in San Diego.  And I'm

17   also joined this morning by Probation Officers Erin Patrick and

18   Allison Tom.

19             THE COURT:  And are they behind you there?

20             MS. PREWITT:  Yes.

21             THE COURT:  Good morning, all.  Thank you.  And on the

22   Defense.

23             MR. MERMELSTEIN:  Good morning, Your Honor.  Mark

24   Mermelstein and Andrew Cowan, Holmes Athey, on behalf of Ms.

25   Tanaka, who is present in court out of custody.

1          THE COURT:  Good morning to you all.

2          MR. MERMELSTEIN:  And local counsel, Crystal Glendon,

3   as well.

4          THE COURT:  Welcome, all.  And you may be seated.

5   Thank you.

6          And I'm Magistrate Judge Cousins.  I'm from California.

7   This is our first meeting and first hearing in the case together.

8   And since we've come so far, let me spend a moment talking about

9   the procedural posture of how we're here, why we're here, and

10  what we're going to talk about today.  And we are making a

11  recording of today's hearing.  And I'll remind you and remind

12  myself to speak into a microphone and solely enough that we make

13  a good transcription of the hearing, if one is requested.

14         Now I've been cross designated by the Courts in the

15  District of Hawaii and the District of the Northern District of

16  California to appear in this case because the judges in this

17  district have recused themselves from this matter.  And that's

18  why I'm presiding over this pretrial hearing.  And as I

19  mentioned, this is my first appearance in the case and our first

20  occasion to be together.

21         And the reason that we're holding the hearing is that

22  the Pretrial Probation Unit requested a bail review hearing,

23  which I granted, issuing a summons for Ms. Tanaka to appear today

24  before the Court, and she is here with counsel present.  Ms.

25  Prewitt, for the Government, just made an appearance in the case,

1   so I think this is her first appearance in this matter as well.

2   Judge Burgess also now, is the District Court Judge assigned to

3   the case.  If there are any appeals of any pretrial release

4   decisions, those will go to Judge Burgess for his review.  And I

5   know there's a next court date set for Monday on trial

6   preparation issues, severance and continuance issues.

7          So I'm privy to those.  Those are outside my area of

8   decision, but I'm aware of the context of what we're doing today

9   as to how it fits in with the trial proceedings.  Any questions

10  so far?  No?

11          MS. PREWITT:  No, Your Honor.

12          THE COURT:  All right.  And under the Bail Reform Act,

13  18 USC, Section 3142, the Court can reopen a detention or release

14  hearing at any time.  And under 3142(c), the Court may amend

15  conditions of release at any time.  The twin concerns of the

16  court at the time of a detention hearing are the risk of non-

17  appearance of the person accused and whether there's a danger to

18  any person or to the community that will be posed by the release

19  of the accused.

20          In this case, the Pretrial Probation Unit submitted a

21  memorandum raising concerns about the danger to any person or to

22  the community posed by the Defendant's continued release.  I'll

23  ask them in a moment to detail their concerns and give the

24  parties an opportunity to address those concerns further.  But to

25  be clear, they have not alleged a new violation of law.  There's

1    not been a new violation of law alleged against Ms. Tanaka.

2           So there's not a new charge and, of course, there's not

3    been a conviction.  We're not here for a trial or for sentencing

4    today.  This is a pretrial release detention hearing proceeding.

5    That's what we're doing today.

6           And Ms. Tanaka has some important rights that I want to

7    make sure that she's alerted to and that her attorneys are

8    alerted to, and the public that is here, this is a public

9    proceeding that they also understand the nature of what we're

10   doing today.

11          Ms. Tanaka has nothing to prove.  She has a right to

12   remain silent.  If she were to speak today, anything she said

13   could be used against her.  So it's very much in her interest to

14   allow her attorneys to make any arguments, and they can even make

15   proffers of fact.  They also can call witnesses if they wish to,

16   to address the issues of detention or release.

17          She has the right to have the consultation of her

18   attorneys at all times.  And if at any point she or they wish to

19   pause the proceedings so they can confer confidentially, I'll

20   pause the proceedings so you can have that confidential

21   communication.

22          Both parties -- in fact, the Government may also

23   proceed by proffer as to facts and could also call witnesses.

24   And, Ms. Tanaka, if you were to testify, I would allow the

25   government to cross-examine you and would caution you that it

1   might very well be in your interest to not testify and to allow

2   your attorneys to make proffers.  But if we get to that point,

3   I'll give you further advisement.  The rules of evidence do not

4   apply at this stage of the proceedings, but due process and

5   fundamental fairness are always applicable in the federal courts.

6   So if there is a witness who testified, I'll allow the other side

7   to cross-examine that witness to give a complete record.

8        One more procedural issue on the prosecution side.

9   This is a case involving alleged crime victims, and the nature of

10   the alleged concerns from Pretrial and Probation is an issue of

11   concerns to a potential crime victim.  There's a statute, the

12   Crime Victims' Rights Act, which provides statutory protection

13   for crime victims and authorizes the prosecution to implement

14   those rights.

15        So, Ms. Prewitt, I remind you of the obligations of the

16   U.S. Attorney's Office to notify any and all crime victims of

17   these proceedings and to allow them an opportunity to participate

18   in the proceedings.  And the proceedings include hearings

19   involving detention or release, which is what we're doing today,

20   and to provide continuing access to the proceedings, including

21   consulting with the Government counsel.

22        And the Court has an obligation to enforce the Crime

23   Victims' Rights Act and to make provision if there's a crime

24   victim who wishes to address the court, to give that crime victim

25   an opportunity to participate in the proceedings.

1              So let me pause there for a moment, Ms. Prewitt,

2    looking at you, are there any crime victims that you're aware of

3    now who wish to address the Court in some way during this hearing

4    that you're aware of this moment?

5              MS. PREWITT:  I am not aware of anyone that wishes to

6    address the Court who is a victim in this case.

7              THE COURT:  All right.  Thank you.  And if you develop

8    information about a crime victim wishing to address the Court,

9    please bring it to the Court's attention -- to my attention

10   during the hearing or before further proceedings.

11             MS. PREWITT:  I will, Your Honor.  Thank you.

12             THE COURT:  All right.  Thank you.  And I will say

13   independently, the Court also has not received any notice from

14   anyone asserting that they are a crime victim wishing to address

15   the Court today.  But if they did, we would afford them the

16   rights due under the Crime Victims' Rights act.

17             All right.  Those are my preliminaries, and so here's

18   how I wish to proceed, which is first, to get more information

19   from our Pretrial Probation Officers about the concerns that

20   they've asserted in their memo to the Court, which the parties

21   received as well.  Then to give the prosecution an opportunity,

22   if the prosecution wishes to, to provide any additional

23   information on the topics of detention or release and to give the

24   defense an opportunity to present any information it wishes to on

25   detention or release issues.

1        The recommendation of Pretrial was the addition of five

2    additional conditions of supervision and the deletion of one.

3    The parties are alerted to those.  Those are recommendations to

4    the Court, and I'm not bound by the recommendations.  The parties

5    may assert that no modifications should occur or that different

6    modifications should occur.

7        The Government, at any time, could seek for a

8    revocation of the release conditions.  As of this moment, they

9    have not made that request.  That's not what's been recommended

10   from Pretrial Services.  If there were a finding that there was a

11   violation of the release conditions, the consequences are that

12   Ms. Tanaka could be detained pending trial.  If there were a

13   crime committed while on release, there's increased punishment

14   for those crimes.  In this case, there's a $50,000 unsecured

15   bond, and that bond could be forfeited.  Those are contextual.

