MERRICK B. GARLAND
Attorney General
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Colin.McDonald@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR No. 22-00048-TMB-NC |
|---|---|
| Plaintiff, | UNITED STATES' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 6: TO PRECLUDE AN IMPROPER ADVICE OF COUNSEL DEFENSE |
| v. | |
| KEITH MITSUYOSHI KANESHIRO (1), DENNIS KUNIYUKI MITSUNAGA (2), TERRI ANN OTANI (3), AARON SHUNICHI FUJII (4), CHAD MICHAEL MCDONALD (5), SHERI JEAN TANAKA (6), | |
| Defendants. | |

In their opposition briefs, Defendants make no effort to analyze the advice of counsel elements. That is because they cannot meet them. Even assuming the truth of everything they say in their briefs, their facts would not merit an advice of counsel instruction. They should be prohibited from invoking an advice of counsel

defense—including in opening statement—unless and until all foundational prerequisites are met.

1. At trial, the United States will prove that Defendant Sheri Tanaka was present at MAI on November 10, 2011, the day Laurel Mau was fired. She is on videotape.[1] The tape shows Tanaka, Defendant Terri Otani, and others, banishing Mau from her workplace of fifteen years. "Laurel, just leave now," demands Otani in the video; "we're going to have to ask you to leave at this time," says a stern Tanaka. When not giving commands to Mau, Tanaka is chatty and gleeful. That day was the beginning of MAI's six-year harassment campaign against Mau, which included a false police referral, a false referral to the Hawaii Tax Division, and a malicious prosecution purchased from Keith Kaneshiro. Three years after Mau's firing, Tanaka, Defendant Chad McDonald, and Otani all went to court to watch Mau's arraignment. Then they waited outside the courtroom to snap pictures of Mau as she left—photo proof that MAI had vanquished Mau at last.

The point is that Tanaka is not a disinterested counsel—her "advice," if any, and whatever it was, does not count to earn the defendants an advice-of-counsel instruction. *See United States v. Shewfelt*, 455 F.2d 836, 839 (9th Cir. 1972); *United States v. Carr*, 740 F.2d 339 (5th Cir. 1984); *United States v. Urfer*, 287 F.3d 663, 664 (7th Cir. 2002) ("If unreasonable advice of counsel could automatically excuse criminal behavior, criminals would have a straight and sure

---

[1] For some reason, MAI videorecorded Laurel Mau during her final minutes in the office. The United States has obtained a copy of that recording.

path to immunity."); *United States v. Martorano*, 767 F.2d 63, 66 (3d Cir. 1985) ("defense based on good faith reliance on an attorney's advice requires . . . retention of counsel for advice and not to ensure the success of the fraudulent scheme.").

  2. Defendant McDonald fails to engage with the "advice of counsel" requirements—he does not analyze *any* of the elements. Instead, he points to a single fact in a six-year sea of facts to claim advice of counsel.[2] That fact is not that he consulted a disinterested, unbiased attorney, disclosed all material facts to that attorney, sought guidance as to the legality of a course of action, and strictly followed the attorney's advice. Rather, the sole fact he highlights is that Tanaka wrote his declaration supporting Laurel Mau's felony information and "assured him of its accuracy[.]" ECF No. 516 at 4. Based on that, McDonald claims "he relied upon her advice that it was appropriate to sign it." *Id.*; *but see United States v. Roti,* 484 F.3d 934, 935 (7th Cir. 2007) ("But Roti does not contend that Werth assured him that concealing assets and lying to the court would be lawful.").

  In other words, McDonald appears poised to claim the oldest defense in the book: she did it, not me. He can argue that. He can claim he did not read his declaration or confirm the facts contained in the declaration (which he signed

---

[2] For instance, McDonald overlooks his (and his wife's) donations to Kaneshiro, which were made in obvious batches with other defendants and MAI employees. In sworn testimony, McDonald has denied discussing contributing to Kaneshiro with anyone at MAI. In other words, it was just a coincidence that various MAI-affiliated donors started sending money to Kaneshiro's campaign on similar dates.

3

under penalty of perjury and which was used to strip away Laurel Mau's liberty). But signing a declaration Tanaka wrote is not "advice of counsel"—it is not even legal advice. None of the requirements for advice of counsel are established.

