MERRICK B. GARLAND
Attorney General
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Colin.McDonald@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | CR No. 22-00048-TMB-NC<br><br>UNITED STATES' EMERGENCY MOTION FOR ENFORCEMENT OF THE PROTECTIVE ORDER |

UNITED STATES' EMERGENCY MOTION FOR ENFORCEMENT
OF THE PROTECTIVE ORDER

INTRODUCTION[1]

The United States hereby moves the Court for an emergency order enforcing the Court's Protective Order concerning discovery in this case. The United States has recently learned of multiple violations of the Protective Order, including wrongful dissemination of Grand Jury material to a third party and a witness in this case. Of significant concern to the truth-seeking function in this trial, in one instance described below, grand jury material—an underlined grand jury transcript—was delivered to an upcoming witness by an MAI employee during a meeting designed to convince the witness to change his testimony at trial.

Additionally, earlier in March 2024, the United States learned that a witness had been provided his grand jury transcript by the defense. Upon learning of this, the United States brought the matter to the attention of defense counsel and discussed the United States' position that providing a witness with Grand Jury transcripts was a violation of the Protective Order. Believing the matter had been resolved, there was no need to raise it with the Court. However, the recent events described herein demonstrate that the issue is not resolved. Accordingly, to prevent further violations, to preserve the integrity of this trial, and to ensure the presentation of evidence at trial is free of tampering, the United States moves on an emergency basis to enforce the terms of the Protective Order. At a minimum, the United States requests that the

---

[1] Given the issues presented, the United States requests that the Court set an expedited briefing schedule and hearing under CrimLR 12.2(a)(2).

Court immediately enter an order enjoining further violations of the Protective Order, along with any other order the Court deems just under the circumstances.

## BACKGROUND

Defendants Keith Kaneshiro, Dennis Mitsunaga, Terri Otani, Aaron Fujii, Chad McDonald, and Sheri Tanaka jointly agreed to the Court entering a Protective Order in this case concerning the discovery. ECF Nos. 44, 47, 105, 106. On July 5, 2022, The United States, Defendants Kaneshiro, Mitsunaga, Otani, Fujii, and McDonald, and defense counsel filed a joint motion for a Protective Order in this case. ECF No. 44. On July 6, 2022, the Court granted the joint motion and entered the Protective Order applicable to Defendants Kaneshiro, Mitsunaga, Otani, Fujii, and McDonald, and their counsel. ECF No. 47. On November 1, 2022, the United States, Defendant Tanaka, and her counsel filed a joint motion for the same Protective Order. ECF No. 105. On November 2, 2022, the Court granted the joint motion and entered the same Protective Order applicable in this case to Defendant Tanaka and her counsel. ECF No. 106. Since the terms of both orders are the same, the United States herein refers to both orders as "the Protective Order."

In the Protective Order, the "defense" is defined and includes "each defendant and defense counsel." ECF Nos. 47 at 2; 106 at 2. Section 4 of the Protective Order provides that "[t]he defense may not distribute, disseminate, disclose, or exhibit discovery materials to any person who is not part of the defense…." ECF No. 47 at 3; 106 at 3. Rather, as provided in Section 3, the discovery material produced by the

3

United States in this case is "for use by the defense solely for investigating, preparing for trial, trial, and any appeals of this matter and for no other purpose." ECF Nos. 47 at 2; 106 at 2. Section 5 provides, in part, that the defense shall not disclose discovery material produced to the defense to "other third parties not involved in the investigation or prosecution or defense of this case." ECF No. 47 at 3.

In turn, Section 6 provides that "the defense shall take all reasonable steps to: (a) maintain the confidentiality of the discovery; and (b) safeguard the discovery material produced in this case form disclosure or review by any third party." ECF Nos. 47 at 3; 106 at 3.

Most importantly, section 8 provides that "the defense may *show* witnesses discovery materials as necessary for the preparation of the defense, *but may not* give copies of the materials to witnesses absent Order of the Court." ECF Nos. 47 at 4; 106 at 4 (emphasis added). At this time, the United States is not aware of any such publicly filed Order of the Court permitting either defense counsel or the defendants to give copies of the discovery material, including Grand Jury transcripts, to witnesses or other third parties.

VIOLATIONS OF THE PROTECTIVE ORDER

I.    DISSEMINATION OF GRAND JURY TRANSCRIPTS

On March 6, 2024, the United States met with a witness (hereinafter "Witness 1") to prepare for the trial in this case.  Witness 1 is represented by counsel. During the meeting, Witness 1 advised the United States that he/she received his/her Grand

Jury transcripts from defense counsel by email. Witness 1 reviewed these transcripts in preparation for his/her meeting with the United States. Counsel for Witness 1 stated that she knew there was a Protective Order in the case and believed that Witness 1 should not have been provided with Grand Jury transcripts by defense counsel. Thereafter, the United States contacted defense counsel to inquire as to the nature of the alleged violation of the Protective Order. Defense counsel claimed ignorance of the provision prohibiting the dissemination of Grand Jury transcripts to witnesses and third parties. The United States directed counsel to the provision of the Protective Order, and defense counsel assured his/her compliance with the terms of the Protective Order and that no such dissemination would occur again.

