**Law Office of Caroline M. Elliot**
Caroline M. Elliot - SBN 011541
P.O. Box 3254
Honolulu, Hawaii 96801
Main: (808) 570-6003
Direct: (808) 570-5545
cme@carolineelliot.com

Attorney for Mitsunaga & Associates, Inc.,
Intervenor Asserting Attorney-Client Privilege

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 22-00048-TMB-NC |
| Plaintiff, | |
| vs. | |
| KEITH MITSUYOSHI KANESHIRO (1), DENNIS KUNIYUKI MITSUNAGA (2), TERRI ANN OTANI (3), AARON SHUNICHI FUJII (4), CHAD MICHAEL MCDONALD (5), SHERI JEAN TANAKA (6), | RESPONSE BRIEF OF MITSUNAGA & ASSOCIATES, INC. ON ASSERTION AND CLAIM OF ATTORNEY-CLIENT PRIVILEGE |
| Defendants. | |

Mitsunaga & Associates, Inc. (MAI) now comes and submits this brief in response to the briefs of Sheri Tanaka and the United States regarding MAI's assertion of attorney-client privilege in this case. (ECF 646 & 643).

## I.      Response to Ms. Tanaka's brief (Tanaka Brief)

MAI agrees with Ms. Tanaka that it is premature for her to decide to testify. However, MAI disagrees with Ms. Tanaka's argument that her Sixth Amendment right to testify in her defense would automatically prevail over MAI's attorney-client privilege.  In support of this argument, Tanaka's Brief only cites the decision of another district court, *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1148 (D. Mont. 2006).  *See* Tanaka Brief, p. 2.

As discussed further in MAI's brief (ECF 640), in *Grace*, the District Court decided to sever two defendants because of prejudicial joinder.  W.R. Grace, a corporation, was charged along with its former officers with environmental crimes. Five defendants intended to rely upon "an advice of counsel defense that they say can only be established through the presentation of documents and testimony over which Defendant Grace claims an attorney-client privilege" which the District Court found were antagonistic to most other defendants.  *Grace*, 439 F. Supp. at 1136.

> This case presents a conflict between the policy favoring confidentiality of attorney-client communications and the right of a criminal defendant to present evidence, including exculpatory evidence, in his defense. Because *no Ninth Circuit or Supreme Court case directly addresses whether and under what circumstances the right to present a defense can trump the attorney-client privilege*, it is necessary to look to other cases arising in the Sixth Amendment context for analogous principles, including cases involving conflicts between evidentiary rules and the Confrontation Clause.

*Id.* at 1138 (emphasis added).

2

Without guidance from the appellate courts, the District Court relied on analogous principles involving conflicts between evidentiary rules and the Confrontation Clause. *Id.* at 1138-1142. The District Court used a balancing test and found,

> [t]he nature and content of the privileged evidence must be weighed against the purposes served by the attorney-client privilege to determine whether any of the documents are of such value as to require Grace's rights under the attorney-client privilege to yield to the individual Defendants' Sixth Amendment right to present evidence.

*Id.* at 1142.

The Court granted a severance to two of the defendants because the Court was "convince[d] that if severance [was] denied Fifth and Sixth Amendment issues would inevitably give rise to a serious question of fairness at a joint trial." *Id.* at 1129.

"The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." *United States v. Nobles*, 422 U.S. 225, 241 (1975). Moreover, Ms. Tanaka owes an ethical duty keep Client confidences. *See* Hawai`i Rules of Professional Conduct, Rule 1.6 and Cal. Rules of Professional Conduct, Rule 1.6.

While the Court may later find that Ms. Tanaka's Sixth Amendment right to testify does trump MAI's privilege, to state that her right would *automatically*

3

require the attorney-client privilege to yield to *any* potential testimony that she could give is incorrect and contrary to law.  Determining whether the Sixth Amendment right of Ms. Tanaka trumps MAI's right to confidential attorney-client communications will require considering Ms. Tanaka's proffered testimony once she has invoked her right to testify.

