MERRICK B. GARLAND
Attorney General
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Colin.McDonald@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>       v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>                    Defendants. | CR No. 22-00048-TMB-NC<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY, ECF NO. 669<br><br>**REDACTED BRIEF** |

The United States of America, through its counsel, hereby responds to Defendants' motion to compel discovery at ECF No. 669. The motion—for all its bold claims, sometimes even in bold lettering—fails when subjected to even light scrutiny. Among other flaws, their requests lack materiality across the board.

Nonetheless, to moot the core of the defense motion, the United States will produce the grand jury subpoenas issued to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, as well as related reports and an email—ministerial as they are—pertaining to service of the subpoenas. As outlined below, the United States otherwise declines to join the Defendants on the remainder of their tardy fishing expedition for miscellaneous, immaterial information. With respect to Rudy Alivado's motion to compel hearing, the United States does not have a transcript to produce. Moreover, Defendants have known about that hearing for nearly two years and—although sealed—it is a matter of public record. At any point, they could have acquired the transcript. Their failure to do so is not a discovery violation by the United States.

Finally, the Court should deny Defendants' request to delay calling ▓▓▓▓▓▓▓ and Alivado for "at least seven calendar days" after receipt of any discovery. There is no reason for that delay, other than delay. The Defendants' attempt to alter the timing of the United States' witnesses—particularly ones they have aggressively tried to tamper with—should be rejected.

# I

## BACKGROUND

1. ▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓ is Defendant Terri Ann Otani's sister. Campaign spending reports identify her, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ as donors to Keith Kaneshiro during the timeframe of the conspiracy

against Laurel Mau. But they were donors in name only: Defendant Otani used their names to make straw donations to Kaneshiro, skirting campaign spending limits to boost the conspirators' cash flow to Kaneshiro.

▋ On or about July 19, 2021, the FBI initiated standard procedures to attempt to locate ▋ to serve her with the subpoena. Phone records show that on July 19, FBI Honolulu contacted ▋ twice, with the second connection spanning about four-and-a-half minutes. *See* Defense Exhibit 3, ECF No. 669 at 16 (summary chart prepared by the United States of phone contact between Tanaka, Otani, ▋, and FBI personnel between July 1, 2021 and July 31, 2021). Within twelve minutes of the second call, ▋ called Otani and then Tanaka (for a connection spanning about three-and-a-half minutes). *Id.* Later on July 19 and July 20, ▋ and Tanaka had additional phone contact. *See id.*

On July 22, 2021, the FBI left ▋ subpoenas in the mailbox at ▋, her husband, and her daughter. The appearance date was initially July 29, 2021. For health reasons, on July 26, 2021, the United States granted the ▋ email request to ▋ until August 12, 2021 and emailed them updated subpoenas. ▋

3

███████████████████████████████████ ███.[1] As outlined in the United States' Motion in Limine No. 12, the United States recently learned that before ██████ █████████████, Tanaka picked █████ up, drove her to an unfamiliar location in the Los Angeles hills, and instructed her to exit the car without her cell phone. There, on the side of the road, Tanaka began speaking to ██████ about the grand jury investigation, including becoming very serious and instructing her on what to say after ████████ told Tanaka she did not wish to continue the conversation. The Court has granted the United States' motion to introduce evidence of this exchange. ECF No. 664.

    2.    Rudy Alivado

The United States has provided various details about Rudy Alivado in prior briefing. *See, e.g.*, United States Motion *in Limine* No. 9, United States' Response in Opposition to Defendants' Motion *in Limine* No. 5, and the United States' Emergency Motion for Enforcement of the Protective Order (ECF No. 662). Here, we briefly focus on the facts relevant to Defendants' motion to compel.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[1] ███████████████████████████████████████████████
████████████████████████████████████

███████████████████████████████████████████████████████████

███[2]

      The defense has moved to compel the United States to produce a transcript of Alivado's motion to compel hearing before Judge Watson. But the United States does not have a transcript of that hearing. Moreover, Defendants have known about Alivado's motion to compel proceedings from the very beginning of this case. In Round 1 of discovery, produced July 11, 2022, the United States produced the motion to compel Alivado's testimony and other associated records. Those records included the case number of the motion to compel proceedings (MC 21-00278 DKW-KJM). In that same round of discovery, also on July 11, 2022, the United States produced the transcripts of Alivado's grand jury testimony from June 11, 2022 (where he invoked) and July 29, 2022 (following the motion to compel hearing). ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ In other words, the defense has been aware of Alivado's hearing before Judge Watson for nearly two years. But they have made no efforts to secure it until now—the middle of trial.

