MERRICK B. GARLAND
Attorney General
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Colin.McDonald@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>Defendants. | CR No. 22-00048-TMB-NC<br><br>UNITED STATES' MOTION *IN LIMINE* NO. 13: TO ADMIT EVIDENCE OF DENNIS MITSUNAGA'S WITNESS TAMPERING<br><br>**REDACTED BRIEF** |

UNITED STATES' MOTION *IN LIMINE* NO. 13: TO ADMIT EVIDENCE
OF DENNIS MITSUNAGA'S WITNESS TAMPERING

## INTRODUCTION

The conspirators have carried a secret for ten years: Rudy Alivado's testimony against Laurel Mau at her civil trial was false. Sheri Tanaka coached Alivado on what to say, then coaxed the magic words out of him through one compound, leading question. Unbeknownst to him, Alivado's vague, coached, false civil testimony then formed the basis for felony theft charges against Mau. And while Mau's case was ultimately dismissed for a litany of reasons, the conspirators' secret was not one of them. The secret survived.

But nothing stays secret forever. In 2021, before the federal grand jury, Alivado revealed that Mau had *not* committed theft from him (or MAI). He also expressed surprise that he was a named victim in the theft Information filed against Mau by Defendant Kaneshiro's office. In other words, Alivado began to reveal the conspirators' secret. The conspiracy began to unravel.

So, Dennis Mitsunaga tried to bury the lie at last. In the middle of this trial, Mitsunaga used an intermediary—in violation of the Court's no-contact order—to confront Alivado and wrongfully attempt to alter Alivado's upcoming testimony (or prevent it entirely). In the United States' Emergency Motion for Enforcement of the Protective Order, ECF No. 662, the United States stated its intent to introduce this newly discovered evidence at trial, *id.* at 7 n.4. The United States now formally moves to introduce evidence of Mitsunaga's tampering with Alivado. Mitsunaga's conduct powerfully reveals his consciousness of guilt and should be placed before

2

the jury. *See United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976) ("[T]he concealment of evidence subsequent to a commission of a crime or evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact.").[1]

## BACKGROUND

1.      Rudy Alivado and Defendant Mitsunaga were longtime friends, starting in high school. In the early 2000s, Alivado and Mitsunaga formed a business partnership which involved, among other things, buying and selling real estate. There were certain partnership perks; for example, in exchange for Alivado pulling more weight on the real estate projects, MAI and other associated companies designed and built Alivado's home, a project lasting around two years. After the home was built, Alivado needed further help with interior designing. Steven Wong, an MAI employee, told Alivado to see Mau and that she would help. Mau did so, and, according to Alivado, did a good job. Alivado had no complaints about her work.

During the civil trial between Mau and MAI, Alivado offered testimony that spanned a grand total of about nine transcript pages. *See* ECF No. 574-1. As outlined below, just this month, Alivado has admitted that Tanaka coached him to give false testimony. In his testimony, Alivado stated that MAI designed his Kaneohe home

---

[1] Given the issues presented and the trial schedule, the United States requests that the Court set an expedited briefing schedule and hearing under CrimLR 12.2(a)(2).

3

and that Mau acted "in the capacity of the architect who helped … with the interior design of the house." *Id.* at Tr. p. 126. He stated he "hired [Mau] as an employee of MAI based on the blueprints that was completed, et cetera, and she handled the interior design." *Id.* "[S]he did a good job," Alivado added. *Id.* Alivado then testified that Mau asked him for payment on two occasions and that he agreed to pay her cash. *Id.* at Tr. pp. 126-27. This background progressed to the ultimate question and answer that Defendant Chad McDonald would later seize on in his declaration against Mau. The question was a compound, leading question, posed by Defendant Tanaka:

> Q. Okay. And you just assumed it was an MAI project, and you were paying in her capacity as an architect on behalf of Mitsunaga & Associates, Inc.; is that correct?
> A. That was my assumption, yes.