16   That's not what's been charged, but that's additional information

17   for the parties benefit.

18       All right.  So let me give an opportunity for our

19   Pretrial P0robation Office to present publicly here more

20   information in support of their concerns about the risks to any

21   person or the community.

22       THE PROBATION OFFICER:  Good morning, Your Honor.  For

23   clarification purposes, Pretrial Services has not received any

24   additional information aside from what is in the report.  Would

25   Your Honor like for me to summarize what has been provided?

1          THE COURT:  Yes, please.  In part, it's for the

2   public's interest.  There are people here I can tell from the

3   community who are interested in the proceedings, and this is a

4   public proceeding.  So if you'll please summarize that.

5          THE PROBATION OFFICER:  Yes, Your Honor.  Pretrial

6   Services requested the bail review hearing based on information

7   provided by the United States Marshal Service in the District of

8   Hawaii, alleging that the Defendant is under United States

9   Marshal Service investigation for making threats and/or being

10  involved in threatening a United States Marshal protectee.

11          The Marshals provided information that a search warrant

12  was executed on the Defendant's residence in January of 2024.

13  Pretrial Services did contact the U.S. Attorney's Office in the

14  Southern District of California and the District of Arizona.  No

15  information -- additional information was provided by the

16  District of Arizona aside from face sheets for the search

17  warrants.

18          The face sheets of those search warrants stated, in

19  part, that items to be seized are evidence contraband, fruits, or

20  instrumentalities of violations of conspiracy to murder an

21  officer or employee of the United States and influencing or

22  injuring an officer of the Court.  Pretrial Services has not

23  received any affidavits related to those search warrant requests

24  or information on what was found during those search warrants.

25          In addition, while not a condition of pretrial release,

1   the Defendant was provided with written instruction by the

2   District of Hawaii and the Central District of California to

3   report all contact with law enforcement.  She acknowledged both

4   sets of instructions with her signature and was provided a copy

5   of both.  She did not notify either district that she had contact

6   with law enforcement, specifically, that search warrants were

7   executed on the Defendant's property and person.

8           THE COURT:  All right.  Thank you.  And as to the

9   concerns raised, let me confer with the Defense here to see if

10  that's -- if you need any additional information as to what's

11  asserted by the Pretrial unit.

12          MR. MERMELSTEIN:  No, Your Honor.

13          THE COURT:  All right.  And just to confirm, you did

14  receive a copy of the written memo that they created?

15          MR. MERMELSTEIN:  Yes, Your Honor.

16          THE COURT:  All right.  Thank you.  All right.  If the

17  parties have any additional questions for you, I may come back to

18  you as to either the facts or the recommendation you've made as

19  to the modifications to the pretrial conditions.

20          THE PROBATION OFFICER:  Thank you, Your Honor.

21          THE COURT:  Thank you very much.

22          All right.  Ms. Prewitt, then let me go to you next.

23  As to both -- I'll make it a compound question.  If there's any

24  additional facts that you wish to present to the Court on the

25  concerns raised by Pretrial Services and then, secondly, if you

1  join the recommendation for modification, if you have different

2  modifications, a different remedy, I'm all ears.

3          MS. PREWITT:  Your Honor, is it okay if I address you

4  from the table or do I need to go to the lectern?

5          THE COURT:  Any microphone is appropriate.

6          MS. PREWITT:  Okay.  Thank you, Your Honor.  I do want

7  to start out by just saying that we do appreciate Pretrial's work

8  here in bringing these issues to the attention of the Court.  And

9  I want to also just speak briefly, kind of, about my role in this

10  case.

11          As the Court is aware, my office is currently handling

12  pay-to-play allegations related to the Defendant and others and

13  has been handling that case for a long period of time concerning

14  allegations from 2012 to approximately 2017.

15          My understanding is that in late 2023, there was an

16  investigation opened by a different U.S. Attorney's Office, the

17  District of Arizona, into potential allegations that Pretrial has

18  talked about this morning in which one of the members of my

19  office is purported to be a victim.

20          As such, my office is recused from that investigation

21  and has taken strict actions to try to make sure that we respect

22  the right of the District of Arizona to proceed under the common

23  law privilege that protects investigations, in large part because

24  we want to protect witnesses, potential sources, potential

25  victims, as well as the privacy of the targets involved if and

1   until an appropriate time comes when charging decisions are or

2   are not made.

3           I've spoken to my colleagues in the District of

4   Arizona, not in terms of seeking facts, because I do want to

5   respect that privilege, but I have been assured by them that to

6   the extent they have information that rises to the level required

7   under 3142 to revisit the detention of the Defendant, that they

8   would bring those to the Court's attention, because we all share

9   the concern that the safety of the community is at all times

10  paramount.  The United States takes that very seriously.

11          So having said all of that, I don't have additional

12  facts to offer other than what has been made known today by

13  Pretrial.  My view on the modifications offered is that the Court

14  is well within its authority under 3142 to modify at any time the

15  conditions of release.

16          I think that the Court should go through the 3142(g)

17  factors, keeping in mind these new facts, as are known, and

18  whether that changes the analysis in the Court's view that

19  additional conditions or combination of conditions are required

20  to assure the safety of the community -- reasonably assure the

21  safety of the community or any other person.  But, of course,

22  doing so, the Court must keep in mind the central premise that

23  the Court is to adopt the least restrictive means necessary to

24  achieve that objective.

25          So with that, I don't have a position on the

1  modifications that are being proposed.  I think that they're fair

2  in light of what Pretrial has put forward.  But at the same time,

3  the United States, given the information involved, doesn't have a

4  further position on that.

5      THE COURT:  All right.  So neither supporting nor

6  opposing, just a no position as to the particular conditions that

7  they seek modification on?

8      MS. PREWITT:  That's correct.  Your Honor.

9      THE COURT:  Thank you.  And let me echo a few things

10 that you said in agreement with a little bit of elaboration.  One

11 is that there is a presumption of innocence for Ms. Tanaka, and

12 there's also a starting point of release, liberty being the

13 starting point for the conversation, not detention.  There are

14 certain charges and circumstances under the Bail Reform Act where

15 there is a rebuttable presumption of detention.  That's not the

16 situation that we are in procedurally here today.  And as to

17 release conditions, it is the least restrictive combination of

18 conditions.  That's what the statute requires the Court to

19 impose.

20     So in considering a modification, my statutory

21 obligation is to, if I'm making any modification, to impose

22 conditions that are the least restrictive combination of

23 conditions that would assure the appearance of the Defendant and

24 the safety of the community.  So those are the concerns of the

25 Court statutorily.  All right.  Anything further you would like

1   me to consider?

2           MS. PREWITT:  Nothing further, Your Honor.

3           THE COURT:  All right.  I may come back to you after

4   hearing from the Defense.  I'll give you an opportunity if you

5   wish to reply to what they say.

6           MS. PREWITT:  Thank you, Your Honor.

7           THE COURT:  All right.  Thank you for waiting.

8           MR. MERMELSTEIN:  Thank you, Your Honor.  May we be

9   heard at sidebar?  I think that would be helpful to frame the

10  next section of this.

11          THE COURT:  Sidebar, including Government counsel in

12  the conversation?