Furthermore, as a factual matter, McDonald testified in the civil trial between Mau and MAI to things contained in his declaration. For example, McDonald's declaration includes the following table purporting to show evidence of Mau's "fraudulent" time sheets:

| YEAR | CONSTN. ADMIN (CA) HOURS ON TIMESHEETS | HR. RATE | TOTAL PD TO LM FOR CA WORK | PER W-2 WAGES REC'D FROM MAI | AVERAGE % ALLOCATED TO CA PER JOB | AVERAGE $ ALLOCATED TO CA PER JOB | MAI DAMAGES |
|---|---|---|---|---|---|---|---|
| 2011 | 1,033 | $35.00/$40.00 | $36,155.00 | $63,992.69 | 20% | $12,798.54 | $23,356.46 |
| 2010 | 1,199 | $35.00 | $41,965.00 | $73,384.78 | 20% | $14,676.96 | $27,288.04 |
| 2009 | 1,117 | $35.00 | $39,095.00 | $73,384.78 | 20% | $14,676.96 | $24,418.04 |
| 2008 | 601 | $35.00 | $21,035.00 | $64,984.56 | 20% | $12,996.91 | $8,038.09 |
| 2007 | 279 | $33.37 | $9,310.23 | $69,246.32 | 20% | $13,849.26 | $(4,539.03) |
| 2006 | 429 | $31.73 | $13,612.17 | $64,535.03 | 20% | $12,907.01 | $705.16 |

TABLE 1: LAUREL MAU'S CONSTRUCTION ADMINISTRATION ("CA") HOURS

$ 75,062.55
1.72 Over Head Rate  $ 129,107.59
Subtotal  $ 204,170.14
10% Profit  $ 20,417.01
Total  $ 224,587.15

As outlined in the United States' Motion *in Limine* No. 2, McDonald's testimony about L.J.M.'s time sheets at the civil trial was almost identical:

```
13   A    We add those together for the total cost.
14   Q    And that would be what?
15   A    $227,018.
16   Q    Okay. But you're not telling the members of the jury they
17        should award for those three years $227,000; is that correct?
18   A    I'm saying that's our claim, our damages claim that Laurel
19        Mau imposed upon Mitsunaga & Associates.
```

4

ECF No. 341 at 6. McDonald's sworn testimony about the "damage" Mau caused MAI, then repurposed in his declaration for Mau's felony information, could not be the result of "advice of counsel"—they are his own words and (false) calculations.[3]

McDonald is invoking "advice of counsel" in a manner that the law does not recognize. The Court should prohibit McDonald from invoking the defense, including suggesting in opening that the involvement of an attorney as a matter of law negates his intent to commit the charged offenses. *See United States v. Holmes*, No. 18-CR-00258-EJD-1, 2021 WL 2044470, at *51 (N.D. Cal. May 22, 2021) ("Prior to invoking an advice-of-counsel defense, however, Holmes must establish the foundational prerequisites for the advice-of-counsel defense, namely: (1) waiver of the applicable attorney-client privilege, (2) demonstrating that there was a full disclosure to her attorney of all material facts, (3) and that she relied in good faith on the specific course of conduct the attorney recommended.").

3.   Defendant Fujii's response suffers the same flaws as Defendant McDonald's. *See* ECF No. 520. Like McDonald, Fujii conflates Defendant Tanaka's involvement in the developing conspiracy as foundation for advice of counsel. Like McDonald, Fujii fails to analyze the elements required for an advice of counsel instruction to be warranted. Like McDonald, Fujii may claim Tanaka

---

[3] McDonald testified that he made his calculations in collaboration with Defendant Otani and another MAI employee.

was responsible for his actions (such as filing the malicious police report). But that is a factual argument, not a legal claim warranting an advice of counsel instruction.

4.      Defendant Otani's joinder at ECF No. 523 further confirms the inapplicability of an advice of counsel instruction or defense. She points to Tanaka's involvement throughout the case and announces her intent to propose a novel "*involvement* of counsel" instruction. But Tanaka's involvement throughout the case proves the point: she is not a disinterested counsel from whom advice was sought. She was embedded in the conspiracy from the start, a necessary tool to achieve the conspirators' plans to vanquish Laurel Mau through false accusations.

As for any proposed "involvement of counsel" instruction, we do not need to see it to know it is argument, not law. Mere "involvement of counsel"—particularly where that counsel was a participant in a criminal scheme—cannot warrant an instruction of law as to scienter. *See, e.g., Abdo v. Fitzsimmons*, No. 17-CV-00851-TSH, 2022 WL 2276898, at *2 (N.D. Cal. June 23, 2022) ("But we have to be concerned if a defendant suggests he's just going to argue that lawyers were involved, and he's not planning to tell the jury that all four elements [of the advice-of-counsel defense] are satisfied. In that situation, we have a Rule 401 problem that the references to attorneys may be irrelevant, and more importantly, we have a Rule 403 problem that the references to attorneys may confuse the jury and unfairly prejudice the plaintiff."). Further, to allow an advice of counsel instruction or defense based simply on the mere *involvement* of an attorney would

6

perversely award co-conspirators by shielding them from criminal liability simply because an attorney was part of their criminal enterprise. That cannot be the standard.