However, on April 6, 2024, the United States again learned that Grand Jury material had been disseminated by the defense to another witness, Rudy Alivado.[2] Alivado will be a damaging witness to the defense. In the past few days, Alivado, while represented by counsel, has admitted that Defendant Tanaka coached him to lie about Laurel Mau during the *Mau v. MAI* civil trial in 2014. Specifically, Tanaka coached Alivado to falsely testify that when he paid Laurel Mau for work she had performed on his property, he believed he was paying MAI. At Tanaka's behest, Alivado gave this false testimony under oath at the federal civil trial. Alivado has recently confirmed to the United States that he intended his payment to go directly

---

[2] The United States has provided additional details about Alivado in prior briefing including the United States' Motion *in Limine* No. 9 and the United States' Response in Opposition to Defense Motion *in Limine* No. 5.

5

to Mau for her good work. Alivado was willing to lie at the civil trial to help Dennis Mitsunaga because of their longtime business relationship. At the time he testified in the civil trial, Alivado did not consider his false testimony to be a big deal because it was a civil case, not a criminal case.

But Tanaka and her conspirators had other plans for Alivado's coached lies: using Alivado's false testimony, they fabricated two felony theft charges against Laurel Mau. *See* ECF No. 396-7 (Felony Counts 3 and 4). As the United States outlined in its Motion *in Limine* No. 9, Alivado did not even learn until 2021 that he was a named victim in the Laurel Mau theft case.[3]

This background brings us to a troubling violation of the Court's Protective Order. During a recent interview, Alivado reported to the United States that within the timeframe of this trial, an employee from MAI asked to meet with him. During that meeting, the MAI employee handed Alivado a copy of his grand jury testimony from July 2021. (The United States has elsewhere expounded on Alivado's grand jury testimony, which was not favorable to the defendants. *See* United States'

---

[3] The defense has moved to admit Alivado's (false) civil trial testimony for the "effect on the listener," arguing it gave them a "good faith belief" that Laurel Mau had committed theft. *See* Defendants' Motion *in Limine* No. 5. For reasons including the particulars of Alivado's business relationship with Mitsunaga, the United States argued it was "inconceivable that anything Alivado said [in the civil trial] gave the defendants a 'good faith belief' in Mau's criminal culpability." ECF No. 396 at 9. The recent revelations make clear that the defendants could not possibly have relied on Alivado's testimony "in good faith." To the contrary, Defendant Tanaka suborned Alivado's false testimony in Mau's civil case, then injected that false testimony into Mau's criminal case (and into the grand jury investigation of this matter).

Motion *in Limine* No. 9.) Alivado's grand jury transcript had been underlined in places to draw his attention to specific aspects of his prior testimony. Ultimately, the purpose of the meeting was to confront Alivado with his grand jury testimony and persuade him to change what he previously said before the grand jury when called as a witness in this case.[4] Indeed, Alivado believed this was precisely the purpose of that meeting; there was no other interpretation of what had transpired.

## DISCUSSION

The Court's Protective Order in this case has been violated—multiple times. With respect to Witness 1, he/she received his/her prior grand jury testimony directly from defense counsel. Providing copies to a witness of grand jury material is a direct violation of the Protective Order. ECF Nos. 47 at 4; 106 at 4.

With respect to the Alivado incident described above, there are at least three violations. First, the possession of a Grand Jury transcript by a current employee of MAI, who is neither defense counsel nor a defendant in this case, is a violation of the Protective Order's prohibition against disseminating discovery materials to persons who are not a part of the defense team. ECF Nos. 47 at 3; 106 at 3. Second, section 6 of the Protective Order requires the defendants to "take all reasonable steps to: (a) maintain the confidentiality of the discovery; and (b) safeguard the discovery material produced in this case form disclosure or review by any third party." ECF

---

[4] The U.S. Attorney's Office for the District of Hawaii is investigating this incident. The United States intends to introduce evidence of this tampering at trial.

7

Nos. 47 at 3; 106 at 3. Despite this provision, somehow even non-party employees of MAI have been given access to the discovery in this case. Third, the Protective Order explicitly prohibits the defendants from giving copies of discovery materials to witnesses absent Order of the Court. ECF Nos. 47 at 4; 106 at 4. This was violated when the MAI employee met with Alivado and gave him a copy of his prior grand jury testimony.

These are not mere technical violations. They are troubling, significant violations. Indeed, the violation of the Court's Protective Order was committed in conjunction with a blatant attempt to tamper with upcoming witness testimony. The Court must not countenance this type of behavior—which is jeopardizing the truth-seeking function of trial—and should enter an order reasonably tailored to curtail it. *See, e.g., United States v. Nat'l Med. Enterprises, Inc.*, 792 F.2d 906, 910 (9th Cir. 1986) ("The district court's authority to issue the sanctions is subject to certain limitations: (1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order."). At a minimum, that should include an order immediately enjoining the defendants from further violations of the protective order.

//

//

//

//

## CONCLUSION

The Court should immediately enjoin further violations of the Protective Order and enter any other Order it deems just to address the violations identified herein.

Dated: April 14, 2024               Respectfully submitted,

                                    MERRICK B. GARLAND
                                    Attorney General

                                    */s/ Colin M. McDonald*
                                    MICHAEL G. WHEAT
                                    JOSEPH J.M. ORABONA
                                    JANAKI G. CHOPRA
                                    COLIN M. MCDONALD
                                    ANDREW Y. CHIANG
                                    Special Attorneys of the United States

9

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>　　　　　Defendants. | CR No. 22-00048-TMB-NC<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

　　I, Colin M. McDonald, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893. I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

　　I declare under penalty of perjury that the foregoing is true and correct.

　　Executed on April 14, 2024.　　　　*/s/ Colin M. McDonald*
　　　　　　　　　　　　　　　　　　　　COLIN M. MCDONALD

10