## II.     Response to the government's brief (Government Brief)

Given the unique facts of this issue, MAI is unclear on what the government's role is in the questions currently in front of the Court.  At this juncture, the issue is between the client, MAI, and the client's lawyer, Ms. Tanaka. Whether Ms. Tanaka's proposed testimony is protected by the attorney-client privilege and, if so, whether Ms. Tanaka's Sixth Amendment rights override MAI's privilege, should be decided by the Court without participation by the government.

The government's interest in this issue could only arise on cross-examination of Ms. Tanaka, if that ever occurs, and then only if this Court has found the proposed testimony is admissible, even though privileged.  At that point, and only at that point, does the government have an interest in determining the scope of its cross-examination into privileged communications.

Setting aside the questionable participation of the government, MAI and the government generally agree about the law regarding the attorney-client privilege and the eight-part test used to determine what information is covered by the privilege. *See* Brief of Mitsunaga & Associates, Inc. on Assertion and Claim of Attorney-Client Privilege (MAI Brief) (ECF 640), pp. 3-5, and Government Brief (ECF 643), pp. 10-13.

While the Supreme Court noted that managers of a corporation "must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals," it did not find that the government decides whether the manager is acting consistent with his/her fiduciary duty. *See Commodity Futures Trading Com. v. Weintraub*, 471 U.S. 343, 348-349 (1985) ("[T]he trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications."). Thus, the government lacks standing to require a determination, or inquire, about whether MAI's managers are deciding to "invoke the privilege based on personal interest." *See* Government Brief, p. 14.

The government points out that MAI has not established the privilege applies. Government Brief, p. 13. MAI cannot establish the privilege applies without knowing Ms. Tanaka's proposed testimony during an *ex parte* hearing. There is, obviously, no way to go through the eight-part test to determine whether

the privilege applies without having the proposed communications to apply the test to.

"A district court may conduct an in-camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)

Without authority, the government proceeds as if it has a right to weigh in on whether the proposed testimony is privileged. Government Brief, fn. 5. The issue is between MAI and Ms. Tanaka, and is for the Court to determine whether the proposed testimony is privileged.

The government also argues that Mitsunaga and MAI appear poised to use the privilege as a sword and shield which they cannot do. See Government Brief, pp. 15. Neither Lois Mitsunaga nor MAI are charged in this case. Dennis Mitsunaga is charged, but he is not asserting the privilege. Mr. Mitsunaga is not able to assert the privilege, even if he wanted to. This argument is inapplicable to this Court's determination of whether Ms. Tanaka's testimony is inadmissible because of the privilege. If Ms. Tanaka is permitted to testify to privileged communications, then the Court must decide whether to permit the government to cross-examine Ms. Tanaka on privileged communications beyond her testimony.

Without knowing Ms. Tanaka's proposed testimony, the Court cannot determine whether the purpose of the communication(s) was for legal advice or to

6

have Ms. Tanaka voluntarily disclose it to third parties. *See* Government Brief, pp.
15-16; *In re Pacific Pictures Corporation*, 679 F.3d 1121, 1126 (9th Cir. 2012).

The crime-fraud exception to the privilege does not apply to the unique facts
of this issue since MAI is asserting the privilege and is not charged. *See*
Government Brief, pp. 16-19.

None of the cases cited by the government apply to the unique facts of this
issue. All cases in the Government Brief involved the *government* using its
subpoena power to obtain testimony and/or documents protected by the attorney-
client privilege. *In re Grand Jury Investigation*, 974 F.2d 1068, 1069 (9th Cir.
1992) ("This appeal stems from a grand jury investigation of an alleged criminal
scheme by the Corporation to defraud Medicare." The decision to not conduct an
in-camera review of subpoenaed privileged documents was affirmed.). *United
States v. Hodge & Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977) involved a law
firm's objection to an IRS subpoena of a client's business records. The IRS made
a *prima facie* case that a law firm was retained to promote or intended to promote
criminal or fraudulent activity and thus, the privilege was inapplicable. *United
States v. Chen*, 99 F.3d 1495 (9th Cir. 1996) involved a motion to quash subpoenas
issued by the Government based on the attorney-client privilege. The district
court's denial of the motion to quash was affirmed because the Government
established the crime-fraud exception. *In re Grand Jury Proceedings*