//

//

//

---

[2] Alivado's testimony from that day was the subject of the United States' Motion *in Limine* No. 9, granted by the Court on April 15, 2024.

II

LEGAL PRINCIPLES

1.  *Rule 16*: "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (referring to *Brady v. Maryland*, 373 U.S. 83 (1963)). Instead, Federal Rule of Criminal Procedure 16 sets forth enumerated items that a criminal defendant is entitled to receive. Pursuant to Rule 16(a)(1)(E), "the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E).

A defendant carries the burden of demonstrating materiality under Rule 16(a)(1)(E). *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984); *see also United States v. Lucas*, 841 F.3d 796, 809 (9th Cir. 2016). A showing of materiality requires "a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013) (internal quotations omitted). "Materiality is not established by a general description of the documents sought or by a conclusory argument that the requested information was material to the

6

defense." *Little*, 753 F.2d at 1445 (*citing United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1954)); *see also United States v. Wong*, 886 F.2d 252, 256 (9th Cir. 1989) ("The mere suspicion that information will prove helpful is insufficient to require disclosure.").

2.   *Brady/Giglio*:   Where the defendant seeks discovery based upon *Brady* and its progeny, the Supreme Court has recognized that *Brady* "requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (quoting *Brady*, 373 U.S. at 87). While the *Brady* rule is to be interpreted broadly to encourage prosecutors to carry out their duty, the rule has its limitations and does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant. *See, e.g., id.* at 675 ("Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial[.]"); *Moore v. Illinois,* 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."). Moreover, the Supreme Court has explained that "*Brady* does not permit a defendant to sift through information held by the government to determine materiality." *Lucas*, 841 F.3d at 807 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987)). Indeed, "the prosecutor's duty to disclose under *Brady* is limited to

7

evidence a reasonable prosecutor would perceive at the time as being material and favorable to the defense." *Woods v. Sinclair*, 764 F.3d 1109, 1127 (9th Cir. 2014).

In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court extended *Brady* principles to evidence that impeaches a witness's credibility. Under *Giglio*, the prosecution must disclose information it has for witnesses it calls that affects their credibility if material to the outcome. *Id.* at 154–55.

3.      *The Jencks* Act: Finally, the Jencks Act states that, after a government witness has testified at trial, "the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).

> The Act narrowly defines a "statement" as:
>
> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e). Fed. R. Crim. P. 26.2(f) is nearly identical.

The Jencks Act applies to formal written narratives or reports that contain "a complete recital" of facts, rather than fragmentary notes. *United States v. Griffin*, 659 F.2d 932, 937 (9th Cir. 1981) ("an agent's rough notes usually are considered

too cryptic and incomplete to constitute the full statement envisioned by the Jencks Act"); *United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992) ("Both the history of the statute and the decisions interpreting it have stressed that for production to be required, the materials should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context."). Notes that are "not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigators' selections, interpretations, and interpolations" are not Jencks Act "statements." *United States v. Spencer*, 618 F.2d 605, 606 (9th Cir. 1980); *see id.* ("The Congressional policy behind the Jencks Act was to protect witnesses from being impeached with words that are not their own, or are an incomplete version of their testimony.").

## III

## ARGUMENT

Defendants' motion should be denied. As outlined below, none of the categories of information sought are material to the defense. Nor are they *Brady* or *Giglio* material. In the big picture, Defendants' argument about ▇▇▇▇▇▇▇ is difficult to understand. As the Court stated in its recent *in limine* ruling, "regardless of when ▇▇▇▇ received her grand jury subpoena, the evidence indicates she received notice of her grand jury appearance prior to the ▇▇▇▇▇▇▇ Encounter." ECF No. 664 at 16. Moreover, the phone records show a straight line

9

between the FBI's contact with ▋▋▋▋ to ▋▋▋▋ contact with Tanaka. Defendants' motion fails to explain the linkage between their requested discovery and any relevant facts they believe their requested discovery would prove or disprove. We now address each specified discovery request in turn.