*Id.* at Tr. p. 126. Alivado did *not* say the money was supposed to go to MAI, or that Mau deceived him by keeping the cash. He was, however, then asked "do you know whether the cash payments actually went to Mitsunaga & Associates, Inc.?" "I don't know," he answered. *Id.* By itself, it is difficult to really understand what Alivado meant about his interactions with Mau.

But it was enough for the defendants. In the felony Information packet against Mau, Defendant Otani perfected Alivado's false and vague testimony by declaring—omitting material facts in the process—that "[a]t no point in time did Laurel Mau ever give MAI money (cash, check, or otherwise) in connection with and/or related to the Rudy Alivado Residence Project." Two of the four counts against Mau then

4

named Alivado as a victim of Mau's theft (for the two times he paid her). Count 3 alleged the following:

> On or between October 1, 2007 and May 31, 2009 in the City and County of Honolulu, State of Hawaii, LAUREL J. MAU did obtain or exert control over the property of Rudy Alivado, the value of which exceeds Three Hundred Dollars ($300.00) by deception, with intent to deprive Rudy Alivado of the property, thereby committing the offense of Theft in the Second Degree, in violation of Section 708-831(1)(b) of the Hawaii Revised Statutes.
>
> The offense alleged herein was not discovered prior to March 1, 2014 by either Rudy Alivado or by a person who had a legal duty to represent Rudy Alivado, Section 701-108(3)(a) of the Hawaii Revised Statutes.

ECF No. 574-2. Count 4 was nearly identical to Count 3, again with Alivado as the named theft victim. *See id.*

In his sworn declaration supporting the charges against Mau, Chad McDonald relied on Alivado's false testimony to support his non-law enforcement opinion that probable cause existed to charge Mau with theft. McDonald summarized Alivado's testimony as follows:

> Mr. Alivado testified that Mau was not given the money as a gift, but rather, that Mau demanded two separate payments, one in the amount of $800 and another in the amount of $2,000, *payments that were supposed to be going to MAI*. . . . Mau specifically requested each of these amounts in cash.

ECF No. 571-1 at 11 (emphasis added to highlight something Alivado did not testify to—another false statement made by McDonald in his declaration). Seizing on this not-quite-accurate summary of Alivado's trial testimony, McDonald leaped to his goal: accusing Mau of "intentionally deceiv[ing]" Alivado by making him *think* he

5

was paying MAI when instead Mau "intended to keep the money for herself." ECF No. 571-1 at 11.

2. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████

████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

2 ██████████████████████████████████████████ Alivado recently admitted that Tanaka provided him the transcript of his false civil testimony (i.e., Tanaka sought to inject Alivado's false civil testimony ████████████ to obstruct its investigation). The United States plans to elicit these facts from Alivado during trial.

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

3.      Within the last two weeks, Alivado, while represented by counsel, has admitted that Defendant Tanaka coached him to lie about Laurel Mau during the *Mau v. MAI* civil trial in 2014. Specifically, Tanaka coached Alivado to falsely testify that when he paid Mau for work she had performed on his property, he believed he was paying MAI. At Tanaka's behest, Alivado gave this false testimony under oath at the federal civil trial. Alivado has recently confirmed to the United States that he intended his payment to go directly to Mau for her good work. Alivado was willing to lie at the civil trial to help Dennis Mitsunaga because of their longtime business relationship. At the time he testified in the civil trial, Alivado did not consider his false testimony to be a big deal because it was a civil case, not a criminal case.

4.      This background brings us to Dennis Mitsunaga's recent efforts to tamper with Alivado's testimony. On April 1, 2024, MAI employee J.K. met with Mitsunaga at his home. There, Mitsunaga gave J.K. a transcript page from Alivado's 2014 civil trial testimony as well as the full transcript of Alivado's July 2021 grand jury testimony. One page from Alivado's July 2021 grand jury transcript was annotated with underlines. These underlines referenced, among other things, testimony that Alivado had provided about Defendant Sheri Tanaka, and about

Vernon Branco, the DPA investigator whose declaration was used to charge Laurel Mau with felony crimes.