13          MR. MERMELSTEIN:  Yes, of course.  Of course.

14          THE COURT:  Yes.  Let me check with my deputies as to

15  technologically, how they want to do that.  Give me one moment

16  while we --

17      (Portion of record sealed from 10:51 a.m. to 11:05 a.m., not

18  transcribed)

19      (In open court at 11:43 a.m.)

20          THE CLERK:  All rise.

21          THE COURT:  All right.  Please be seated.  Thank you

22  for your patience as we weigh these important constitutional

23  issues.  Ms. Prewitt?

24          MS. PREWITT:  Your Honor, I apologize.  If I could

25  address a matter that we talked about a little bit earlier.  I

1  just want to make the record a little bit fuller on one point.

2      THE COURT:  Go ahead.

3      MS. PREWITT:  I was asked earlier in this proceeding

4  whether I was aware of any victims who wanted to address this

5  court, and I stated no, that I was not aware, which is, in fact,

6  true.  However, I have been made aware at this point in time that

7  the District Judge who has rights under the Crime Victims' Act

8  statute was not notified of today's proceeding by my colleagues

9  in the District of Arizona in which he is the victim of their

10  investigation.

11      I've requested whether he would like me to request a

12  continuance of this hearing so that he can be notified of his

13  rights and decide whether he wants to speak.  And he said no, but

14  he did want it to be known that the District of Arizona, he

15  feels, has not provided him with sufficient information in order

16  to be able to artfully address this Court.  I will address that

17  with my colleagues, Your Honor, after this hearing.

18      THE COURT:  All right.  Thank you for that.  Under the

19  statute, 18 U.S.C., Section 3771, the Department of Justice has

20  duties of its own to implement and has regulations to enforce the

21  Crime Victims' Rights Act.  But the Court, too, is directed to

22  provide the rights afforded under the act to crime victims, and

23  it's my duty to make sure those rights are being enforced.

24      So what I'm thinking about, in reaction what you're

25  saying is what steps I should take right now, if any, to protect

1  the victim's interests.  And those include taking a further

2  continuance for a period of time just right now to make sure that

3  there has been a full opportunity.  As you're communicating,

4  there has not been sufficient opportunity to communicate before

5  the hearing.  A further continuance now could permit further

6  communication about that and opportunity to participate in this

7  proceeding today.

8         One of the rights is the right to be protected.

9  Another is to the right not to be excluded from any public court

10 proceeding.  And if what you're saying is that this is

11 effectively precluding the crime victim from the proceedings, I

12 want to cure that.  And if a further continuance would allow

13 participation, I'm open to that or some other alternative that

14 you would suggest.

15        MS. PREWITT:  One alternative that I would suggest is

16 given the nature of the fact that I am from one office appearing

17 on this criminal case, and there is a separate office of the U.S.

18 Attorneys who are running this investigation, I'm not aware of

19 their investigation, given this common law privilege, and I am

20 trying to respect that.  I am not sure if there are other victims

21 that -- other than this District Judge that I've been made aware

22 of that they may need to notify.

23        So I think it would be prudent for at least some small

24 period of time to allow me to contact the District of Arizona and

25 make sure that all victims that they have identified have been

1    notified of today's hearing.  And to the extent those individuals

2    have been, I can then further advise the Court whether those

3    individuals want to exercise their rights or not.

4            THE COURT:  All right.  Thank you.  Let me get the

5    Defense perspective on this.  I know it's not maybe something

6    that you're anticipating, but I'll hear -- you're along for the

7    ride here.

8            MR. MERMELSTEIN:  Thank you, Your Honor.  With respect

9    to -- I can't speak to -- I can't speak to any communications

10   with Judge XXXXXXXXX, but with respect to the other alleged

11   victim, an assistant U.S. Attorney, I can say that by virtue of

12   my communications with his office and them, he would be aware of

13   it.  I've made discovery requests to that office in anticipation

14   in advance of this hearing, and I've made a request with respect

15   to their position on sealing.  And so he is aware of this

16   hearing.

17           THE COURT:  All right.  Thank you.  The Crime Victims'

18   Rights Act dovetails with the issue of closing any part of the

19   proceedings, because if there is a motion that you continue to

20   make to close the proceedings and to have under seal proceedings,

21   that would be as to the public and the press, but also as to

22   crime victims, and there are ways to address that.

23           But one of the concerns would be if there was a crime

24   victim who wanted to participate in the proceedings and to speak

25   to the proceedings, if the hearing were under seal and they were

1    not listening in, not able to participate in it, their rights

2    might be abused.  And we have a little better opportunity to

3    address that before we continue the hearing than after the

4    hearing.  There's things we could do, but there's also mandamus

5    relief available to a victim if the rights are not afforded.  So

6    better to measure twice and cut once than the other way around.

7            MS. PREWITT:  Your Honor, I would just also add that

8    knowledge that a hearing is going forward does not equate to

9    knowledge of the rights of a victim at that hearing.  And so,

10   again, I do think it would be prudent to afford me just a little

11   bit of time.  I'm not asking for much --

12           THE COURT:  Yeah.

13           MS. PREWITT:  -- to confirm with Arizona, and then I

14   can be prepared to tell the Court whether we can go forward or

15   not.

16           THE COURT:  Yeah.  How much time would you suggest?

17           MS. PREWITT:  I think 30 minutes should do the trick

18   for me to be able to get on the phone with appropriate folks in

19   Arizona and then readdress this Court at that time with what the

20   next steps are that the United States would propose.

21           THE COURT:  All right.  And as to Judge XXXXXXXXX, is

22   there anything further that you would suggest that we do now?

23   Are you going to confer on that also, in the interim?

24           MS. PREWITT:  I'm going to speak to my colleagues in

25   the district of Arizona as to the concerns that were raised to me

1    today in that regard and allow them the opportunity to address

2    those.

3              THE COURT:  All right.  I am going to grant -- let's

4    take a 40-minutes recess, but I have some further homework to do

5    during that time period.

6              As to the request to seal the courtroom and have an

7    under seal proceeding, I will ask for a motion to be made in

8    court and arguments to be made in favor of it.  And I'll provide

9    members of the press, if they wish to object, to make objections

10   at that time.

11             So I'm not going to do that now because I want any

12   crime victims to be able to participate in that proceeding as

13   well.  We'll move that conversation back to 12:30.  But I wanted

14   to give the Defense an opportunity -- and the Government to

15   prepare for our conversation about sealing to be done here in

16   open court.

17             MR. MERMELSTEIN:  Just clarification.

18             THE COURT:  Yeah.

19             MR. MERMELSTEIN:  Is that an oral motion or a written

20   motion, Your Honor?

21             THE COURT:  I am going to entertain an oral motion.  If

22   you want to file something, you heard an argument made that there

23   needs to be a written motion, I'm going to give you an

24   opportunity to articulate your request here in court and to give

25   them a chance to respond.

1          MR. MERMELSTEIN:  Thank you.

2          THE COURT:  All right.  So thanks all for your patience

3   and for the public for bearing with us as we balance these

4   important constitutional interests.  We'll resume at 12:30 here

5   in the courtroom.  And in the interim, the Government will

6   provide notice and an opportunity to confer with the crime

7   victims. And then we'll have a conversation about whether the

8   further proceedings should be sealed in whole or in part on the

9   record.  See at 12:30.  Thank you very much.