5. Defendant Mitsunaga says the United States "suggested" that his defense attorneys also represent Mitsunaga & Associates, Inc. ("MAI"). ECF No. 509 at 2. To be clear, that fact comes directly from Mitsunaga's own trial brief materials at ECF Nos. 435, 435-1, and 435-2. In those materials, there is no question that Mitsunaga's attorneys represented MAI. At ECF No. 435-2, Mitsunaga's attorneys filed a letter identifying Mitsunaga's lead counsel as counsel for MAI. ECF No. 435-2 ("Dear Nina: I am writing to you in *your capacity as counsel for Mitsunaga and Associates, Inc.*") (emphasis added). Mitsunaga's attorneys did nothing to correct that statement despite filing the letter with the Court. On the contrary, everything else they filed signaled the statement was true. First, under their own name blocks (suggesting they authored it), they submitted a declaration from Lois Mitsunaga, Defendant Mitsunaga's daughter, purporting to "assert" MAI's privilege. ECF No. 435-2. Second, in Mitsunaga's trial brief, counsel for Mitsunaga spoke on behalf of MAI: "MAI does not waive the attorney-client privilege and *hereby notices the Court of this potential issue should Tanaka choose to testify.*" ECF No. 435 at 3 (emphasis added).

These facts make clear that Mitsunaga's defense attorneys are—or were—counsel for MAI (and that other defense attorneys knew this, *see* ECF No. 435-1).

7

Now, likely recognizing the conflict they created, Mitsunaga's attorneys quickly retreat from these facts, "clarifying" for the Court that they do not represent Lois Mitsunaga or MAI. ECF No. 509 at 2. That "clarification" has not brought clarity.

Ultimately, MAI has known about this litigation for multiple years. They have not intervened to assert attorney-client privilege or brief the required elements of such a privilege. It is extremely prejudicial for MAI to wait until trial to unveil their privilege plan, which is obviously in the works.[4] If MAI intends to lodge a privilege, the Court should set an expedited timeframe for MAI to seek to intervene and brief all required elements of the attorney-client privilege. *See United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002), as amended on denial of reh'g (Mar. 13, 2002) ("The burden is on the party asserting the privilege to establish all the elements of the privilege."). Defendant Tanaka should be required to respond. *See* ECF No. 435-2 (counsel for Tanaka stating to counsel for Mitsunaga/MAI: "We believe that, in the event that Ms. Tanaka testifies, her Sixth Amendment constitutional right to testify in her own defense would prevail over your client's evidentiary privilege to exclude attorney-client communications.").

---

[4] Consider, for instance, the following scenario. First, after multiple weeks of trial, Tanaka says she wants to testify in her own defense. Second, from the back of the courtroom, a lawyer from MAI stands up and shouts that MAI's CEO, Lois Mitsunaga—daughter of Defendant Mitsunaga, close friend of Tanaka's, and author of a false statement brought to the grand jury—objects to any testimony from Tanaka about her work for MAI. Third, Tanaka claims her right to defend against herself has been infringed and requests a mistrial, with all defendants joining her request.

And all other parties desiring to contest any assertion of privilege should also be given the opportunity to respond. That exercise will show there is no privilege, that the attorney-client privilege is being abused, and that exceptions to any assertion of privilege, such as the crime-fraud exception, apply.

The Court should grant the United States' Motion *in Limine* No. 6. The defendants should be precluded from referencing, or otherwise advancing, an advice of counsel defense at trial. And, separately, the Court should require MAI to immediately seek to intervene and brief their apparent plan to lodge privileges from the back of the courtroom during trial.

Dated: March 14, 2024.                              Respectfully submitted,

                                                    MERRICK B. GARLAND
                                                    Attorney General

                                                    */s/ Colin M. McDonald*
                                                    MICHAEL G. WHEAT
                                                    JOSEPH J.M. ORABONA
                                                    JANAKI G. CHOPRA
                                                    COLIN M. MCDONALD
                                                    ANDREW Y. CHIANG
                                                    Special Attorneys of the United States

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>　　　　　Defendants. | CR No. 22-00048-TMB-NC<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

　　I, Colin M. McDonald, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893. I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

　　I declare under penalty of perjury that the foregoing is true and correct.

　　Executed on March 14, 2024.　　　　*/s/ Colin M. McDonald*
　　　　　　　　　　　　　　　　　　　　　COLIN M. MCDONALD