*(Corporation)*, 87 F.3d 377 (9th Cir. 1996) involved attorneys for a corporation who were required to testify before the grand jury because the crime-fraud exception to the attorney-client privilege was established.  *See also Union Camp Corp. v. Lewis*, 385 F.2d 143, 145 (4th Cir. 1967), (Grand jury subpoena duces tecum issued to a corporation included privileged communications.), *United States v. Gorski*, 807 F.3d 451, 460-61 (1st Cir. 2015) ("These interlocutory appeals are from a district court order that, among other things, compels the law firm of Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. (Mintz Levin) to produce certain documents pertaining to a fraud allegedly committed by David Gorski [the defendant] in his operation of Legion Construction, Inc."), *United States v. Brandner*, 2014 WL 10402392 *16 (D. Alaska Oct. 15, 2014) (Disbarred attorney had pleaded guilty to conspiracy to commit wire fraud under a cooperation agreement.  The defendant moved to suppress the prosecution from presenting the attorney's testimony based on privilege.  Magistrate Judge Deborah Smith found no attorney-client relationship existed because the attorney said "throughout his relationship with Brandner, he never did anything that would give Brandner a reason to think he was an attorney. He did not tell Brandner that he was a practicing attorney or even that he was a disbarred attorney."), *United States v. Martin*, 278 F.3d 988 (2002) (Lawyer became suspicious of Client and eventually provided information about Client's fraudulent scheme to the federal authorities.

The defendant moved to suppress all evidence arguing it was prompted entirely by the attorney-client information.  Court of Appeals affirmed the denial of the motion to suppress.).

None of these cases involve a lawyer seeking to testify to privileged communications, claiming the privilege is trumped by her Sixth Amendment rights.  It would defeat the purpose of Ms. Tanaka's testimony if she, a criminal defendant, argued she could testify in her own defense because the attorney-client privilege did not apply due to the crime-fraud exception.  Neither MAI nor Ms. Tanaka are making that argument.  Only the government is seeking to invoke the crime-fraud exception, and, as discussed previously, the government does not have standing at this juncture.

In this unique fact situation, the crime-fraud exception is irrelevant.  If the Court finds the communications were not privileged, the prosecutor will be free to cross-examine Ms. Tanaka on the communications.  If the Court finds that the attorney-client privilege must give way to Ms. Tanaka's Sixth Amendment right, the Court will impose traditional limits on the government's cross-examination.

### III.    Conclusion

For the foregoing reasons, MAI respectfully requests that the Court hold an *ex parte* hearing if and when Ms. Tanaka chooses to testify.  At the hearing, the

Court would consider Ms. Tanaka's proffered testimony, decide whether it is privileged because of the attorney-client relationship, and, if so, determine whether the privilege must give way to Ms. Tanaka's Sixth Amendment right.

Respectfully submitted, April 15, 2024.

/s/ Caroline M. Elliot
Attorney for Mitsunaga & Associates, Inc.
Intervenor Asserting Attorney-Client
Privilege

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, I filed the original with the Clerk of

the Court using the CM/ECF System for filing and transmittal of a Notice of

Electronic Filing to all Counsel of Record.

Michael G. Wheat, Esq.
Joseph J.M. Orabona, Esq.
Janaki G. Chopra, Esq.
Colin M. McDonald, Esq.
Andrew Y. Chiang, Esq.
SPECIAL ATTORNEYS OF THE UNITED STATES

Birney B. Bervar, Esq.
ATTORNEY FOR KEITH MITSUYOSHI KANESHIRO

Nina Marino, Esq.
Jennifer Lieser, Esq.
Ryan Mitsos, Esq.
John Shum, Esq.
ATTORNEYS FOR DENNIS KUNIYUKI MITSUNAGA

Doris Lum, Esq.
ATTORNEY FOR TERRI ANN OTANI

Andrew M. Kennedy, Esq.
ATTORNEY FOR AARON SHUNICHI FUJII

Thomas M. Otake, Esq.
ATTORNEY FOR CHAD MICHAEL MCDONALD

Andrew S. Cowan, Esq.
Crystal Gail K. Glendon, Esq.
Mark Mermelstein, Esq.
ATTORNEYS FOR SHERI JEAN TANAKA

*/s/ Caroline M. Elliot*
Caroline M. Elliot