> 1. "All reports relating to any telephonic or email contact the government has had with ▋▋▋▋, Rudy Alivado, and any other government witness."

This request is untethered to any discovery rule. It is not supported by Rule 16, *Brady*, *Giglio*, or the Jencks Act. The United States has no obligation to report every time it has a contact with a witness—no matter the content—much less produce any such reports to the defense. That is particularly true where the Defendants have made no showing of materiality for their request. The United States is aware of its obligations under *Brady*, *Giglio*, and the Jencks Act, and will continue to comply with those obligations.

Unable to establish the materiality requirement, Defendants try to simply erase it. Indeed, in their brief, Defendants state that "the materiality requirement applies only to grand jury materials, but here the defense has also requested non-grand jury materials, specifically information relating to the substance of all government telephone and email communications with its witnesses." ECF No. 669 at 5–6. No case cite follows that sentence. Because there is no case to cite. The materiality requirement does not apply "only to grand jury materials." That requirement is straight from Rule 16 itself. *See Little*, 753 F.2d at 1445 ("To secure

a discovery order under Fed. R. Crim. P. 16(a)(1)(C), a defendant must first make a prima facie showing of materiality.").

These flaws notwithstanding, as stated above, the United States will provide the subpoenas, reports, and associated documents demonstrating the efforts to serve ▬▬▬ and her family. Specifically, today, the United States will produce to the defense:

1. The initial subpoenas for the ▬▬▬ to testify before the grand jury on July 29, 2021.
2. Proof of service forms stating that the initial subpoenas for the ▬▬▬ were left at the ▬▬▬ on July 22, 2021.
3. An FBI report documenting the delivery of the initial subpoenas to the ▬▬▬ on July 22, 2021.
4. An FBI report documenting a request from FBI-Honolulu to FBI-Los Angeles to personally serve ▬▬▬.
5. A proof of service form stating that ▬▬▬ was personally served by an FBI Special Agent on July 26, 2021.
6. An FBI report documenting the personal service of ▬▬▬ on July 26, 2021.
7. An email from the United States granting the ▬▬▬ request for health reasons to continue their grand jury appearances from July 29, 2021 to August 12, 2021 (and attaching updated subpoenas for August 12, 2021).
8. An FBI report documenting the service by email on July 26, 2021 of the updated subpoenas to ▬▬▬ and ▬▬▬.
9. The updated subpoenas for ▬▬▬, calling for testimony on August 12, 2021.

    2.    "All agent notes relating to any telephonic or email contact the government has had with ▬▬▬, Rudy Alivado, and any other government witness."

This request is not countenanced by any discovery rule. Even agent notes of *substantive* interviews are not usually discoverable under the Jencks Act. *See Griffin*, 659 F.2d at 937; *Bobadilla-Lopez*, 954 F.2d at 522; *Spencer*, 618 F.2d at 606. Here, the defense is demanding production of every time any agent potentially

11

put pen to paper in relation to *any* interaction with *any* witness.³ That is not the United States' burden. Moreover, Defendants' "mere speculation about materials in the government's files does not require the district court under *Brady* to make the materials available for Defendants' inspection." *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (citations and quotations omitted) (denying defendant's request to review agents' notes "so that he could search through them for anything useful.").

      3.      "The names of each FBI agent who had telephonic or email contact with these witnesses."

Defendants fail to support this immaterial request with any legal precedent. The names of the agents do not constitute Rule 16, *Brady*, or *Giglio* material. Additionally, this is effectively a civil interrogatory—calling for the United States to prepare a list of names—which is not permitted under the Rules of Criminal Procedure.

Nonetheless, the documents and reports the United States is producing today contain the names of certain agents who had contact with the ▮▮▮▮ during the process of serving the subpoenas. In addition, ▮▮▮▮ grand jury transcript itself—produced in July 2022—identified the FBI Special Agent she spoke to over the phone. Therefore, even while there is no legal obligation to provide such discovery, the defense has been provided the information they seek.

---

³ To be sure, it is not the FBI's practice to create reports each time they have contact with a possible witness.