J.K. contemporaneously took notes of Mitsunaga's instructions at the meeting. ███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

- ███ ███████
- ███ ███
- ███ ███████
- ███ ████
- ███ ██████████
- ███ ██████████

---

[3] ███████████████

███████████████

███████████████ On April 20, 2024, counsel for Mitsunaga reviewed ███████████████ *in camera* at the U.S. Attorney's Office. Counsel for the other defendants are welcome to schedule time, including as early as April 21, 2024, to do the same. Otherwise, given recent developments, the United States will produce hard copies of ███████████████ when required by the Jencks Act (after the witness has testified on direct examination). *See United States v. Boshell*, 952 F.2d 1101, 1104 (9th Cir. 1991); 18 U.S.C. § 3500.

- ███████████████████████████████████████
  ███████████
- ███
- ██████████████████████████████████
- ███

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████

  ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

  ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

    ████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

    ████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

5. There is ample corroboration of Mitsunaga's tampering attempt, including anticipated testimony from Alivado and the person Mitsunaga employed to execute the tampering—J.K. Beyond testimony, which is itself sufficient

corroboration, phone records of contact, text messages, J.K.'s notes of Mitsunaga's instructions, photographs taken of Alivado's farm—the pretext for J.K.'s visit—also corroborate the tampering efforts.

## DISCUSSION

### 1. MITSUNAGA'S TAMPERING WITH ALIVADO IS HIGHLY PROBATIVE DIRECT EVIDENCE OF MITSUNAGA'S CONSCIOUSNESS OF GUILT

Mitsunaga's tampering with Alivado is relevant and admissible because it shows his consciousness of guilt of the underlying crimes. This is direct evidence of the conspiracy. As the Ninth Circuit has stated, "the concealment of evidence subsequent to a commission of a crime or evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact." *Brashier*, 548 F.2d at 1325; *see also United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) ("evidence of the Collins' attempts to induce witnesses to lie is indicative of consciousness of guilt and may be placed before the jury"); *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980) ("An attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt and admissible on that basis."). In fact, the Ninth Circuit has stated that efforts to intimidate witnesses into "withholding information" shows "consciousness of guilt—second only to a confession in terms of probative value." *United States v. Meling*, 47 F.3d 1546, 1558 (9th Cir. 1995).

The Ninth Circuit is not alone in introducing evidence of this kind. *See, e.g., United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011) ("Poulsen's conviction in the Obstruction Case was supported by evidence of his attempts to pay Sherry Gibson to give favorable testimony. This evidence was not offered to prove Poulsen's character in conformity with this prior bad act but rather was offered as evidence of his consciousness of guilt."); *United States v. Benitez-Lopez*, 834 Fed. App'x 463, 464 (10th Cir. 2020) (unpublished) ("The district court could plausibly interpret the letter as an instruction to Mr. Benitez-Lopez's mother to lie by saying that she didn't know anything (even though she had participated in some of the pertinent phone calls). Given the plausibility of this interpretation, the district court could reasonably regard the letter as evidence of Mr. Benitez-Lopez's consciousness of guilt."); *United States v. Folse*, 163 F. Supp. 3d 898, 917 (D.N.M. 2015) ("Sending a message, directly or indirectly, to a witness to ask him to 'Go M.I.A.' so that he cannot testify at a carjacking trial qualifies as a bad act even if it does not violate the witness intimidation statute, 18 U.S.C.A. § 1512(b)(1) to (2)(A)").