10         MS. PREWITT:  Thank you, Your Honor.

11         MR. MERMELSTEIN:  Thank you, Your Honor.

12         THE CLERK:  All rise.

13      (Recess taken from 11:52 a.m. to 12:33 p.m. )

14         THE CLERK:  All rise.

15         THE COURT:  All right.  We return.  Thank you for your

16   patience.  Please be seated.

17         All right.  Ms. Tanaka and her counsel are present, and

18   Ms. Prewitt is present for the United States.  We're back on the

19   record and continuing our recording.

20         All right.  Starting on the topic of the Crime Victims'

21   Rights Act, and the notice to crime victims and opportunity for

22   them to participate in the proceedings.  Ms. Prewitt, what

23   further information do you have?

24         MS. PREWITT:  The District of Arizona has identified

25   two potential crime victims. I'm informed that at this moment,

1  both of those crime victims are aware of this hearing and the

2  right to speak at it and do not wish to exercise that right at

3  this time.

4          THE COURT:  And they have rights beyond speaking.  If

5  they wanted to communicate through you, to have you articulate

6  their position, that's a right they also have.  They also could

7  have their own attorney present information to the Court.  They

8  could present information in writing.  So beyond speaking, and I

9  acknowledge I hear you, that they don't wish to speak, do they

10 wish to present information through some other method?

11         MS. PREWITT:  They do not wish to present any other

12 information that I'm aware of through any other method.  And I

13 would also just put an emphasis on potential victims because

14 there have been no crimes or charges that have been sought.

15         THE COURT:  The statute, 3771(e)(1) is what -- excuse

16 me, (e)(2) defines crime victim, which means a person directly

17 and proximately harmed as a result of the commission of a federal

18 offense.  That's the applicable provision.  And there could be

19 several reasons that the persons you're consulting with don't

20 qualify.

21         On the other hand, it's the Court's view that I should

22 err on the side of inclusion, especially when it comes to notice

23 and an opportunity to participate.  And I am acting under the

24 premise of inclusion, which is no harm in allowing notification

25 and participation.  That's not an error.  The only error can come

1    from excluding the victim from the proceedings.

2            So without getting into a debate about whether they

3    count or not, I am considering that they are. Your Honor

4            MS. PREWITT:  Thank you, Your Honor.  I appreciate that

5    clarification.  And in an abundance of caution, the Government

6    believes it has complied with making the notifications and has

7    conveyed the views of the victims today.

8            THE COURT:  All right.  Good, Thank you very much.  And

9    that's a continuing duty, which I remind you of.  The requirement

10   is that the DOJ employees make their best efforts to see that

11   crime victims are notified of and accorded the rights described

12   in the Crime Victims' Rights act.  So that's a continuing

13   obligation.  And thank you for that additional inquiry.

14           So, relatedly, we took a break to allow for that.  Is

15   there any request to provide for additional notice and

16   opportunity to confer or are you ready to proceed on the

17   Government's side?

18           MS. PREWITT:  I'm ready to proceed.

19           THE COURT:  All right.  Thank you.  Then let's turn to

20   the next topic of the First Amendment and the suggestion that

21   some provision -- some portion of the proceedings would be

22   sealed.  And let me go over to the Defense to articulate the

23   basis for sealing.  And I have, with Mr. Black's oral motion in

24   court, thank you for that, reviewed the seminal cases, including

25   Oregonian v. District Court, 9th Circuit case from 1990, 920 F.2d

1   at 1462, 1465.  Press-Enterprise v. Superior Court, a Supreme

2   Court case, 478 U.S. 1 at 8 and 9 from 1986.  And the Biagon

3   case.  U.S. v. Biagon, B-I-A-G-O-N, 510 F.3d 844 from 2007.

4   Justice Thomas issuing the decision in that one.  Circuit Judge

5   Thomas.  And those cases together demonstrate that there's both a

6   procedural component and a substantive component.

7        The procedural component of sealing in a criminal

8   proceeding being a reasonable opportunity for the press and

9   public to state an objection to any sealing.  And if there is to

10  be sealing, the reasons to be articulated and discussed as to the

11  interests, the purpose, the reasons for any closure.  And then

12  there has to be both a compelling interest that in the absence of

13  closure, the interest identified will be harmed and no

14  alternative to closure.

15       So those are the concerns of the Court.  And we're

16  going to start with the motion and then I'll give an opportunity

17  to respond.

18       MR. MERMELSTEIN:  Thank you, Your Honor.  I think under

19  the factors the Court has articulated the -- first of all, on the

20  timing, and this is proceeding by way of oral motion as opposed

21  to a written motion, because this entire process was extremely

22  truncated.  It was only a week ago that we received notice of

23  this hearing.  And it was just, I think, on Wednesday that I

24  learned the identity of the Prosecutor involved.

25       And so prior to that, I had reached out to the U.S.

1   Attorney's office to ascertain their position on a motion to seal

2   and was basically told I need to speak to the Prosecutor

3   involved.  The Prosecutor involved, because there were a series

4   of recusals at the U.S. Attorney's Office, and there was a

5   question as to whether it was going to be Arizona or San Diego.

6   It was only just on Wednesday that I learned the identity of the

7   Prosecutor and learnt shortly thereafter the Prosecutor's

8   position with respect to this hearing.

9         And so it was only at that point that I could A) get

10  the position of the Prosecutor and formulate what evidence I

11  would need to present there.  So that's the reason for the lack

12  of a written motion, but we do have an oral motion today.

13        In terms of the substantive, the principal concern, the

14  principal compelling interest, Your Honor, is witness safety.  We

15  have witnesses that -- a witness that-- whose testimony, I would

16  proffer, as well as certain other evidence that if that evidence

17  became known publicly, I believe there would be a substantial

18  concern to the safety of a number of witnesses and potentially

19  other individuals involved in the case.

20        The request is not to seal the entire proceeding.  The

21  request is to seal only a proffer of defense evidence.  So it's a

22  very short duration.  The expectation would be that at the

23  conclusion of the proffer, the hearing would be opened back up

24  and the remainder of the hearing, the argument, the application

25  of the various factors, all of that would be in open court.  I

1    believe we can do that.  And to the extent we need to refer to

2    matters that have been -- the Court has been apprised of under

3    seal, I believe, we can do that.

4            In my view, then we have a compelling interest, and the

5    request is narrowly tailored to achieve that interest.  But I do

6    believe that there is information that the Court does need to be

7    apprised of in order to fairly evaluate Ms. Tanaka's

8    dangerousness.

9            THE COURT:  As to the --

10           MR. MERMELSTEIN:  Thank you.

11           THE COURT:  -- as to the very last element of the --

12   the requirement that there be no alternative to closure that

13   would adequately protect the compelling interest is an

14   alternative to closure, to proceed by proffer and to proffer in

15   such a way that would protect witness identity and otherwise take

16   steps to protect the witness, but while doing so in open court.

17           MR. MERMELSTEIN:  I believe --

18           THE COURT:  I'm sorry witness or witnesses.  I'm not --

19           MR. MERMELSTEIN:  I believe that even -- and I

20   appreciate the Court's willingness to proceed by way of proffer

21   as opposed to substantive evidence.  But I believe that even the

22   proffer itself, in order to be a fulsome proffer for the Court to

23   understand things, I believe the proffer itself should

24   appropriately be under seal.

25           THE COURT:  All right.  Thank you.  Ms. Prewitt, I'll

1    give you a chance to address those considerations.