    4.    "Copies of all emails sent to any government witness, or received by the government from any such witness."

This request lacks materiality and is a classic fishing expedition. The law is clear that the prosecution does not need to deliver his "entire file to defense counsel" in order to discharge the prosecution's discovery obligations. *Bagley*, 473 U.S. at 674. This sweeping civil discovery request is not supported by the criminal discovery rules. *See, e.g., United States v. Salyer*, 271 F.R.D. 148, 179 (E.D. Cal. 2010), opinion adhered to as modified on reconsideration, No. CR. S-10-0061 LKK (G, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) ("this civil discovery 'all documents' request is inappropriate in criminal discovery").

    5.    "The transcript of the sealed hearing related to the government's motion to compel the grand jury testimony of Rudy Alivado."

As outlined above, the United States does not have a transcript of Alivado's motion to compel. Accordingly, Defendants' request fails at the start. Additionally, Defendants have known about Alivado's motion to compel hearing for nearly two years. During that time, they could have taken steps to obtain the transcript, which, although the proceedings are sealed, is a matter of public record. Defendants have apparently not done so. That is not the fault of the United States.[4]

//

//

---

[4] The United States also notes that the motion to compel hearing spanned only about ten minutes and that it is pure speculation for the defense to suggest Alivado said anything material to this trial during that hearing.

13

      6.    "Copies of all grand jury subpoenas served on ▇▇▇▇▇ and any other government witness."

Defendants do not cite any rule of discovery permitting them access to *subpoenas* underlying an investigation. Their attempt to obtain two subpoenas earlier in the case was rejected by the Court. ECF No. 260. Of course, the United States has produced the fruits of the grand jury subpoenas, including records obtained and testimony secured. *See, e.g., United States v. Liburd*, 2021 WL 4521964, *5 (E.D. N.Y. Oct. 3, 2021) (stating that "while [defendant] is not entitled to the grand jury subpoenas themselves," the court presumed the government would produce all documentation obtained through the subpoenas and reports detailing chain of custody at issue). Defendants fail to provide any facts or law supporting their request for copies of subpoenas served on all government witnesses. Nonetheless, while not required, as outlined above, the United States will produce the subpoenas for the ▇▇▇▇▇

## IV

## DEFENDANTS' REQUEST TO DELAY

Defendants conclude their motion by requesting that the Court "order the government to produce the requested materials forthwith, and do so at least seven calendar days before it calls witnesses ▇▇▇▇▇ or Alivado to the stand. The defense needs at least this amount of time to review the materials and prepare corresponding cross-examinations." ECF No. 669 at 9. The Court should reject this attempt to delay trial and cause further disjointed presentation of the United States'

evidence. Moreover, the witnesses Defendants seek to delay are the very witnesses whose testimony they have previously attempted to wrongfully influence. Additionally, the discovery pertaining to ▮▮▮▮▮ is scant and insignificant. And the United States has already produced her Jencks statements—including her grand jury statements and recent interview statements. With respect to Alivado, the United States does not have a transcript of his motion to compel hearing before Judge Watson to produce. The United States has, however, already produced his grand jury testimony and several additional interview statements. Given the recent developments identified in the United States' recent emergency motion, the United States may have additional discovery to produce pertaining to Alivado. To that end, the United States will continue to comply with its statutory and constitutional discovery obligations. The Court should reject the Defendants' request for an order prohibiting the United States from calling ▮▮▮▮▮ and Alivado until an uncertain date in the future.

//

//

//

//

//

//

//

V

## CONCLUSION

The Court should deny Defendants' motion to compel.

Dated: April 16, 2024.  Respectfully submitted,

MERRICK B. GARLAND
Attorney General

*/s/ Colin M. McDonald*
MICHAEL G. WHEAT
JOSEPH J.M. ORABONA
JANAKI G. CHOPRA
COLIN M. MCDONALD
ANDREW Y. CHIANG
Special Attorneys of the United States

16

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>　　　　　　Defendants. | CR No. 22-00048-TMB-NC<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Colin M. McDonald, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893. I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 16, 2024.　　　*/s/ Colin M. McDonald*
　　　　　　　　　　　　　　　　COLIN M. MCDONALD

17