Mitsunaga may claim he was simply attempting to alert Alivado to his ability to plead the Fifth Amendment. That is not a legal basis to keep the evidence from the jury. Moreover, the facts prove something much more nefarious. Mitsunaga deliberately violated the Court's no-contact order by directing an agent, J.K., to create a ruse in which to meet with Alivado to discuss his upcoming trial testimony. He ordered J.K. to hand Alivado a transcript annotated with underlines in order to

get him to alter what Alivado will do when he takes the stand. And he threatened and intimidated Alivado by having J.K. tell Alivado that if he did not take the Fifth, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Alivado interpreted J.K.'s actions as trying to get him to change his testimony—and that is really the only fair way to interpret what occurred. Therefore, direct evidence of Mitsunaga's guilty state of mind about the charged conspiracy is highly relevant evidence that should be placed before the jury in this case.

2.     THE EVIDENCE IS INEXTRICABLY INTERTWINED

The distinction between *intrinsic* and *extrinsic* evidence is explicitly recognized in the commentary to the Federal Rule of Evidence 404. *See* FRE 404, committee notes (1991) ("amendment does not extend to evidence of acts which are 'intrinsic' to the charged offense" and "noting distinction between 404(b) evidence and intrinsic offense evidence"). Put it another way: "evidence should not be considered 'other crimes' of 'other act' evidence within the meaning of Rule 404(b) if 'the evidence concerning the "other" act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (quoting *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987)). Accordingly, evidence that is regarded as inextricably intertwined with the charged offense "is independently admissible and is exempt from the requirements of Rule 404(b)." *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013).

13

The fear attendant to "other act" evidence is that a person's other bad acts will be used to prove his propensity to commit a crime, and thereby violate the principle that each defendant should "be tried for what he did, not for who he is." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1014–15 (9th Cir. 1995). But intrinsic evidence is a different species of proof entirely. Courts recognize its admissibility outside of Rule 404(b) because it is "linked in time and circumstances with the charged crime," "forms an integral and natural part of an account of the crime," or "is necessary to complete the story of the crime for the jury" by explaining its context, motive, or set-up. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Therefore, an act is inextricably intertwined when it is "reasonably necessary" in order "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime[.]" *United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016).

Here, the evidence the United States seeks to introduce is not "other act" evidence that risks demonstrating anyone's propensity to commit a crime or violates the principle that each defendant should "be tried for what he did, not for who he is." *Vizcarra-Martinez*, 66 F.3d at 1014–15. To the contrary, it is evidence that Mitsunaga tried to tamper with an adverse witness in *this* case, in order to undermine the integrity of *this* trial, for the purpose of covering up and suppressing evidence of *this* conspiracy. It is further evidence of Mitsunaga's guilty mental state with respect to *these* charges. Thus the evidence is not extrinsic evidence subject to Rule 404(b).

14

As described above, it is direct evidence of Mitsunaga's guilt. And if it is not direct evidence of guilt, then it is at the very least inextricably intertwined evidence permitting the United States to present "a coherent and comprehensible story regarding the commission of the crime[.]" *Loftis*, 843 F.3d at 1178. Indeed, the tampering evidence "forms an integral and natural part of an account of the crime[.]" *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). As described in the Introduction above, the conspirator have carried a big secret for many years, and Mitsunaga's mid-trial attempts to keep that secret hidden is a natural part of the account of the crime and an integral part of the story the United States seeks to tell.

    3.    IF NECESSARY TO INVOKE, RULE 404(B) PERMITS THIS EVIDENCE OF CONSCIOUSNESS OF GUILT

To the extent Rule 404(b) is implicated, that rule of inclusion comfortably permits this evidence. First, the evidence "tends to prove a material point." *United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020). "[E]vidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact." *Brashier*, 548 F.2d at 1325. This evidence will show that Mitsunaga sought to tamper with Alivado's upcoming testimony—or prevent it altogether.

Second, the evidence of tampering is "not too remote in time." *Lague*, 971 F.3d at 1038. It occurred *during this trial*—the most relevant possible time.