2            MS. PREWITT:  Thank you, Your Honor.  First of all, to

3    just kind of clarify a portion of the record that was stated

4    today, I only learned this morning of the information that was

5    going to be sought to be proffered by the Defense to the Court

6    today.  And so I just share that because I think we're kind of

7    all acting on kind of a speed as a result of all of this.

8            Having said that, it occurs to me that much, with some

9    reflection of what was proffered this morning, could be

10   appropriately protected by redacting the names or identities of

11   those involved.  Of course, I've received a proffer of the

12   information, and so, you know, perhaps I'm mistaken in that, but

13   I think that that would be, you know, perhaps a prudent way for

14   the Court to go forward, keeping in mind the factors at issue.

15           I would just say with respect to one piece of

16   information that was proffered this morning, with respect to one

17   of the victims in this case, I would lodge an objection to that

18   even being brought out today, because I don't remotely understand

19   how it is relevant to today's proceeding and the court's inquiry

20   as to whether or not bond modification is appropriate.

21           THE COURT:  Thank you.  If Mr. Black is there or one of

22   his colleagues to respond, I'll give you an opportunity.

23           MR. BLACK:  Good afternoon, Your Honor.

24           THE COURT:  Good afternoon.  And there may be others

25   who have thoughts as well, but I just wanted to -- I think the

1   Court is focused on what, in the end, is the right question,

2   which is narrow alternatives.  The witness safety certainly could

3   be a compelling reason in the right circumstances.  One of the

4   cases that I mentioned this morning that I think addresses

5   questions of safety is Phoenix Newspapers.  And if the Court

6   needed a citation for that, I could pull it up.

7           THE COURT:  I have it with me.

8           MR. BLACK:  Okay.  But, you know, that case, it

9   addressed not witnesses but jurors and the questions of what

10  other things could be done.  To the extent that redaction or

11  releasing transcripts at a later time or anything like that is

12  available as an alternative to sealing, we would ask for that to

13  take place.

14          THE COURT:  You mentioned one -- I just wanted to

15  address that last issue, which is one dynamic of sealing or

16  sealing the courtroom is the duration of it.  Is it sealed for

17  what period of time?  And a number of 9th circuit cases speak to

18  that, that even something sealed is not presumptively sealed

19  forever in a criminal proceeding.  It should be for a period of

20  time when the danger, the threat, the prejudice has passed.  And

21  when it comes to witness safety or juror safety or safety -- it

22  may be that that will eclipse at some point in the future, and

23  that's a way to balance the interests.

24          MR. BLACK:  Yes.

25          THE COURT:  All right.  Thank you.  And anything else

1    you'd like me to consider?

2          MR. BLACK:  No, Your Honor.

3          THE COURT:  All right.  Thank you very much for your

4    thoughtful bring up of issues.  Were there others who wanted to

5    speak?  Yes, sir.

6          MR. BOYLAN:  Good afternoon, Your Honor.  Peter Boylan

7    with the Honolulu Star Advertiser on behalf of Wahoo

8    Publications, Incorporated.  I do not have a legal degree, nor do

9    I have a legal argument.

10          THE COURT:  You're not required to be in the courtroom.

11    But if you could just say your name again slowly, it help us

12    make --

13          MR. BOYLAN:  I'm sorry.  Peter Boylan, P-E-T-E-R B-O-Y-

14    L-A-N.

15          THE COURT:  Thank you.

16          MR. BOYLAN:  This is one of the largest public

17    corruption cases in our State's history, and the public has an

18    extreme right to know that elected officials -- we're dealing

19    with the intersection between money, politics, campaign

20    donations, and pay-to-play allegations.  And everyone just

21    watched on T.V. last night that a federal prosecutor and a

22    federal judge may have been contracted to be killed by an ex-con.

23    And sealing any aspect of this proceeding does a great disservice

24    to the public because they need to understand that criminals

25    exist at every single level, not just at the street -- not just

1  some street dealer who works a corner, but the City Prosecutor.

2  In this case, allegations have been made, and we should be able

3  to hear all of them.  And we would lodge an objection on behalf

4  of the company, and we will be consulting our attorney to see how

5  we may intervene in the case.  That's all.

6        THE COURT:  All right.  Thank you.  And as to

7  intervention, I've allowed you to speak today and your

8  colleagues, and we'll continue to without a formal motion for

9  intervention.  So there are certain circumstances where the Court

10 has required a motion for intervention before even allowing

11 someone to come up and speak, and I'm not requiring that.  I'll

12 consider your arguments here today.  I'm not precluding you and

13 your attorneys from filing a motion in the future.  This will not

14 be the last hearing in the case, but I'm considering what you're

15 saying right now, and I thank you --

16        MR. BOYLAN:  Awesome.

17        THE COURT:  -- for having spoken, sir.

18        MR. BOYLAN:  Thank you, Your Honor.  I appreciate it.

19        THE COURT:  Thank you.  Anyone else?  Come on up.  This

20 is Ms. Kelleher.

21        MS. KELLEHER:  Yes. From the Associated Press.

22        THE COURT:  Thank you, Kelleher.

23        MS. KELLEHER:  So I just wanted to thank you for the

24 opportunity to consult with our legal counsel, who advised me

25 that I should stress to the court the importance of making any --

1   making findings on the record as to why there is a strong,

2   compelling interest to close a proceeding and that there's a high

3   bar for that.  And as the Associated Press, we represent media

4   all over the world, and there is a strong public interest in this

5   proceeding.  And that I just wanted to stress to the Court that

6   you look toward whatever is the least restrictive avenue in terms

7   of maintaining the witness safety that has been vaguely mentioned

8   without any -- with, you know, as a member of the press, I don't,

9   like, what this -- I don't have more details about what the

10  witness safety issues are.  So I'm hoping that you will find the

11  least restrictive way of achieving that in order to allow the

12  hearing to proceed in the most public way possible.

13          THE COURT:  Thank you very much.

14          MS. KELLERHER:  Thank you.

15          THE COURT:  Anyone else?

16          MS. KAWANO:  Aloha, Judge.  I'm Lynn Kawano.  I work

17  with Hawaii News Now, now here in Honolulu.

18          THE COURT:  Thank you.

19          MS. KAWANO:  Thank you for allowing us to speak.  I did

20  consult with our attorneys, and I just -- I kind of want to echo

21  with what they said on the restrictions.  You know, if we can

22  limit this to the very minimal amount of restrictions.  This case

23  has huge implications for the public, for our viewers, for

24  taxpayers.  This is part of what we call the public corruption

25  scandal.  The Defendants -- there are many public figures

1  involved in this, entangled in this web, and we would ask that

2  for the public's sake, we get as much information as possible.

3  And really, if we could limit the scope of this to the minimum

4  amount.  If it's safety issue, I understand that is one of the

5  reasons to close this, but if we could limit it to just that.

6  And if we could get on the record the details of what the reasons

7  to close this subject is very important to our attorneys.

8           THE COURT:  Yeah.  Thank you very much.

9           MS. KAWANO:  Thanks a lot.

10          THE COURT:  Yes, ma'am.

11          MS. JEDRA:  Good afternoon, Your Honor.

12          THE COURT:  Good afternoon.

13          MS. JEDRA:  I'm Christina Jedra with Honolulu Civil

14  Beat, last name J-E-D-R-A.  I would just concur with my media

15  colleagues and Mr. Black.  I do feel it's very important for the

16  public to hear what kind of alleged danger Ms. Tanaka presents to

17  the community.  And again, I repeat what was said previously, and

18  thank you for your consideration.