Third, "the evidence is sufficient to support a finding that defendant committed the other act[.]" *Lague*, 971 F.3d at 1038. Alivado and J.K.'s expected

15

testimony is credible and supported by corroborating evidence (if more was needed), such as J.K.'s notes of Mitsunaga's instructions, toll records, photographs of Alivado's farm on the date of J.K.'s visit (just 18 days ago), and more. Moreover, J.K. will be testifying to J.K.'s willing involvement in Mitsunaga's attempt to tamper with Alivado's testimony, further lending credibility to J.K.'s account. *See Schreiber Revocable Trust v. Estate of Knievel*, 984 F.Supp.2d 1099, 1103 (D. Nev. 2013) (finding testimony "highly credible, given that his testimony was against his own potential interest").[4]

### 4. GOOD CAUSE EXISTS TO EXCUSE PRETRIAL NOTICE

To the extent Rule 404(b) is implicated, good cause exists to excuse its pretrial notice requirement. This Court may excuse lack of pretrial notice "for good cause" if the prosecution provides notice "in any form during trial." FRE 404(b)(3)(C).[5] There is good cause to excuse the lack of pretrial notice in this case: the United States did not learn about Mitsunaga's witness tampering—in fact, it did not occur—until the middle of trial. The tampering occurred on April 2, 2024, and first became known on April 6–7, 2024 (during interviews with Alivado). The United States produced reports of those interviews to the defense on April 12, 2024. Over the last week,

---

[4] The requirement of similarity is relevant only "in certain cases," *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012), such as to prove intent. *United States v. Hadley*, 918 F.2d 848, 851 (9th Cir. 1990). The evidence here is not being used to prove intent. The requirement of similarity does not apply.

[5] The United States initially provided written notice in its emergency motion on April 12, 2024. *See* ECF No. 662 at 7 n.4. This motion serves as even broader notice to the defense.

16

additional evidence has been obtained, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Courts have consistently excused lack of pretrial notice when the prosecution did not know about the evidence before trial. *See United States v. Scholl*, 166 F.3d 964, 976 (9th Cir. 1999) ("good cause was shown because, prior to trial, the government believed that the incident had occurred in 1990, not 1986"); *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1241 (9th Cir. 1996) ("there was good cause to excuse the pretrial notice requirement" because "the evidence was not made available to the government until the night before trial").

5.  RULE 403 DOES NOT BAR THIS EVIDENCE

Under Rule 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This rule is "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (quotation omitted). The function of Rule 403 is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Put another way, evidence is not "unfairly prejudicial" because it tends to prove guilt, but because it tends to encourage the jury to convict based on improper reasoning. *United States v.*

*Dhingra*, 371 F.3d 557, 565–66 (9th Cir. 2004); *see United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977) (the "best evidence" is "often" highly prejudicial).

Mitsunaga's attempt to tamper with Alivado's testimony is not something with "scant or cumulative probative force." It paints a vivid picture of Mitsunaga's consciousness of guilt—"second only to a confession in terms of probative value." *Meling*, 47 F.3d at 1558. No Rule 403 concern "substantially outweighs" this highly probative evidence. The jury is entitled to hear of Mitsunaga's desperate attempt to prevent the conspirators' secret about Alivado's testimony from coming to light. *See Brashier*, 548 F.2d at 1325 ("evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact").

## CONCLUSION

The Court should grant the United States' Motion *in Limine* No. 13.

Dated: April 20, 2024          Respectfully submitted,

                               MERRICK B. GARLAND
                               Attorney General

                               */s/ Colin M. McDonald*
                               MICHAEL G. WHEAT
                               JOSEPH J.M. ORABONA
                               JANAKI G. CHOPRA
                               COLIN M. MCDONALD
                               ANDREW Y. CHIANG
                               Special Attorneys of the United States

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>　　　　Defendants. | CR No. 22-00048-TMB-NC<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Colin M. McDonald, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893. I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 20, 2024.　　　　*/s/ Colin M. McDonald*
　　　　　　　　　　　　　　　　　COLIN M. MCDONALD

19