19          THE COURT:  Thank you very much.  Anyone else?

20          All right.  Thank you.  I think everyone who wished to

21  speak as to the First Amendment issues on the motion to seal has

22  been heard.  I want to get the Defense response to one argument

23  that Ms. Prewitt made, and she may not have used this word, but

24  it was an objection to the relevance of one of the issues that

25  the Defense proffered as to one witness relevance, and it's tied

1    in with the sealing or not.  But I want to give you a chance,

2    without divulging anything about it, to address it.

3                MR. MERMELSTEIN:  I think that portion can be excluded

4    from the testimony and removed from any corroborating evidence.

5                THE COURT:  All right.  Thank you.

6                All right.  This will be the ruling on the motion to

7    partially seal.  It's not a motion to seal the entire

8    proceedings.  It's a motion to seal the proffer portion of the

9    Defense response to Pretrial's request to modify the conditions

10    of pretrial supervision.

11                Procedurally, and I very much appreciate the members of

12    the public and the press who have been here to voice their and

13    advocate their views about the importance of their participation,

14    because I agree wholeheartedly.  This is a matter of public

15    concern.  Every case, even cases not of this interest, are

16    matters of public concern, and we don't have members of the press

17    and public who come to all proceedings.  And we want there to be

18    sunshine on the work of the federal courts and an opportunity to

19    both observe and report out what occurs.

20                This case, I know, has attracted attention and will

21    continue to do so in the future.  And I appreciate the input to

22    help us do the right thing here in weighing the different

23    interests, with one of them being the First Amendment and the

24    very important right of the press and the public to participate

25    in the proceedings.

1    Procedurally now, there has been an opportunity to

2  object to the motion, and I've heard and considered the

3  objections raised, and it informs what I'm going to be doing in

4  response to it.

5    Substantively, the compelling interest stated is

6  witness safety, and I agree that that is a compelling interest to

7  limit what is said in open court.  Now, there are some other

8  interests at play.  One of them is a fair trial for Ms. Tanaka

9  and her co-Defendants.  They're about to go to trial after a

10  continuance and the public and the Defendants in the case have an

11  interest, a compelling and important interest in having a fair

12  trial.  And there could be a collision between what occurs here

13  and how it occurs, and that trial being fair in the sense of

14  jurors could be influenced, and Judge Burgess is going to have to

15  make that part of his fair trial process.

16    But it's not his duty alone.  It's something I'm also

17  being mindful of as to how to be fair to Ms. Tanaka and her co-

18  Defendants.  And there has been a lot of publicity about this

19  case, but I want to reiterate that Ms. Tanaka and her co-

20  Defendants have been charged.  A charge is not evidence.  They've

21  not been convicted, and they've not been sentenced.

22    And what I'm doing here today should not be construed

23  as convicting them in the court of public opinion or from the

24  Court's perspective or punishing them.  This is a proceeding

25  limited to the topic of pretrial release and the terms of

1  supervision or detention.  That's the limits of what I'm working

2  on today.

3           I don't find the Defense has met the last element of

4  showing that there's no alternative to closing the courtroom.  So

5  it's for that reason I'm going to deny the motion to seal and to

6  close the courtroom.  In the alternative, the closure is to

7  proceed by proffer and to proceed by proffer, by redacting out

8  the names of the witnesses who might be jeopardized.  And I'll

9  give you a moment to think about how you want to do that, because

10 I acknowledge that time has been short to prepare for this

11 hearing and your approach as to how you might go about it,  may

12 depend in part on whether it's done publicly or confidentially.

13          But in balancing the rights to fair trial and witness

14 safety against the First Amendment, I am going to have this

15 further proceedings be done here publicly and not under seal.

16 But I'm going to grant permission to redact and not say the names

17 of witnesses who might be endangered by your proffer or by the

18 testimony of any witness.

19          And I'm not restricting you from calling witnesses if

20 you wish to, if that's necessary to defend against the concerns

21 raised by Pretrial Services.  I'm not requiring, I'm not telling

22 you what evidence and proffer you should make or not.  It's a

23 strategic decision for you to make under the circumstances.  But

24 as to the format of the presentation, I'm going to require it to

25 be here in open court, allowing you to proceed by proffer and/or

1   redact witness names.

2           I'm sustaining the Government's objection to the

3   relevance of one piece of evidence, and if you start to touch on

4   that, I'll hear Ms. Prewitt's further objection and invite it in

5   the basis that is relevance.

6           All right.  That's the ruling on the motion to seal and

7   the articulation of the balancing of interests and the reasons

8   for it.

9           All right.  Would the Defense like to take a momentary

10  break to think about how you want to proceed or are you ready to

11  proceed?

12          MR. MERMELSTEIN:  Just one point of clarification, Your

13  Honor.

14          THE COURT:  yeah.

15          MR. MERMELSTEIN:  I understand the Court's ruling

16  generally, but could we offer an exhibit under seal?

17          MS. PREWITT:  Your Honor, if I may just propose,

18  perhaps the more prudent way forward would be to examine that in

19  camera and determine whether it hits on any of the concerns that

20  have been raised by the Defense today, and, if so, whether those

21  concerns can be mitigated by redaction or whether sealing of that

22  particular document would be warranted.

23          THE COURT:  What I'm thinking about is the timing of

24  all these events and the stated objection.  I'm anticipating that

25  the reporters in attendance would like to see the exhibit that's

1   being referenced.  I'm seeing heads nodding and evaluate the

2   timing of when I might look at that and give them an opportunity

3   to object to any sealing.

4          So I think what I'm going to do is proceed with the

5   hearing now and allow the Defense to -- if there's an exhibit

6   that you want to reference, to proffer what the exhibit shows and

7   to do it in a way that protects witness safety and to make it

8   your choice.  If it's something you want to move into -- you

9   know, move into the record publicly, of course, I'll consider

10  that.

11         If there's a document that you don't want to present in

12  that format, I will give you a written opportunity to file a

13  motion to submit it under seal and give the Government a chance

14  to respond and reporters to object and to have their lawyers

15  participate in objecting, and we'll do the proceeding in a second

16  phase.

17         But I do want Mr. Tanaka to have some clarity here,

18  leaving the Court as to whether there's a modification of

19  supervision and the public to know the reasons for it and, also,

20  not to have any delays in the proceeding that would come from

21  dragging us out any further.  I hope that's responsive to your

22  question.

23         MR. MERMELSTEIN:  It is, Your Honor.  And if I could

24  have maybe five minutes to consult.

25         THE COURT:  Yeah, you got it.  We'll take a five minute

1   recess.  Thank you.

2        (Recess taken between 1:01 p.m. and 1:12 p.m.)

3            THE COURT:  Please be seated as we continue.  All

4   right.  Is the Defense prepared?

5            MR. MERMELSTEIN:  Yes, Your Honor.  Thank you.

6            THE COURT:  All right.  You may proceed.

7            MR. MERMELSTEIN:  Thank you, Your Honor.  At this

8   point, we would proffer the testimony of witnesses that would

9   make clear that Ms. Tanaka was the victim of extortion.

10  Witnesses would testify in great detail.  Threats were made to

11  the safety of Miss Tanaka and her family, that she believed her

12  life was in danger, that she believed certain individuals sought

13  to harm her and her family.

14           The extortionists had specific information about the

15  location and movements of her family.  We would also proffer

16  corroborating evidence in this regard.

17           Due to the circumstances of this Court's ruling that

18  will not be under seal, we are fearful that public testimony

19  would expose these individuals to harm from the extortionists.

20  Thank you.

21           THE COURT:  All right.  Thank you.  And are there any

22  witnesses you wish to call or exhibits which you wish me to

23  consider?

24           MR. MERMELSTEIN:  Not at this time, Your Honor.

25           THE COURT:  All right.  Thank you.  And Ms. Prewitt,

1    would you like to respond to that or provide any additional

2    information on the prosecution side?

3           MS. PREWITT:  I don't have any information to proffer

4    responding to that, other than to reiterate that these

5    allegations all relate to a District of Arizona investigation

6    that is not -- neither being handled by my office nor part of the

7    case that we're here on today.

8           Again, I understand why Pretrial brought these

9    allegations to the attention of the Court, but I just wanted to

10   acknowledge the kind of strange posture that we find ourselves

11   in, given, of course, the common law privilege that is afforded

12   to investigations of this sort.

13          THE COURT:  Yeah.  All right.  Thank you.  And back

14   over to the Defense.  As to the implications of the proffer

15   you've made and what Pretrial has recommended, what's your

16   position as to the five modifications that they are seeking and

17   the one deletion?  Is it -- what should I do balancing the facts

18   that you've proffered and the concerns that they've raised?

19          MR. MERMELSTEIN:  Your Honor, at this point, I do not

20   believe that the Government has made or Probation has made any

21   showing whatsoever with respect to the matter at issue today is

22   an allegation that Ms. Tanaka is dangerous and that, based on

23   that, that her bail condition should be modified.

24          This is a situation where two years ago we were in --

25   I'm one of the few who was around from the onset of this.  Two

1  years ago, we were in the Central District of California.  The

2  Government -- Ms. Tanaka was arrested.  The Government sought

3  detention, and we had a bail hearing in front of magistrate Judge

4  Eick, E-I-C-K, Judge Eick set terms that were reasonably -- that

5  were appropriate under the circumstances, a $50,000 unsecured

6  bond.

7          Then we came to Hawaii.  We had our initial appearance

8  in front of Judge Porter.  Judge Porter confirmed those same bond

9  conditions.  Since that time roughly two years, Ms. Tanaka has

10 made all her court appearances.  She has done essentially as

11 someone on bail.  She's met all of the conditions which brings us

12 here today.

13         I believe that under the law, the Government needs to

14 show some -- bring forward changed circumstances, bring forward

15 some material information that would cause this Court to revisit

16 those -- the prior finding of a lack of dangerousness and the

17 prior finding that the bail conditions that had been imposed

18 previously are somehow no longer sufficiently restrictive.  And I

19 do not believe that burden has been met.

20         There is, theoretically, some information out there.

21 But as I see it, the Government has made an election not to bring

22 forward any evidence here today.  All that has been proffered is

23 a search warrant and the suggestion that the search warrant

24 itself is evidence of Ms. Tanaka's dangerousness.

25         Well, there's a difference, as Your Honor is well

1    aware, between the face sheet of a warrant and the affidavit in

2    support of the warrant.  The face sheet of the warrant doesn't

3    say anything about Ms. Tanaka's dangerousness.  All it suggests

4    is that at some other time, a judge determined that there was

5    sufficient evidence to justify a search at a particular location.

6    Well, that's not evidence of Ms. Tanaka's dangerousness.

7           Theoretically, the Government could have brought

8    forward an affidavit in support of a search warrant.  The

9    Government could have brought forward some information as to what

10   the Marshal Service indicated to Probation to start -- to

11   generate today's proceeding.  Or the Government could have

12   brought forward some fruits of the search.

13          It appears that the Government has made a choice, as is

14   their prerogative -- and let me just back up and say these are

15   very serious allegations, and I don't treat that lightly at all.

16   These are extremely serious potential allegations.  Actually, to

17   quote my colleague.  The Government has made a choice, and that

18   choice was to not bring forward evidence here today.

19          But having made that choice and to not bring forward

20   that evidence here today, then there is nothing in the record

21   here to support a finding of Miss Tanaka's dangerousness.  And

22   that is the Government's choice.  We heard my colleague said that

23   if Arizona had felt like there was information sufficient to

24   detain, then that would have been released.  So that's not before

25   us here today, presuming the Government, in fact, takes no

1    position on this at all.

2              And so, to me, based on the record before us here

3    today, there is no -- the Government has not made a showing of

4    any type of -- any type of dangerousness.  By contrast, any

5    questions, I think, about Ms. Tanaka's behavior that generated

6    some of the developments in the last month that have affected us

7    all.  I think those behaviors are explained by the Defense

8    proffer of evidence.

9              And so not only has there been no showing on the

10   Government's part, but there has been a showing on the Defense

11   part of a lack of dangerousness.  So based on that, I would

12   submit, Your Honor, that there is no increased dangerousness.

13   The least restrictive restrictions on -- the least restrictive

14   bail conditions are those that are imposed and have been already

15   imposed and have been adhered to for the last two years.

16             The one point on the reporting of a law enforcement

17   contact, I'm not even sure this is a law enforcement contact.  It

18   probably is, but I can -- I will submit to the Court that I will

19   take ownership of this one.  Immediately after that search

20   warrant was executed, I reviewed Ms. Tanaka's bail conditions

21   personally, and there is no requirement on there that law

22   enforcement contacts be reported.  Based on that, I did not

23   advise Ms. Tanaka that her bail conditions required reporting.

24   And I believe probation agrees with that read.

25             I understand that there is now some other document

1   there that was signed.  I take  Probation at their word.  I

2   haven't seen that document, but I assume there's some document

3   out there that says that she signed indicating that she should

4   report a law enforcement contact.  I understand that that

5   reporting -- I've come to understand that that reporting is done

6   electronically through a login system, essentially on a monthly

7   basis.  There's a series of questions that are answered.

8          Ms. Tanaka's -- as a result of the January 23 warrant

9   that was executed, Ms. Tanaka's devices were all seized.  That

10  has been the subject of much litigation in this case, and there

11  are consequences to that that are yet to be sorted out.  But as

12  it relates to this issue, the password -- the login information

13  to do that online check-in was actually taken away.  That system

14  -- that has now been rectified in light of this situation.  But I

15  do think that substantially mitigates that technical issue.

16         And on the larger issue, which is what framed the

17  issues today, this concern of dangerousness, on that issue, I do

18  not believe that the Government has met a burden of changed

19  circumstances.  I do think there is some burden of material

20  information that does need to be put on the scale and, frankly,

21  there's nothing there, Your Honor.

22         THE COURT:  All right.  Thank you.  I agree with you,

23  and I did not frame it this way.  At least I did not intend to

24  frame it this way, that the obligation to inform Pretrial of a

25  law enforcement contact, I agree with you that that was not a

1   condition set by the Court for pretrial supervision, and so I did

2   not frame it as an alleged violation of pretrial release order

3   from the Court.  But it is a modification that Pretrial Services

4   is asking for now that it be clarified and it become a court

5   ordered condition.  Do you have any objection to that

6   clarification and requiring in the future a notification of

7   Pretrial Services if there is a law enforcement contact?

8          MR. MERMELSTEIN:  No, Your Honor, other than the

9   threshold issue that I do not believe there's been a showing

10  necessary to modify conditions.  In terms of some of the actual

11  conditions, I would submit, aren't particularly onerous.  That

12  change, for example, as long as it's not premised on some finding

13  of dangerousness, that change, it seems to me, makes some sense

14  and I don't have an issue with that.

15         THE COURT:  Thank you.  Another one that is perhaps in

16  the way of a clarification and may not require any finding of

17  anything is the travel restriction and the mechanism for

18  notification of travel.  Is that one that you have any objection

19  to?

20         MR. MERMELSTEIN:  The travel restriction is

21  challenging, Your Honor.  Ms. Tanaka is a practicing attorney,

22  and she does work throughout the Hawaii Islands as well as

23  California.  She does have family in California, and she divides

24  her time between Hawai'i.  And so in order to -- and she has a

25  pending case in Hawaii.  And so imposing additional travel

1  restrictions do become problematic depending on the particular

2  issue that we're dealing with.  I would submit that the issue of

3  travel was negotiated two years ago, and there's been complete

4  compliance with that, and there's been no showing that there

5  should be any further restrictions on travel.

6          THE COURT:  All right.  Thank you.  Anything further

7  you'd like me to consider?

8          MR. MERMELSTEIN:  Not at this time, Your Honor.

9          THE COURT:  All right.  Thank you.  Ms. Prewitt,

10 anything further?

11         MS. PREWITT:  I just want to clarify a couple of things

12 that I think I've already said today, but I just want to make

13 sure that it's clear for the record.  One is that the Government

14 didn't bring a petition today.  It didn't ask for modifications

15 of bond.  It didn't ask for a detention hearing.

16         And so to the extent statements are made about the

17 Government chooses to do this or chooses to do that, the

18 Government is making a decision to protect the public and to

19 protect witnesses and informants, et cetera, in the course of an

20 ongoing investigation.  And in order to do that is constantly

21 examining whether or not there are legal standards that have been

22 met in order to detain the Defendant in this separate case that

23 deals with entirely different allegations.  I'm informed by my

24 colleagues that those standards have not been met.  To the extent

25 they are, it is always paramount in the eyes of the United states

1  that the safety of the community is insured, and they will make

2  that known to the Court immediately.

3         Moreover, I just want to kind of clarify what I think

4  is a conflation of some of the legal elements that the Court must

5  consider here.  I would agree with my colleague that the Court

6  would have to find that there's new information and that it's

7  material to the determination if this was a motion to reopen a

8  detention hearing under 3142(f).  Nobody has asked to do that

9  here.

10        So I think that we're in 3142(c) world in which it

11 states that the judicial officer may, at any time, amend the

12 order to impose additional or different conditions of release.

13 To be clear, I am not suggesting that the Court is not subject to

14 constitutional parameters, that the Court could make an arbitrary

15 and capricious decision to wake up one morning and say, hey,

16 let's impose additional conditions.  There must be some reason to

17 impose additional conditions, and those reasons must be tied to

18 the information in front of the Court.

19        So I think that the question the Court needs to go

20 through this morning is whether or not the 3142(g) factors have

21 changed in light of the information that both Pretrial and the

22 Defense have brought to the Court's attention, and if those

23 factors have changed such that new conditions or a combination of

24 conditions are necessary to ensure both the Defendant's

25 appearance is required and the safety of the community, then that

1   is within the Court's purview and what the Court should do today.

2          And so I just wanted to make that absolutely clear as

3   to the United States' view about the legal obligation of the

4   Court here today, and also to state that I don't believe that

5   Pretrial has asserted nothing.  I think that what they have made

6   the Court aware of is that there is an investigation.  It is a

7   serious investigation.  Search warrants were executed in which

8   presumably federal judges found that there was probable cause to

9   believe that evidence of very serious crimes were found at

10  residences associated with the Defendant or potentially on

11  devices.

12         Now whether that rises to the level of changing the

13  3142(g) factors is within the purview of the Court and within the

14  purview of what is recommended here today by Pretrial.

15         THE COURT:  Thank you very much.  Let me give maybe not

16  the final word, but just one more chance to participate from our

17  Pretrial Probation Officers that have been sitting in on this

18  hearing and have been heard things from both sides.  If they have

19  anything further they'd like to add as to their recommendation.

20         THE PROBATION OFFICER:  Nothing additional, Your Honor.

21  Thank you.

22         THE COURT:  All right.  Thanks very much.

23         All right.  This will be my ruling following the

24  presentation of the information and arguments and thank you all

25  for your patience and participation today.  The concerns raised

1   by Pretrial Probation are very appropriately raised.  They are

2   serious concerns, and I appreciate the opportunity to hear them

3   here in open court.

4          Ultimately, I have to base my decision on what I've

5   heard here in open court.  There may be things being investigated

6   that were not presented here in open court.  There may be things

7   which I am privy to and privy from investigations outside of

8   court, but I'm not going to base my decision on modification of

9   release conditions on something that's confidential and not here

10  in open court.

11         And as Ms. Prewitt referenced, we're not here because

12  the Government filed a motion or sought the detention or to

13  forfeit the bond for Ms. Tanaka.  And they've taken no position

14  as to the recommendation.  And that no position speaks loudly,

15  even though it's not speaking, but it still speaks loudly as to

16  the position that they are taking on the current state of the

17  evidence.  And I'm going to take the same position that they're

18  taking, which is that there's not evidence to support changing

19  any of the conditions of pretrial supervision.

20         It's been referenced and it's in the hearing that

21  there's things under investigation that have not been charged and

22  they may never be charged.  There are things under investigation,

23  but investigation is not sufficient, by itself, to increase the

24  restrictiveness of the conditions of pretrial supervision.

25         So, in conclusion, it's entirely appropriate to bring

1  these matters, very serious matters, to the attention of the

2  court, and to have a hearing on them, and to give the parties and

3  the public an opportunity to hear about them, but without

4  evidence to support some of these concerns, and with the statute

5  requiring the least restrictive combination of conditions to

6  secure the safety of the community and the appearance of the

7  Defendant, and noting that Ms. Tanaka has voluntarily appeared

8  today and has made all of her court appearances, I don't find a

9  basis to modify any of the conditions on the present record.

10         And, of course, if there's a change in circumstances,

11  the Government can bring a motion and Pretrial can present

12  additional information to the Court.  But on the current record,

13  I'm going to continue the current conditions of supervision.

14         It's the smallest and probably least important of them,

15  but the proposed modification to require informing law

16  enforcement I'm not going to change the way that has operated

17  currently.  So I'm not imposing that requirement due to a lack of

18  evidence requiring a change.

19         And, Ms. Tanaka, you're ordered to next appear on

20  Monday before Judge Burgess as previously set.  Let me ask our

21  Pretrial Officers if there are any other supervision

22  administrative things you want to communicate here in court to

23  Ms. Tanaka and her counsel as to communication with you after

24  court today or other things that they need to do to comply.

25         THE PROBATION OFFICER:  Thank you, Your Honor.  I did

1  speak with her on one of the breaks, so there's nothing

2  additional.  Thank you.

3          THE COURT:  All right.  Thank you.  Anything further

4  from Pretrial?

5          THE PROBATION OFFICER:  Nothing, Your Honor.

6          THE COURT:  All right.  Thank you very much.  That

7  concludes the hearing.  Thank you very much.  We're in recess.

8      (Proceedings concluded at 1:34 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: March 3, 2024

_____
Jessica B. Cahill, CER/CET-708